# Former Labaton consultant's suit details firm's big-money recruiting of Euro clients

*September 20, 2021 6:58 AM EDT Last Updated 2 months ago*

- Law firms
- Related documents

The company and law firm names shown above are generated automatically based on the text of the article. We are improving this feature as we continue to test and develop in beta. We welcome feedback, which you can provide using the feedback tab on the right of the page.

(Reuters) - French businessman Gerard Sillam and French lawyer Aldric Saulnier have sued the shareholder firm Labaton Sucharow in federal court in Manhattan for allegedly defrauding them out of fees they earned for introducing Labaton partners to billion-dollar European money management firms that Labaton was eager to represent in shareholder class actions.

The Sillam and Saulnier complaint claims that between 2006 and 2009, Sillam helped Labaton secure client relationships with, among other funds, AGF Asset Management, AXA Investment Managers, Bank Degroof, Eurizon Capital, Fortis Investments and KBC Asset Management NV. Labaton allegedly agreed to pay Sillam a monthly retainer for introducing its partners to European fund officials, as well as "success fees" when funds retained Labaton, according to the complaint.

Labaton entered a separate agreement with Sillam's French lawyers in which the U.S. firm pledged to pay Sillam's French counsel 15% of any fees Labaton netted from a case in which it represented a Sillam-referred client as lead plaintiff.

**Register now for FREE unlimited access to reuters.com**

Sillam and Saulnier contend in the Manhattan federal court complaint that the law firms' referral agreements were a sham. Sillam's lawyers, they assert, were not actually expected to perform legal work. Instead, the lawsuit alleged, referral fees were to be paid to Sillam, despite New York's prohibition on lawyers splitting fees with non-lawyers.

In an email statement, Labaton said the lawsuit by Sillam and Saulnier is "an improper attempt ... to extract money from the firm."

"At no time was Labaton Sucharow retained by any client introduced by Mr. Sillam and Mr. Saulnier," the Labaton statement said. "Had a client retained us, Mr. Saulnier would have been eligible to share in the fees consistent with the New York Rules of Professional Conduct ... This did not happen."

Sillam acknowledged in a phone interview that Labaton did not end up paying any allegedly improper referral fees to his French lawyer because no clients he referred

served as lead plaintiffs.

Sillam and Saulnier instead allege that Labaton deceived them about administrative fees it received from clients introduced by Sillam. According to the complaint, Labaton filed millions of dollars of claims in settled class actions on behalf of European funds referred by Sillam. Labaton, which was paid a percentage-based fee for filing such claims, allegedly earned more than $4.2 million in administrative filing fees just from one client referred by Sillam, AXA.

Sillam and Saulnier assert that they were entitled to a share of those fees, and that Labaton hid the payments from them.

The complaint and the underlying agreements between Labaton, Sillam and Sillam's lawyers shed light on how the U.S. plaintiffs' firm developed client relationships with major European funds as those funds stepped up their involvement in U.S. securities class actions. In 2005, Sillam received attention from U.S. media for suing the scandal-ridden commodities futures brokerage Refco over allegedly unpaid commission. That press coverage, according to Sillam's suit against Labaton, brought him to the attention of Labaton partners who allegedly saw Sillam's European contacts as an opportunity to break in with big overseas investment funds.

In February 2006, Labaton signed a [15% referral fee agreement](#) with a French lawyer who worked with Sillam, citing "our joint intention and desire that we work cooperatively together in the commencement and prosecution of securities litigation in the United States." That April, Labaton signed a [separate consulting deal](#) to pay Sillam $6,000 a month, plus hefty success fees when funds signed a retainer with Labaton (as much as $30,000) and were named lead plaintiff in a class action (as much as $65,000).

Sillam – who told me that he has worked with five other U.S. shareholder firms whose identity he declined to reveal – said Labaton did not expect his French lawyers to do any work. The complaint alleged that Labaton name partner Lawrence Sucharow acknowledged that referral fees would be improperly funneled to Sillam in a March 2007 email asking Sillam to reduce his fee percentage so Labaton could pay an Italian lawyer who was also referring clients to the firm.

The complaint also cited a comment that Sucharow allegedly made to Sillam in 2007 in Luxembourg. Sucharow, the complaint claimed, "confided in Sillam that Labaton was 'probably breaking several laws in several countries,'" by "meeting with European fund managers outside the presence of any European lawyers."

Amid disputes over how much Labaton owed Sillam, the French businessman and his lawyer reached settlements with Labaton in 2009. Labaton [agreed to pay Sillam](#) $400,000 to end his consulting arrangement. The [deal with his lawyer](#), Saulnier, was more complex. Labaton was representing some funds referred by Sillam in U.S. securities litigation against Vivendi SA. The firm agreed to pay Saulnier $150,000 as a non-refundable advance on referral fees for that litigation. (The Vivendi cases ended up being dismissed.) Labaton also agreed to twice-year certifications of any additional fees it received from Sillam clients.

The 2009 Saulnier agreement, which cites New York ethics rules, refers to "pre- or post-litigation" representation of Sillam-referred clients. That language is the source of the dispute over claim-filing fees Labaton has received.

Sillam, who has a competing claims-filing business, told me that Labaton breached the 2009 deals by failing to disclose that it was reaping millions of dollars in fees from post-litigation claims for funds to which Sillam had introduced the firm. Sillam and Saulnier allege in their complaint that they were fraudulently induced to enter a final 2015 deal to terminate their claims because of Labaton's false certifications.

The French plaintiffs' suit against Labaton was filed in August, not long after a Texas lawyer, Damon Chargois, who facilitated Labaton's client relationship with an Arkansas pension fund, sued the firm for unpaid referral fees. Labaton's fee deal with the Texas lawyer was scrutinized in the now-notorious State Street class action, in which Labaton's fee award was cut by $10 million.

Interestingly, the complaint may be the last substantive thing we hear in the Sillam case. (The complaint has not yet been served although an electronic summons was issued this week.) The 2009 agreements include arbitration provisions. I would not be surprised to see Labaton move quickly to compel arbitration. If it does, Sillam told me, he will argue that the 2015 agreement does not mandate arbitration.

(NOTE: This story has been corrected. An earlier version incorrectly reported that the complaint was served on Labaton this week. The story has also been updated to reflect Sillam's position that there is no arbitration clause in the 2015 agreement with Labaton.)

Read more:

State Street fallout for Labaton: Lawyer sues over unpaid 'referral' fees

Judge in notorious State Street case requests counsel in Lieff appeal to 1st Circuit

**Register now for FREE unlimited access to reuters.com**

Our Standards: The Thomson Reuters Trust Principles.

Opinions expressed are those of the author. They do not reflect the views of Reuters News, which, under the Trust Principles, is committed to integrity, independence, and freedom from bias.

*Alison Frankel*

*Alison Frankel has covered high-stakes commercial litigation as a columnist for Reuters since 2011. A Dartmouth college graduate, she has worked as a journalist in New York covering the legal industry and the law for more than three decades. Before joining Reuters, she was a writer and editor at The American Lawyer. Frankel is the author of Double Eagle: The Epic Story of the World's Most Valuable Coin.*