UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

GÉRARD SILLAM and ALDRIC SAULNIER,      :

                    Plaintiffs,      :     No. 21 CV 6675 (CM)

           -against-      :

LABATON SUCHAROW LLP,      :
CHRISTOPHER J. KELLER, and
LAWRENCE A. SUCHAROW,      :

                    Defendants.      :

----------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

GANFER SHORE LEEDS & ZAUDERER LLP
360 Lexington Avenue
New York, New York 10017
(212) 922-9250
(212) 922-9335 (facsimile)
mzauderer@ganfershore.com
*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTS   ....................................................................................................................... 3

ARGUMENT ................................................................................................................... 9

I.    PLAINTIFFS' CLAIMS ARE BARRED BY THE RELEASE THEY
      PROVIDED IN THE 2015 SETTLEMENT AGREEMENT AND RELEASE.............. 11

II.   PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF THEIR CLAIMS.................... 14

      A.  Defendants Made No Misrepresentations ................................................... 15

      B.  There Was No Reasonable Reliance .......................................................... 19

      C.  Plaintiffs Have No Damages ..................................................................... 22

CONCLUSION............................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Pages**

<u>**Cases**</u>

*28th Highline Assocs., L.L.C. v. Roache*,
   No. 18 Civ. 1468 (RJS), 2019 U.S. Dist. LEXIS 30057 (S.D.N.Y 2019) .............................. 22

*Allen v. WestPoint-Pepperell, Inc.*,
   945 F.2d 40 (2d Cir. 1991) ..................................................................................................... 10

*Arfa v. Zamir*,
   76 A.D.3d 56 (1st Dep't 2010) ............................................................................................... 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................9

*Bentivoglio v. Event Cardio Group, Inc.*,
   No. 18 Civ. 2040 (PKC), 2021 U.S. Dist. LEXIS 34635 (S.D.N.Y. Feb. 24, 2021) ............... 20

*In re Boyd*,
   No. 06-32628, 2012 Bankr. LEXIS 600 (Bankr. S.D. Tex. Feb. 3, 2012) ............................... 19

*Brown v. Twitter*,
   No. 19 Civ. 6328 (KPF), 2021 U.S. Dist. LEXIS 164909 (S.D.N.Y. Aug. 31, 2021) .............. 10

*Cater v. New York*,
   No. 17 Civ. 9032, 2019 U.S. Dist. LEXIS 17780 (S.D.N.Y. Jan. 30, 2019) ........................... 12

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*,
   17 N.Y.3d 269 (2011) ........................................................................... 2, 11 ,12, 13, 20

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................................................... 10

*Champion v. Moda Operandi, Inc.*,
   No. 20 Civ 7255 (CM), 2021 U.S. Dist. LEXIS 181090
   (S.D.N.Y. Sept. 22, 2021) ................................................................................................. 9, 10

*Crigger v. Fahnestock & Co.*,
    443 F.3d 230 (2d Cir. 2006) ................................................................................. 20

*Dantas v. Citigroup, Inc.*,
    779 F. App'x 16, 20 (2d Cir. 2019) ....................................................................... 12

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
    343 F.3d 189 (2d Cir. 2003) ................................................................................. 20

*Estate of Mautner v. Alvin H. Glick Irrevocable Grantor Trust*,
    No. 19 Civ. 2742 (NRB), 2019 U.S. Dist. LEXIS 205105 (S.D.N.Y. Nov. 25, 2019) ............. 11

*Gerszberg v. Iconix Brand Group, Inc.*,
    No. 16 Civ. 8421 (KBF), 2018 U.S. Dist. LEXIS 76716 (S.D.N.Y. May 7, 2018) .................. 11

*Harborview Value Master Fund, L.P. v. Freeline Sports, Inc.*,
    No. 11 Civ. 1638 (CM), 2012 U.S. Dist. LEXIS 25553 (S.D.N.Y. Feb. 23, 2012) ........... 10, 14

*Hoeffner v. Orrick, Herrington & Sutcliffe LLP*,
    85 A.D.3d 457 (1st Dep't 2011) ............................................................................. 24

*Holden v. East Hampton Town*,
    No. 15 Civ. 4478, 2017 U.S. Dist. LEXIS 53135 (E.D.N.Y. Mar. 31, 2017) ................... 10, 21

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
    No. 20 Civ. 00967 (LJL), 2021 U.S. Dist. LEXIS 45110 (S.D.N.Y. Mar. 10, 2021) ............. 20

*IBM Corp. v. Simon*,
    376 F. Supp. 3d 292 (S.D.N.Y. 2019) ..................................................................... 13

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*,
    655 F.3d 136 (2d Cir. 2011) ................................................................................. 11

*Kafa Investments LLC. v. 2170-2178 Broadway, LLC*,
    39 Misc. 3d 385 (Sup. Ct. N.Y. Co. 2013), *aff'd,* 114 A.D.3d 433 (1st Dep't 2014) ............. 13

*Kruglov v. Copart of Conn., Inc.*,
    771 F. App'x 117 (2d Cir. 2019) ........................................................................... 23

*Krys v. Klejna*,
    658 F. App'x 1 (2d Cir. 2016) ................................................................................. 9

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997) ............................................................................... 22

*Lerner v. Fleet Bank, NA.*,
　459 F.3d 273, 292 (2d Cir. 2006) ........................................................................ 14

*Long v. O'Neill*,
　126 A.D.3d 404 (1st Dep't 2015) ......................................................................... 11

*In re Maldonado*,
　No. 19-30177, 2019 Bankr. LEXIS 2923 (Bankr. N.D.N.Y Aug. 6, 2019) ............ 19

*Marinaccio v. Town of Clarence*,
　20 N.Y.3d 506 (2013) .......................................................................................... 23

*Maslin v. Angel Eyes Produce, Inc.*,
　No. 18 Civ. 01309 (MAD/DJS), 2019 U.S. Dist. LEXIS 100539
　(N.D.N.Y. June 17, 2019) .................................................................................... 20

*MBIA Inc. v. Certain Underwriters at Lloyd's, London*,
　33 F. Supp. 3d 344 (S.D.N.Y. 2014) ..................................................................... 9

*MM Arizona Holdings LLC v. Bonanno*,
　658 F. Supp. 2d 590 (S.D.N.Y. 2009) .................................................................. 14

*Morefun Co., Ltd. v. Mario Badescu Skin Care Inc.*,
　588 F. App'x 54 (2d Dep't 2014) .......................................................................... 13

*New York Univ. v. Con't Ins. Co.*,
　87 N.Y.2d 308 (1995) .......................................................................................... 24

*Norcast S.ar.l. v. Castle Harlan, Inc.*,
　147 A.D.3d 666 (1st Dep't 2017) ......................................................................... 20

*Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*,
　No. 15 Civ. 5607 (NRB), 2017 U.S. Dist. LEXIS 105418 (S.D.N.Y. July 6, 2017) ............... 20

*Permasteelisa, S.p.A. v. Lincolnshire Mgt., Inc.*,
　16 A.D.3d 352 (1st Dep't 2005) ........................................................................... 22

*Rocanova v. Equitable Life Assurance Soc'y*,
　83 N.Y.2d 603 (1994) .......................................................................................... 24

*Rolon v. Hennenman*,
　517 F.3d 140 (2d Cir. 2008) .................................................................................. 9

iv

*Ross v. Louise Wise Servs., Inc.*,
   8 N.Y.3d 478 (2007) ................................................................................................ 24

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ...................................................................................... 10

*Rubin v. Sabharwal*,
   171 A.D.3d 580 (1st Dep't 2019) ............................................................................. 19

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos, Inc.*,
   75 F.3d 801 (2d Cir. 1996) ...................................................................................... 10

*Sapia v. HBO, Inc.*,
   No. 18 Civ. 1317 (CM), 2018 U.S. Dist. LEXIS 212991 (S.D.N.Y. Dec. 17, 2018) .............. 10

*Shanghai Weiyi Int'l Trade Co., Ltd. v. Focus 2000 Corp.*,
   No. 15 Civ. 3533 (CM), 2015 U.S. Dist. LEXIS 141808 (S.D.N.Y. Oct. 16, 2015) ............... 14

*Shea v. Hambros PLC*,
   244 A.D.2d 39 (1st Dep't 1998) ............................................................................... 20

*Stone v. Sutton View Capital LLC*,
   No. 17 Civ. 1574 (VEC), 2017 U.S. Dist. LEXIS 202778 (S.D.N.Y. Dec. 8, 2017) .............. 19

*Tradeshift, Inc. v. Smucker Servs. Co.*,
   No. 20 Civ. 3661 (MKV), 2021 U.S. Dist. LEXIS 187111 (S.D.N.Y. Sept. 29, 2021) .......... 24

*United States v. Twenty MILJAM-350 IED Jammers*,
   669 F.3d 78 (2d Cir. 2011) ...................................................................................... 12

*Veroblue Farms USA Inc. v. Canaccord Genuity LLC*,
   No. 20 Civ. 4394 (JPC), 2021 U.S. Dist. LEXIS 166294 (S.D.N.Y. Sept. 1, 2021) .............. 11

*Von Ancken v. 7 E. 14 LLC*,
   171 A.D.3d 440 (1st Dep't 2019) ............................................................................. 19

*Walker v. Sheldon*,
   10 N.Y.2d 401 (1961) .............................................................................................. 23

*Z-Axis Tech Solutions, Inc. v. Richmond Capital Group, LLC*,
   No. 17 Civ. 3983 (GED), 2018 U.S. Dist. LEXIS 26084 (S.D.N.Y. Feb. 14, 2018) .............. 24

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ................................................................................................................. 9

Fed. R. Civ. P. 12(b)(6)................................................................................................. 9, 10, 19, 21

## PRELIMINARY STATEMENT

Defendants, Labaton Sucharow LLP ("Labaton"), Christopher J. Keller, and Lawrence A. Sucharow, submit this Memorandum of Law in support of their motion to dismiss the Complaint filed by Plaintiffs, Gérard Sillam and Aldric Saulnier.

In 2015, Labaton and Plaintiffs entered into an agreement, which was descriptively captioned as the "UNIVERSAL SETTLEMENT AGREEMENT AND FULL RELEASE AND COMPLETE WAIVER OF ANY AND ALL CLAIMS OR POTENTIAL CLAIM(S) AGAINST LABATON OR ANY OF ITS PARTNERS, AGENTS OR REPRESENTATIVES" (the "2015 Agreement and Release"). In the 2015 Agreement and Release, Plaintiffs gave Labaton a general release of "any claim or potential claim which could possibly be brought in any jurisdiction anywhere in the world for all time" against Labaton or individuals affiliated with Labaton. The release expressly included, but was not limited to, any and all claims or potential claims that Plaintiffs might have arising under two prior settlement agreements that Labaton and Plaintiffs had entered into in 2009 (the "2009 Agreements").

Six years later, Plaintiffs have now sued Labaton and two of its partners, alleging that Plaintiffs were fraudulently induced into signing the 2015 Agreement and Release. For numerous reasons, the Complaint should be dismissed with prejudice.

As discussed in Point I of the Argument below, the Complaint is barred by the general release of Labaton and its partners that Plaintiffs gave in the 2015 Agreement and Release. That release, for which Plaintiffs were paid approximately $100,000 in cash, was unlimited in scope and released the claims that Plaintiffs now seek to assert in this action. Plaintiffs may not avoid the broad scope of their release, or even create an issue of fact requiring discovery, merely by asserting that Defendants fraudulently induced them to sign the release. New York law, applicable

1

in this diversity/alienage action, favors the enforcement of releases and holds that a general release "should never be converted into a starting point for litigation, except under circumstances and under rules which would render any other result a grave injustice." *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011).  Under New York law, the claims released in a general release include fraud claims, except in the rare circumstances in which Plaintiffs can establish a "separate fraud" from the matters released.  *Id.* at 276.  Here, Plaintiffs allege only that they were misled into signing the 2015 Agreement and Release by misrepresentations concerning Labaton's compliance with the 2009 Agreements, but that subject-matter was expressly included within the scope of the release.  Accordingly, the Complaint is barred by the 2015 Agreement and Release and should be dismissed.

As discussed in Point II of the Argument below, even if Plaintiffs had not released their claims, the Complaint does not plead the required elements of these claims, including a material misrepresentation, reasonable reliance by Plaintiffs on the misrepresentation, and damages.  As discussed in Point II.A, Defendants did not make any misrepresentations to Plaintiffs.  Documentary evidence, including publicly available court filings of which the Court may take judicial notice, establishes that Defendants' representations were truthful.  As discussed in Point II.B, Plaintiffs did not reasonably rely on Defendants' representations.  Plaintiffs had expressed disbelief in the truthfulness of Defendants' statements shortly before signing the 2015 Agreement and Release, and stated that they intended to investigate, but they either failed to conduct such investigation or did so and signed the 2015 Agreement and Release anyway.  And as discussed in Point II.C, Plaintiffs suffered no damages as the result of the alleged misrepresentations.

**FACTS**

The facts set forth below are derived from the Complaint ("Cplt.") and, where indicated, from documentary evidence that the Court may consider on this motion to dismiss. The documents are submitted with the accompanying Declaration of Christopher J. Keller ("Keller Decl."). A copy of the Complaint is attached to the Keller Decl. as Exhibit A.

Labaton is a law firm whose practice includes representing plaintiffs in class-action securities litigations. Keller and Sucharow were partners of Labaton. (Cplt. ¶¶ 15-17). In 2005-2006, Labaton agreed to work with Plaintiff Sillam, a resident of France, and Jean-Marc Descoubes, a French attorney, on client development involving certain European institutional investors. (Cplt. ¶ 25 *et seq.*). Descoubes subsequently assigned his role to another French attorney, Plaintiff Saulnier. (Cplt. ¶ 37).

By 2009, Plaintiffs were dissatisfied with Labaton's performance under these arrangements, and "Sillam filed a complaint in Paris, France, alleging his entitlement to referral fees and asserting that Labaton had defrauded him." (Cplt. ¶ 53). "Ultimately, Plaintiffs and Labaton managed to settle their disputes at the end of 2009." (Cplt. ¶ 54). That settlement was memorialized in two written settlement agreements dated December 31, 2009 (the 2009 Agreements). One of the 2009 Agreements was between Labaton and Sillam (the "2009 Sillam Agreement"; Keller Decl. Ex. B). The other was with Saulnier and some related individuals, who were called the "Alfonso Clients" in the agreement (the "2009 Saulnier Agreement"; Keller Decl. Ex. C). The 2009 Agreements expressly superseded all of the parties' prior agreements and understandings. (Cplt. ¶¶ 54-56; Keller Decl. Ex. B at 7; Keller Decl. Ex. C at 9).

3

Under the 2009 Sillam Agreement, Labaton made a one-time settlement payment to Sillam that terminated Labaton's obligations to him.  (Keller Decl. Ex. B at 3).  Labaton and Sillam agreed "that consummation of The Settlement shall evidence and confirm the complete and total severing and termination of any professional relationship and all obligations, rights and/or duties between The Parties except those expressly assumed under this Settlement Agreement."  (*Id*. at 2).  Sillam also agreed, *inter alia,* to withdraw the complaint he had filed against Labaton with a French court and to return to Labaton all documents he had received from the firm.  (Cplt. ¶ 59; Keller Decl. Ex. B at 4-5).  In the 2009 Sillam Agreement, the parties acknowledged that Sillam (a non-lawyer) was operating "two claims processing companies," including one in the United States.  (*Id.* at 2).  Labaton agreed that for five years, it would not perform claims processing work (that is, would not submit proof of claim forms to claims administrators in class-action settlements) on behalf of one filer, Credit Agricole S.A.; however, the parties agreed that Labaton was free to engage in this work on behalf of anyone else.  (*Id.* at 3).

In the 2009 Saulnier Agreement, Labaton agreed to seek to work with Saulnier, who was a French attorney, on any class actions in which Labaton might be retained to represent one of a group of European-based investments funds that Saulnier would seek to refer to Labaton.  (Cplt. ¶ 56; Keller Decl. Ex. C at 2, 4).  The investment funds in question, referred to in the 2009 Saulnier Agreement as the "Potential Clients," were listed in an exhibit to that agreement.  In the 2009 Saulnier Agreement, Labaton agreed to share with Saulnier a portion of any legal fees it earned from representing the Potential Clients in "Additional or Future Litigation" – but only where such arrangement would comport with the New York Rules of Professional Conduct, meaning that Saulnier must undertake and assume responsibility for a share of the legal work in each case and the client must consent to Saulnier's involvement after full disclosure.  (*Id.* at 2, 4).  The agreement

4

contained a separate fee allocation formula for any fee award resulting from "ongoing litigation against Vivendi in the Southern District of New York (the 'Vivendi Litigation')" that Labaton was already handling.  (Cplt. ¶ 56(a): Keller Decl. Ex. C at 3-4).

The 2009 Saulnier Agreement further provided for Labaton to provide periodic reports to Saulnier regarding any representations covered by the agreement.  (Cplt. ¶ 56(e); Keller Decl. Ex. C at 5).  Between January 2011 and July 2015, Labaton furnished Saulnier with five declarations signed by Keller, each certifying that Labaton had not been retained to represent any of the Potential Clients listed in the exhibit in any matters since signing the 2009 Saulnier Agreement (the "Keller Certifications").  (Cplt. ¶¶ 61-63).  More specifically, the Keller Certifications stated:

> 1.      I am a partner with the law firm of Labaton Sucharow LLP ("Labaton Sucharow").  I submit this Verified Declaration in connection with the Global Settlement Agreement and Full Waiver and Release executed on December 31, 2009 (the "Agreement").
>
> 2.      Since the execution of the Agreement, Labaton Sucharow has not been retained by any "Potential Clients" as defined on "Exhibit No. 1" of the Agreement, attached hereto.

(Keller Decl. Ex. D).

In July 2015, Sillam requested and Labaton supplied the final Keller Certification.  (Cplt. ¶ 64; Keller Decl. Ex. D).  Sillam then sent an e-mail to Sucharow, the then Chairman of Labaton, concerning that certification.  On July 29, 2015, Labaton responded to Sillam, in an e-mail that Plaintiffs cite and quote from in their Complaint.  (Cplt. ¶ 100).  In the ensuing e-mail exchange, Sillam made it clear that he and Saulnier did not trust Labaton's assertions contained in the Keller Certifications.  (Keller Decl. Ex. E).  Among other things, Sillam e-mailed Sucharow on July 29, 2015 that "[t]he problem is precisely that we don't trust you anymore.  Not at all." and that "[w]e don't believe" Labaton's assertions as to what work the firm had or had not performed.  (*Id*. at 2).

The following day, Sillam reiterated his distrust in Labaton, stating that "[a]s you can imagine, it is time for us to investigate the facts." (*Id*.).

Two weeks later, on August 15, 2015, Labaton, Sillam, and Saulnier entered into the 2015 Agreement and Release. (Cplt. ¶¶ 64-65; Keller Decl. Ex. F). As noted above, befitting its broad scope, this document was captioned as the "UNIVERSAL SETTLEMENT AGREEMENT AND GENERAL RELEASE AND COMPLETE WAIVER OF ANY AND ALL CLAIMS AND POTENTIAL CLAIM(S) AGAINST LABATON OR ANY OF ITS PARTNERS, AGENTS OR REPRESENTATIVES." (Keller Decl. Ex. F at 1). In the 2015 Agreement and Release, Labaton agreed to pay and Sillam and Saulnier agreed to accept $99,999.99 in full and final settlement of any claims they might have against Labaton. (Cplt. ¶ 65; Keller Decl. Ex. F at 2). The 2015 Agreement and Release contained broad language reflecting that it was intended to represent a full and final resolution of any obligations that Labaton allegedly owed to Sillam or Saulnier. Among other things, the agreement provided:

> This Universal Settlement includes a release by the Alfonso Clients, not just of any and all claims which either or both could possibly bring under The Settlements [of 2009], but also includes a release and waiver by the Alfonso Clients regarding any claim or potential claim the Alfonso Clients have or could possibly have against Labaton or any of its partners, agents or representatives.

> The parties further acknowledge and agree that this Universal Settlement is fully integrated. All promises, additions, modifications of terms which were ever promised or agreed upon that are not set forth herein (if any), are by the execution of this Universal Settlement, void.

> The parties to this Universal Settlement understand, acknowledge and agree that upon the timely satisfaction of "The Consideration" made by Labaton as set forth herein, the Alfonso Clients shall universally and forever release and waive any claim or potential claim which could possibly be brought in any jurisdiction anywhere in the world for all time arising out of or in any way related to The Settlements, as well as any claim or potential claim the Alfonso Clients have or possibly have against Labaton or any of its partners, agents or representatives.

(Keller Decl. Ex. F at 1-2).

Under the 2015 Agreement and Release, Labaton also retained one vestigial obligation to Saulnier in connection with a case known as "Saipem."  (Cplt. ¶ 65; Keller Decl. Ex. F at 2-3).  In a written agreement dated August 23, 2016, Sillam and Saulnier accepted a final payment of 5,000 euros in satisfaction of this obligation.  (Cplt. ¶ 66; Keller Decl. Ex. G).

Plaintiffs allege that sometime after they signed the 2015 Agreement and Release, they learned that the Keller Certifications were inaccurate because Labaton had supposedly represented Potential Clients in five securities class action litigations that were not disclosed to Plaintiffs. (Cplt. ¶¶ 69, 72).  With respect to these five actions that Defendants supposedly concealed, the Complaint fails to disclose that, as demonstrated by public documents of which the Court may take judicial notice, (i) the first of the five actions was part of the long-pending *Vivendi* litigation of which Plaintiffs were already aware long before signing the 2009 Agreements; (ii) in several of the actions, Labaton was not retained by a Potential Client at all, but by another plaintiff in the same litigation, so Labaton received no fees for representing a Potential Client; (iii) in several of the actions, the court either appointed a different firm as lead counsel or dismissed the action altogether, so that no attorneys' fees were paid to anyone; and (iv) the last of these actions was filed in 2017, two years *after* Labaton delivered the final Keller Certification in July 2015, and thus has no relevance at all.  (*See also infra* pp. 15-18).

Plaintiffs also allege that Labaton failed to disclose that it processed certain proof of claim filings on behalf of two Potential Clients.  (Cplt ¶¶ 70-71).  This type of work was not covered by the fee provisions in the Saulnier Agreement, which provided that Labaton would seek to work with Saulnier in representing Potential Clients "*either in pre-litigation or in litigation*" (Keller Decl. Ex. C at 4 (emphasis added) – not merely in filling out forms.  Significantly, Plaintiffs acknowledged in the 2009 Sillam Agreement that this type of work does not constitute legal

services, by stating that non-lawyer Sillam was establishing two companies to perform this type of work, and Plaintiffs agreed that with just one inapplicable exception, Labaton was also free to perform such work.  (Keller Decl. Ex. B at 2-3).  Plaintiffs assert that "[b]ecause the proof of claim process is not public," they have not been able to establish the full scope of this type of work that Labaton allegedly performed.  (Cplt. ¶ 73).  With respect to the securities class actions that Labaton handled, however, Plaintiffs do not deny that the ECF/PACER database *is* public and that for at least 20 years, it has provided a publicly searchable record of all federal litigation in which a given party or law firm appeared.

Plaintiffs first threatened to assert their current claims against Labaton in 2017.  Multiple law firms in the United States, the United Kingdom, and France contacted Labaton on Plaintiffs' behalf stating that Plaintiffs intended to assert these claims – and a New York firm provided Labaton with a draft complaint that was substantially identical to the Complaint that Plaintiffs' current counsel later filed in this action – but each of these firms dropped the matter after Labaton pointed out that Plaintiffs' threatened claims were baseless.  Through their current counsel, Plaintiffs commenced this action on August 6, 2021, just one week before the six-year anniversary of the 2015 Settlement Agreement and Release.  (ECF Doc. 1).

The Complaint asserts three claims for relief.  The "First Cause of Action" alleges that Labaton and Keller fraudulently induced Plaintiffs to enter into the 2015 Agreement and Release by providing the Keller Certifications.  (Cplt. ¶¶ 82-88).  The Second Cause of Action makes the same substantive allegations but pleads a theory of negligent misrepresentation against Labaton and Keller.  (Cplt. ¶¶ 89-95).  The Third Cause of Action is captioned as one for "aiding and abetting fraudulent inducement" and alleges that Sucharow caused Keller to sign the last of the Keller Certifications knowing that its contents were false.  (Cplt. ¶¶ 96-103).  Each of the three

claims concludes that "[a]s the result of [Defendants' conduct], Plaintiffs gave up their valuable rights set forth in the [2009\ Settlement Agreements." (Cplt. ¶¶ 88, 95, 103). The relief sought is an award of compensatory and punitive damages, each in an unspecified amount. (Cplt. p. 23).

After filing the Complaint, Sillam was interviewed by a Reuters reporter in September 2020. (Keller Decl. Ex. H). The Reuters story reports that "Sillam acknowledged in a phone interview that Labaton did not end up paying any allegedly improper referral fees to his French lawyer *because no clients he referred served as lead plaintiffs*." (*Id.* (emphasis added)). Despite this admission, Plaintiffs did not withdraw their Complaint, or amend it to drop the allegations that Sillam had publicly admitted were false, before purportedly serving it on Defendants in late October 2021. Defendants now move to dismiss the Complaint in its entirety under Rule 12(b)(6).

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint's well-pleaded factual allegations are accepted as true for this purpose, its legal conclusions need not be. *Rolon v. Hennenman*, 517 F.3d 140, 148-49 (2d Cir. 2008); *Champion v. Moda Operandi, Inc.*, No. 20 Civ. 7255 (CM), 2021 U.S. Dist. LEXIS 181090, at *12 (S.D.N.Y. Sept. 22, 2021) (McMahon, J.). Likewise, "[a]llegations in the complaint that are contradicted by . . . documentary evidence are not entitled to a presumption of truthfulness." *MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (internal quotation marks omitted).

Claims sounding in fraud, such as Plaintiffs' claims for fraudulent inducement, negligent misrepresentation, and aiding and abetting fraud, must also satisfy the elevated particularity

9

requirement of Fed. R. Civ. P. 9(b).  *See Krys v. Klejna*, 658 F. App'x 1, 5 (2d Cir. 2016) (fraud and aiding and abetting fraud); *Harborview Value Master Fund, L.P. v. Freeline Sports, Inc.,* No. 11 Civ. 1638 (CM), 2012 U.S. Dist. LEXIS 25553, at *33 (S.D.N.Y. Feb. 23, 2012) (negligent representation) (McMahon, J.).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Champion*, 2021 U.S. Dist. LEXIS 181090, at *13 (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).  "The court may consider the full text of documents that are cited in, incorporated by reference in, or 'integral' to the complaint."  *Id.* (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996)).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Brown v. Twitter*, No. 19 Civ. 6328 (KPF), 2021 U.S. Dist. LEXIS 164909, at *16 (S.D.N.Y. Aug. 31, 2021) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

The Court may also take judicial notice of court filings and other matters of public record, including publicly available filings in other litigations in this and other courts. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *Sapia v. HBO, Inc.*, No. 18 Civ. 1317 (CM), 2018 U.S. Dist. LEXIS 212991, at *21 n.3 (S.D.N.Y. Dec. 17, 2018) (McMahon, J.).  In addition, where a complaint cites or quotes part of a document such as an e-mail, the Court may properly consider that full e-mail exchange (although not other, unrelated e-mails) to provide the complete context. *See Holden v. East Hampton Town*, No. 15 Civ. 4478, 2017 U.S. Dist. LEXIS 53135, at *7 n.2 (E.D.N.Y. Mar.

31, 2017) ("Plaintiffs cite only a small portion of the email exchange. As it has been used in the complaint, the Court will consider the balance of the exchange on this motion.").

## POINT I

### PLAINTIFFS' CLAIMS ARE BARRED BY THE RELEASE THEY PROVIDED IN THE 2015 SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs' claims that Defendants made misrepresentations to them between 2011 and 2015 are barred by the general release that Plaintiffs granted in the 2015 Agreement and Release.

The Second Circuit and the New York Court of Appeals have both emphasized that "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 142 (2d Cir. 2011); *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011). Because releases are meant to bring disputes to a close, a release "should never be converted into a starting point for litigation, except under circumstances and under rules which would render any other result a grave injustice." *Centro Empresarial Cempresa*, 17 N.Y.3d at 276.

Where a release, "by its terms, extinguishes liability on any and all claims arising in connection with specified matters, [it] is deemed to encompass claims of fraud relating to those matters, even if the release does not specifically refer to fraud and was not granted in settlement of an actually asserted fraud claim." *Estate of Mautner v. Alvin H. Glick Irrevocable Grantor Trust*, No. 19 Civ. 2742 (NRB), 2019 U.S. Dist. LEXIS 205105, at *11-12 (S.D.N.Y. Nov. 25, 2019) (citation omitted); *accord Veroblue Farms USA Inc. v. Canaccord Genuity LLC*, No. 20 Civ. 4394 (JPC), 2021 U.S. Dist. LEXIS 166294, at *19 (S.D.N.Y. Sept. 1, 2021) ("a general release executed even without knowledge of a specific fraud effectively bars a claim or defense based upon fraud"); *Gerszberg v. Iconix Brand Group, Inc.*, No. 16 Civ. 8421 (KBF), 2018 U.S. Dist. LEXIS 76716, at *9 (S.D.N.Y. May 7, 2018); *Long v. O'Neill*, 126 A.D.3d 404, 406-08 (1st

11

Dep't 2015).   The scope of such a release also includes claims that the release itself was fraudulently induced, unless the plaintiff can plead with particularity that defendant engaged in a "separate fraud" distinct from the conduct that was the subject of the release.  This has been made crystal clear by the New York Court of Appeals in *Centro Empresarial Cempresa*, 17 N.Y.3d at 276.

Here, in the 2015 Agreement and Release, Plaintiffs released **"**any claim or potential claim which could possibly be brought in any jurisdiction anywhere in the world for all time arising out of or in or in any way related to the [2009] Settlements." **(**Keller Decl. Ex. F at 1-2).  Plaintiffs' Complaint alleges that Defendants misled them in the Keller Certifications, which Labaton was required to provide to Plaintiff under the 2009 Agreement (*see* Cplt. ¶¶ 56(e), 61-62, 83, 91, 97-98), and thereby deprived Plaintiffs of monies to which they were entitled under that agreement. Thus, Plaintiffs' claims "aris[e] out of" and are "related to" the 2009 Agreements and are within the scope of the general release.  Even were this not the case, in the 2015 Agreement and Release, Plaintiffs also released "any other claim or potential claim [they] have or could possibly have against Labaton or any of its partners, agents or representatives."  (Keller Decl. Ex. F at 1-2).

Having granted a release that precludes their claims in this action, Plaintiffs cannot now try to escape the release by claiming they were fraudulently induced to enter into the 2015 Agreement and Release.  Settlement agreements "are judicially favored and may not lightly be set aside." *United States v. Twenty MILJAM-350 IED Jammers*, 669 F.3d 78, 88 (2d Cir. 2011) (citation omitted); *Cater v. New York*, No. 17 Civ. 9032, 2019 U.S. Dist. LEXIS 17780, at *12 (S.D.N.Y. Jan. 30, 2019).   "New York law does not permit a plaintiff to circumvent a release agreement by using a released fraud claim to attack the validity of the release and then assert that very fraud claim for damages." *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 20 (2d Cir.

2019) (citing *Centro Empresarial Cempresa*, 17 N.Y.3d 269).   As a result, a release can be invalidated based upon fraudulent inducement only where the plaintiff was subjected to "a separate fraud from the subject of the release." *Morefun Co., Ltd. v. Mario Badescu Skin Care Inc.*, 588 F. App'x 54, 55-56 (2d Dep't 2014) (quoting *Centro Empresarial Cempresa*, 17 N.Y.3d at 276). "Were this not the case, no party could ever settle a fraud claim with any finality." *Centro Empresarial Cempresa*, 17 N.Y.3d at 276.

Plaintiffs contend that Defendants fraudulently induced them to give up allegedly "valuable rights under the terms of the [2009] Settlements" and provide Defendants with the 2015 Settlement Agreement and Release by including misrepresentations in the Keller Declarations.  (Cplt. ¶¶ 88, 95, 103).   As a result, Plaintiffs' allege that they were misled as to the value of their rights under the 2009 Settlements.   (*Id.*).   Such allegations that Plaintiffs were misled as to the nature or value of the claims they were releasing are not a "separate fraud" and therefore cannot invalidate the release.  *Centro Empresarial Cempresa*, 17 N.Y.3d at 278 (allegations that defendants provided sellers of ownership interests with fraudulent financial information that misstated the interests' "true value" were insufficient to plead a "separate fraud" and hence were barred by defendants' release); *see also Morefun*, 588 Fed App'x at 55-56 (affirming dismissal of claim as barred by release where defendants allegedly induced plaintiff to buy a skin care product company and grant seller a release with fraudulent representations about the one of the company's products not a "separate fraud"); *IBM Corp. v. Simon*, 376 F. Supp. 3d 292, 302 (S.D.N.Y. 2019) (dismissing complaint because providing fraudulent sales revenue figures that induced plaintiff to relinquish securities and grant a release did not constitute a "separate fraud"); *Kafa Investments LLC. v. 2170-2178 Broadway, LLC,* 39 Misc. 3d 385, 392 (Sup. Ct. N.Y. Co. 2013), *aff'd,* 114 A.D.3d 433 (1st

Dep't 2014).  Because Plaintiffs released the claims they now seek to assert, the Complaint should be dismissed.

## POINT II

## PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF THEIR CLAIMS

Even if Plaintiffs had not released their claims, the Complaint should be dismissed because Plaintiffs have not pleaded essential elements of their claims for fraudulent inducement, negligent misrepresentation, and aiding and abetting fraud.  Moreover, the claims are refuted by documentary evidence that may be considered on a motion to dismiss.

The elements of fraudulent inducement are that "'(i) the defendant made a material false representation, (ii), the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered damages as a result of such reliance.'"  *MM Arizona Holdings LLC v. Bonanno*, 658 F. Supp. 2d 590, 593 (S.D.N.Y. 2009) (McMahon, J.) (citation omitted).  A negligent misrepresentation claim has similar elements except that under certain narrow circumstances involving a special relationship between the parties, the scienter element is replaced with culpable negligence.  *See Harborview Value Master Fund,* 2012 U.S. Dist. LEXIS 25553, at *33.  Finally, to plead a claim for aiding and abetting fraud, the plaintiff must allege the existence of an underlying fraud, the defendant's knowledge of that fraud, and that the defendant provided substantial assistance in aid of the fraud.  *Shanghai Weiyi Int'l Trade Co., Ltd. v. Focus 2000 Corp.*, No. 15 Civ. 3533 (CM), 2015 U.S. Dist. LEXIS 141808, at *7 (S.D.N.Y. Oct. 16, 2015) (quoting *Lerner v. Fleet Bank, NA.*, 459 F.3d 273, 292 (2d Cir. 2006)).  Here, at least the misrepresentation, reliance, and damages elements of Plaintiffs' claims are not satisfied.

A.    **Defendants Made No Misrepresentations**

Plaintiffs' central allegation is that Defendants lied to them in the Keller Certifications provided between 2011 and 2015.  (Cplt. ¶¶ 60-63, 67-74).  In each of these five certifications, Keller advised Plaintiffs that "[s]ince the execution of the [2009] Agreement, Labaton Sucharow has not been retained by any 'Potential Clients' as defined in 'Exhibit No. 1' of the Agreement".  (Cplt. ¶¶ 61-62; Keller Decl. Ex. D).

Plaintiffs allege that Labaton was representing certain Potential Clients and fraudulently withheld this information from them.  (Cplt. ¶ 69).  Labaton supposedly represented some of these clients in two separate types of matters.  First, the Complaint contains a list of five specific federal class-action securities cases in which Plaintiffs contend that Labaton was retained to represent Potential Clients.  (Cplt. ¶ 72).  However, documentary evidence, in the form of publicly filed court records available on the nationwide ECF/PACER system, demonstrates that Labaton made no misrepresentations to Plaintiffs concerning any of these cases:

1.    The *Hannezo* Case.  Plaintiffs first allege that Labaton represented three Potential Clients – Allianz Global Investors France, S.A., Eurizon Capital SGR S.p.A, and Eurizon Capital S.A. – "in an action against Guillaume Hannezo in the Southern District of New York" between 2009 and 2012.  (Cplt. ¶ 72(a)).  Hannezo had been the Chief Financial Officer of Vivendi Universal, S.A. ("Vivendi") and had been sued in this Court in a series of securities fraud class actions beginning in 2002, some of which were brought by Labaton.  For procedural reasons, on March 20, 2009, Labaton filed a new action on behalf of certain investors that restated their claims against Hannezo.  This case, *Allianz Global Investors Kapitalanlagesellschaft MBH v. Hannezo*, S.D.N.Y., No. 09 Civ 2592, was filed as related to the long-existing consolidated action *In re Vivendi Universal, S.A. Securities Class Litigation*, No. 02 Civ. 5571.  *See* Keller Decl. Ex. I.

Because Labaton had been handling the *Vivendi* litigation for several years before 2002, and must have been retained to file the related *Hannezo* action prior to March 20, 2009, this litigation was not encompassed by the Keller Certifications, which attested that Labaton had not been retained by any of the Potential Clients "*[s]ince the execution of the Agreement*" on December 31, 2009. (Cplt. ¶ 61; Ex. D (emphasis added)).  Moreover, the 2009 Saulnier Agreement contains several paragraphs discussing "the Vivendi Litigation" in which Labaton was already representing "Allianz clients" and "Eurizon clients" in "ongoing litigation against Vivendi in the Southern District of New York."  (Keller Decl. Ex. C at 3).  Therefore, it is absurd for Plaintiffs to allege that Labaton concealed this representation from Plaintiffs.  Finally, as Plaintiffs acknowledge, the *Hannezo* action was dismissed with prejudice in 2012, so Labaton did not receive any attorneys' fees in the action.  (Cplt. ¶ 72(a); Keller Decl. Ex. J).

2.     The *Corinthian Colleges* Case.  Plaintiffs next allege that Labaton represented KBC Asset Management NV ("KBC"), one of the Potential Clients, in a securities class action against Corinthian Colleges, Inc.  (Cplt. ¶ 72(b)).  This litigation was *Karam v. Corinthian Colleges, Inc.*, C.D. Cal., No. 10-cv-06523.  Review of the ECF/PACER public docket shows that in this action, KBC and Electrical Workers Pension Fund, Local 103 ("Electrical Workers") jointly moved for co-lead plaintiff status on November 1, 2010.  (Keller Decl. Ex. K).  This motion was filed by Motley Rice LLP and Labaton.  (*Id.*).  In connection with that motion, officers of KBC submitted a declaration stating, *inter alia*, that KBC "designate[d] Motley Rice LLC as proposed lead counsel in this action for all purposes" and was also represented by Sturman LLC.  (Keller Decl. Ex. L). KBC's Declaration did not mention Labaton, because KBC had never retained Labaton; Labaton had been retained by the *other* would-be lead plaintiff, Electrical Workers.  In any event, on March 30, 2011, the court designated a completely different group of plaintiffs as lead plaintiffs and

Robbins Geller Rudman & Dowd LLP as lead counsel.  (Keller Decl. Ex. M).  KBC and Labaton did not serve as lead plaintiff or lead counsel.

3.      The *Bank of America* Case.  Plaintiffs next allege that Labaton represented KBC in a class action against Bank of America and moved for the appointment of KBC as lead plaintiff and Labaton as co-lead plaintiff's counsel.  (Cplt. ¶ 72(c)).  The docket in *Pennsylvania Public School Employees' Retirement System v. Bank of America Corp.*, S.D.N.Y., No. 11 Civ. 0733, reflects that on April 4, 2011, an institutional investor group comprising three plaintiffs, including KBC, moved for co-lead status.  (Keller Decl. Ex. N).  Again, KBC filed a declaration in support of this motion attesting that it "designate[d] Motley Rice LLC as proposed lead counsel for KBC in this action for all purposes" and was also represented by Sturman LLC.  (Keller Decl. Ex. O ¶¶ 1, 10).  On June 20, 2011, Judge Pauley denied KBC's motion and appointed the Pennsylvania Public School Employees' Retirement System, not KBC, as lead plaintiff and Barrack, Rodos & Bacine, not Labaton, as lead counsel.  (Keller Decl. Ex. P).  Again, KBC did not serve as lead plaintiff and Labaton did not serve as lead counsel.

4.      The *Weight Watchers* Case.  Plaintiffs next contend that Labaton represented KBC in a class action against Weight Watchers, in which KBC was a co-lead plaintiff and Labaton served as co-lead plaintiff's counsel.  (Cplt. ¶ 72(d)).  This action was *In re Weight Watchers Int'l Secs. Litig.*, S.D.N.Y., No. 14 Civ. 1997.  The lead plaintiffs were Oklahoma Police Pension & Retirement System and KBC.  Yet again, KBC submitted a declaration, which attested that "[w]e . . . designate Motley Rice LLC as proposed lead counsel for KBC in this action for all purposes," also identified Ms. Sturman as counsel for KBC, and did not mention Labaton.  (Keller Decl. Ex. Q).  In addition, KBC and Oklahoma Police submitted a joint declaration stating:

17

KBC and Oklahoma Police each independently determined to seek joint appointment as Lead Plaintiff after consulting with our counsel retained for securities and related matters, Motley Rice and Labaton Sucharow, respectively. . .

(Keller Decl. Ex. R ¶ 7).  Thus, the contemporaneous documentary evidence shows that in *Weight Watchers*, Labaton was retained by Oklahoma Police – not by KBC, whose class action securities counsel consistently remained Motley Rice.  In 2016, Judge Kaplan dismissed the complaint.  *In re Weight Watchers Sec. Litig.*, No. 14 Civ. 1997 (LAK), 2016 U.S. Dist. LEXIS May 11, 2016).  Thus, no attorneys' fees were awarded to any plaintiffs' counsel in the case.

5.     The *Rackspace* Case.  Plaintiffs also allege that Labaton represented KBC in an action against Rackspace Hosting, Inc.  (Cplt. ¶ 72(e)).  However, Plaintiffs aver that "Labaton commenced the case in 2017" and it was dismissed in 2019.  (*Id.*)  An action commenced in 2017 cannot establish that Defendants made misrepresentations years earlier, between 2011 and 2015.

Thus, none of the five actions that Plaintiffs identify in the Complaint supports their allegation that Labaton cheated them out of a right to share in attorneys' fees awarded in these actions.  This is consistent with Sillam's recent public admission that "no clients [Plaintiffs allegedly] referred served as lead plaintiffs" in any litigations.  (Keller Decl. Ex. "H").

Plaintiffs' other theory of why the Keller Certifications were inaccurate is that Labaton "has filed proofs of claims in class actions" on behalf of two clients.  (Cplt. ¶¶ 70-71).  That activity, however, is irrelevant.  In the 2009 Saulnier Agreement, Labaton agreed to seek to work with Saulnier to earn "Potential Fees from Additional and/or Future Litigation" – that is, "fees paid to Labaton in any matter in which Labaton is engaged to represent the 'Potential Clients' (who are Potential Clients at the time representation is initiated), either in pre-litigation or in litigation." (Keller Decl. Ex. C).  This language covers cases in which Labaton might provide legal services to the Potential Clients in handling a prospective or actual litigation.  Plaintiffs also acknowledged

in the 2009 Sillam Agreement that the administrative task of filing of proofs of claim forms does not even constitute the practice of law at all, because the agreement states that Sillam, a non-lawyer, had established two businesses that were engaged in this work.  (Keller Decl. Ex. B at 2).  Federal courts have agreed in various contexts that filing routine "proof of claim" forms is an administrative task that can readily be performed by non-attorneys and does not constitute the practice of law.  *See, e.g., In re Maldonado*, No. 19-30177, 2019 Bankr. LEXIS 2923, at *4 (Bankr. N.D.N.Y Aug. 6, 2019) ("To the extent that filing a [bankruptcy] proof of claim calls for administrative work, these tasks could be completed by a non-attorney."); *In re Boyd*, No. 06-32628, 2012 Bankr. LEXIS 600, at *5 (Bankr. S.D. Tex. Feb. 3, 2012) ("Purely administrative acts, such as a filing a proof of claim, are not the practice of law.").  Plaintiffs also agreed in the 2009 Sillam Agreement that except as to one client (Credit Agricole), Labaton was free to engage in claims-filing work for the Potential Clients.  (Keller Decl. Ex. B at 3).

The lynchpin of the Complaint is the allegation that the Keller Certifications were fraudulent.  Because the certifications were accurate, the Complaint should be dismissed.

## B.     There Was No Reasonable Reliance

Plaintiffs also cannot establish another necessary element of their claims, which is that they relied on the Keller Certifications, and that they did so reasonably or justifiably.  *See, e.g., Stone v. Sutton View Capital LLC,* No. 17 Civ. 1574 (VEC), 2017 U.S. Dist. LEXIS 202778, at *7-8 (S.D.N.Y. Dec. 8, 2017) (dismissing fraud claim on Rule 12(b)(6) motion for lack of reasonable reliance); *Von Ancken v. 7 E. 14 LLC,* 171 A.D.3d 440, 441 (1st Dep't 2019).

A claimant "cannot assert reasonable reliance where she had the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and failed to make use of those means." *Rubin v. Sabharwal*, 171 A.D.3d 580, 580 (1st Dep't 2019).  To plead reasonable reliance,

19

plaintiffs that have "the means to discover the true nature of the transaction by the exercise of ordinary intelligence" must plead they "ma[d]e use of those means." *Arfa v. Zamir*, 76 A.D.3d 56, 59 (1st Dep't 2010).  Moreover, claimants have a heightened duty to investigate representations whose veracity they have already questioned.  "When the party to whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required of it.  It cannot reasonably rely on such representations without making additional inquiry to determine their accuracy." *Centro Empresarial Cempresa*, 17 N.Y.3d at 279 (affirming dismissal of fraud claim on the pleadings); *Norcast S.ar.l. v. Castle Harlan, Inc.*, 147 A.D.3d 666, 667 (1st Dep't 2017); *see also Maslin v. Angel Eyes Produce, Inc.*, No. 18 Civ. 01309 (MAD/DJS), 2019 U.S. Dist. LEXIS 100539, at *8 (N.D.N.Y. June 17, 2019) ("Reasonable reliance entails a duty to investigate the legitimacy of certain statements where the plaintiff is 'placed on guard or practically faced with the facts.'") (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

In assessing whether a plaintiff has sufficiently pleaded reasonable reliance, courts consider "the entire context of the transaction, including the sophistication of the parties, and the content of any agreements between them." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 00967 (LJL), 2021 U.S. Dist. LEXIS 45110, at *56-57 (S.D.N.Y. Mar. 10, 2021) (quoting *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003)).

Claims of reasonable reliance are often rejected where acrimony and distrust between the parties was evidenced before an agreement was signed.  Under those circumstances, contracting parties cannot plausibly assert that they were "lulled by good faith or trust in the parties across the bargaining table." *Shea v. Hambros PLC*, 244 A.D.2d 39, 47 (1st Dep't 1998); *see also Bentivoglio v. Event Cardio Group, Inc.*, No. 18 Civ. 2040 (PKC), 2021 U.S. Dist. LEXIS 34635, at *24-25 (S.D.N.Y. Feb. 24, 2021); *Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 Civ.

5607 (NRB), 2017 U.S. Dist. LEXIS 105418, at *14-15 (S.D.N.Y. July 6, 2017) (dismissing fraud claim on the pleadings due to lack of reasonable reliance).

Here, Plaintiffs did not trust Labaton and did not place their faith in the Keller Certifications.  By their own admission, Plaintiffs believed Labaton had sought to defraud them out of fees to which they were entitled as early as 2007-2009, when Sillam sued Labaton for fraud in France, in the dispute eventually resolved in the 2009 Agreements.  (Cplt. ¶¶ 52-54).  Nor did Plaintiffs blindly trust Labaton and the Keller Certifications before they signed the 2015 Agreement and Release six years later.  The Complaint alleges that on July 29, 2015, Labaton responded to a July 22, 2015 e-mail from Sillam to Sucharow concerning the final Keller Certification.  (Cplt. ¶ 100).  In direct response to Labaton's July 29, 2015 e-mail to Sillam, Sillam responded in the same e-mail chain the same day that Plaintiffs found Labaton's representations to be "[a]bsolutely not credible" and told Labaton that "[t]he problem is precisely that we don't trust you anymore. Not at all."  (Keller Decl. Ex. E at 2, 3).  Sillam also told Labaton the next day that "it is time for us to investigate the facts."  (*Id.* at 2).

As noted above, the Court may properly consider this e-mail exchange between the parties, which Plaintiffs cite albeit only in part, on this Rule 12(b)(6) motion.  *See Holden*, 2017 U.S. Dist. LEXIS 53135, at *7 n.2 ("Plaintiffs cite only a small portion of the email exchange. As it has been used in the complaint, the Court will consider the balance of the exchange on this motion.").

Even though Plaintiffs expressed a lack of trust in Labaton's representations to them, Plaintiffs do not allege that they investigated whether Labaton had actually represented any Potential Clients in federal securities class actions between 2011 and 2015.  During this period, as thereafter, public information such as the ECF/PACER database was readily available and could

21

have been used to identify any cases in which Labaton supposedly represented a Potential Client (just as Plaintiffs did subsequently).

Plaintiffs also failed to preserve any claims relating to the Keller Certifications by incorporating Defendants' representations into the terms of the 2015 Agreement and Release itself. *See Permasteelisa, S.p.A. v. Lincolnshire Mgt., Inc.*, 16 A.D.3d 352, 352 (1st Dep't 2005) (failure to bind a party to pre-contractual representations is inconsistent with reasonable reliance upon them); *28th Highline Assocs., L.L.C. v. Roache*, No. 18 Civ. 1468 (RJS), 2019 U.S. Dist. LEXIS 30057, at *30 (S.D.N.Y 2019) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997)).  Here, Plaintiffs did not include any representations in the 2015 Agreement and Release regarding the work Labaton had or had not performed or Labaton's compliance with the 2009 Agreements.  To the contrary, Plaintiffs acknowledged and agreed to a merger clause which provided, *inter alia*, that any "promises . . . . which were ever promised . . . not set forth herein (if any), are by the execution of this Universal Settlement void."  (Keller Decl. Ex. F at 1).

### C.     Plaintiffs Have No Damages

The Complaint should also be dismissed for failure to sufficiently allege that Plaintiffs suffered recoverable damages, a necessary element of their claims.

With respect to Plaintiff Saulnier, his theory of damages is that by fraudulently inducing him to enter into the 2015 Agreement and Release, Defendants misled him into giving up the valuable right to share in attorneys' fees under the 2009 Agreement.  However, as discussed on pages 15-19 above, Labaton did not actually receive any attorneys' fees from any such representations covered by the 2009 Saulnier Agreement.  If Saulnier had performed meaningful professional services on cases in which Labaton represented Potential Clients covered by the 2009

Saulnier Agreement, Saulnier allegedly would have been entitled share in Labaton's contingent fee. But as discussed above, in each of the five class actions Plaintiffs identify in the Complaint, either Labaton was not selected as lead counsel, the case was dismissed, or both. Labaton's other type of work discussed in the Complaint, proof of claim processing, was not within the scope of the 2009 Saulnier Agreement. Thus, Saulnier would not have shared in any attorneys' fees paid to Labaton in any of the matters he describes, even if he had not signed the 2015 Agreement and Release, and he therefore suffered no damages from the alleged fraud.

Sillam's claim of damages is even thinner than Saulnier's. Like Saulnier, Sillam alleges that because he was misled into signing the 2015 Agreement and Release, he was deprived of his right to payments from Labaton under the 2009 Sillam Agreement. But Sillam had no such rights. The 2009 Sillam Agreement provides that Sillam received a one-time cash payment in 2009 in return for "the complete and total severing and termination of any professional relationship and all obligations, rights and/or duties between The Parties," except for his rights under the 2009 Sillam Agreement. (Keller Decl. Ex. B at 2). Sillam has not identified any provision of the 2009 Sillam Agreement that would have entitled him to any additional compensation from Labaton, even if he had not signed the 2015 Agreement and Release. Therefore, Sillam also has no damages.

Lastly, Plaintiffs also seek to recover punitive damages. (Cplt. p. 23). Under New York law, "the standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases . . . ." *Marinaccio v. Town of Clarence*, 20 N.Y.3d 506, 511 (2013) (citation omitted). Even if Plaintiffs had stated a viable fraudulent inducement claim, punitive damages are not available "in the 'ordinary' fraud and deceit case." *Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 120 (2d Cir. 2019) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961)). To warrant punitive damages, a defendant's conduct must be "sufficiently egregious

and morally culpable" and must "evince a 'high degree of moral turpitude' or 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20 Civ. 3661 (MKV), 2021 U.S. Dist. LEXIS 187111, at *29 (S.D.N.Y. Sept. 29, 2021) (striking punitive damages demand); *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 85 A.D.3d 457, 458 (1st Dep't 2011) (quoting *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (2007)). Where a fraud or deceit claim "arises from a contractual relationship," punitive damages may be awarded only if the fraud was "directed at the public generally." *New York Univ. v. Con't Ins. Co.*, 87 N.Y.2d 308, 316 (1995); *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 613 (1994); *Z-Axis Tech Solutions, Inc. v. Richmond Capital Group, LLC*, No. 17 Civ. 3983 (GED), 2018 U.S. Dist. LEXIS 26084, at *8 (S.D.N.Y. Feb. 14, 2018). Plaintiffs' allegations arising from the parties' specific contractual relationship do not satisfy any of these requirements.

## **CONCLUSION**

For all the foregoing reasons, the Complaint should be dismissed.

Dated:  New York, New York
        November 19, 2021

GANFER SHORE LEEDS & ZAUDERER LLP

By: _____

Mark C. Zauderer
Ira Brad Matetsky
Yoram J. Miller
360 Lexington Avenue
New York, New York 10017
(212) 922-9250
(212) 922-9335 (facsimile)
mzauderer@ganfershore.com
*Attorneys for Defendants*

25