UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GERARD SILLAM and ALDRIC SAULNIER,

                Plaintiffs,             No. 21 CV 6675 (CM)

    -against-

LABATON SUCHAROW LLP,
CHRISTOPHER J. KELLER, and
LAWRENCE A. SUCHAROW,

                Defendants.
------------------------------------------------------------------X


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


**RAISER AND KENNIFF, P.C.**

Douglas M. Reda, Esq.
300 Old Country Rd., Suite 351
Mineola, New York 11501
(516) 742-7600
douglas@raiserandkenniff.com

*Attorneys for Plaintiff*
*Gerard Sillam & Aldric Saulnier*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 2

FACTS ................................................................................................................................... 2

ARGUMENT ....................................................................................................................... 11

I.    Plaintiffs' claims that Defendants made misrepresentations to them
      between 2011 and 2015 are not barred by the Universal Settlement
      Agreement and General Release............................................................................12

II.   Plaintiffs have successfully plead the elements of their
      claim...........................................................................................................................13
      A.  Fraudulent Inducement...........................................................................13
      B.  Negligent Representation......................................................................... 14
      C.  Reasonable Reliance................................................................................17
      D.  Plaintiffs' Damages................................................................................18

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ................................................... 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................... 11

*Bellefonte Re Inc. Co. v Argonaut Ins. Co.,*
  757 F2d 523, 527-528 [2d Cir 1985] ...................................................................... 12

*Cantor v. Levine,*
  115 A.D.2d 453, 495 N.Y.S.2d 690 (2nd Dept.1985) ............................................. 18

*Desiderio v. National Ass'n of Sec. Dealers, Inc.,*
  191 F.3d 198, 202 (2d Cir. 1999) ............................................................................ 11

*Greco v. Trauner, Cohen & Thomas, L.L.P.,*
  412 F.3d 360, 363 (2d Cir. 2005) ............................................................................ 11

*J.A.O. Acquisition Corp. v. Stavitsky,*
  8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 863 N.E.2d 585) ....................................... 14

*King v. Simpson,*
  189 F.3d 284, 287 (2d Cir. 1999) ............................................................................ 12

*Kimmell v. Schaefer,*
  89 N.Y.2d 257, 675 N.E.2d 450 (1996) ............................................................. 14,15

*Lengyel v. Lint,*
  167 W.Va. 272, 280 S.E.2d 66 (1981) ..................................................................... 13

*Ossining Union Free School Dist. v. Anderson LaRocca Anderson,*
  73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91). ............................................... 15

*Starr v. Georgeson S'holder, Inc.,*
  412 F.3d 103, 109 (2d Cir. 2005) ............................................................................ 11

*Villager Pond, Inc. v. Town of Darien,*
  56 F.3d 375, 378 (2d Cir. 1999) .............................................................................. 12

*White v. Nat'l Steel Corp.,*
  938 F.2d 474, 490 (4th cir.1991) ............................................................................ 13

*Zinermon v. Burch,*
  494 U.S. 113, 118 (1990) ........................................................................................ 11

## Statutes

F.R.C.P. 12(b)(6) ........................................................................................................ 11

Plaintiffs, Gerard Sillam and Aldric Saulnier respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss (hereinafter the "Motion").

## PRELIMINARY STATEMENT

Defendants' papers in support of their Motion are notable only in what they ignore rather than what they rely upon. Defendants should not be given further leeway to avoid and conceal the very facts they hope the Court will rely upon in considering the Motion. Defendants fail to present the truth as they are aware that their dealings with the Plaintiffs violate the New York Rules of Professional Conduct. Defendants have a pattern and practice of fraud as this is not the only matter wherein Defendants have presented false affidavits/declarations. Instead, the Court should impartially examine Plaintiffs' good-faith allegations and apply the proper deference to those facts which Plaintiffs have set forth. Accordingly, Defendants' Motion should be denied in its entirety; Plaintiffs should be granted the opportunity to further prove the facts of this matter through discovery, as most of the documents Plaintiffs require are in the possession of Defendants and not a matter of public record, or at a minimum, the Court should grant Plaintiffs' leave to amend their Complaint.

## FACTS

The facts set forth below are derived from Plaintiffs' Verified Complaint (hereinafter "Complaint") dated August 6, 2021, and from the corresponding exhibits that are attached to the Affirmation of Douglas M. Reda (hereinafter "Reda Affirmation"). A copy of the Complaint is attached to the Reda Affirmation as Ex. "A".

On or around November 3, 2005, Plaintiff, Gerard Sillam (hereinafter "Plaintiff" or "Sillam"), attended a meeting with Defendant Christopher J. Keller (hereinafter "Defendant" or "Keller") and others, attorneys at Defendant, Labaton Sucharow, LLP (hereinafter "Defendant"

or "Labaton"). During the aforementioned meeting, Keller mentioned the possibility that, "Sillam could refer European investment funds to Labaton". (Complaint ¶ 25).

Subsequent to the November 3, 2005, meeting, Keller arranged a second meeting with Sillam, Keller and Jennifer Tetefsky, Labaton's director of business development. (Complaint ¶ 27). During the meeting, Keller expressed interest in Sillam's contacts with companies managing investment funds regulated by the European Union (hereinafter "UCITS Funds"). (Complaint ¶ 28 et seq.). These UCITS Funds owned many securities that traded on U.S. exchanges. Accordingly, "Keller viewed them as potential Plaintiffs in securities class actions filed in the United States".

During the same meeting, Keller proposed a referral arrangement with Sillam. (Complaint ¶ 29 et seq.). Keller's proposed arrangement was that "Sillam would work for Labaton as an independent contractor whose sole job was to refer UCITS funds to Labaton". In exchange, "Labaton would pay Sillam a referral fee equal to fifteen percent (15%) of the total fees paid to Labaton in connection with any matter for which Labaton represented a client referred by Sillam". Furthermore, Keller instructed Sillam to retain a lawyer, who would collect the referral fees on Sillam's behalf. (Complaint ¶ 30 et seq.). Keller did not provide a detailed explanation to Sillam why an attorney was needed for their proposed arrangement; only stating that this was how Labaton handled this type of arrangement.

It is important to note that Sillam is a French Businessman and is not an attorney. Sillam did not have any knowledge that his proposed referral fee arrangement with Labaton violated the New York Rules of Professional Conduct. (Complaint ¶ 31; Reda Affirmation Ex. "B" Sillam Affidavit at 2). According to the New York Rules of Professional Conduct, "A lawyer shall not compensate or give anything of value to a person or organization to recommend or obtain

employment by a client, or as a reward for having made a recommendation resulting in employment by a client…". NY ST RPC Rule 7.2 (McKinney).

Nevertheless, Defendant, Labaton Sucharow, LLP, is a Law Firm with offices in New York, who upon information and belief, have been practicing law for more than fifty (50) years. Likewise, Defendants Christopher J. Keller and Lawrence A. Sucharow, are attorneys, who upon information and belief, have been practicing law in New York for more than twenty (20) years. It is extremely unlikely that the above-mentioned Defendants were not aware that their arrangement with Sillam violated the New York Rules of Professional Conduct.

Accordingly, this was the first instance wherein Defendants defrauded Sillam. Sillam would later learn that the purpose of Keller's proposed arrangement, specifically the use of an attorney to receive Sillam's referral fees, "was to obscure the nature of a referral arrangement between Labaton and Sillam, a nonlawyer". (Complaint ¶ 32). In fact, had Sillam had this knowledge previously, he would not have entered into such an arrangement with the Defendants (see Reda Affirmation Ex. "B" Sillam Affidavit at 2).

On or around February 21, 2006, Keller's proposed referral fee arrangement with Sillam was formalized by letter via Labaton and Jean Marc Descoubes (hereinafter "Descoubes"). Descoubes, was the (French) attorney Sillam retained at Keller's request "to act as an intermediary for the payment of referral fees from Labaton to Sillam". (Complaint ¶ 33). The letter agreement (hereinafter "Descoubes Agreement") was "intended to memorialize the manner in which the Descoubes firm and Labaton will co-venture securities class action and other representative litigation on behalf of clients obtained principally through the efforts of your firm and its relationship. These clients will be referred to herein as 'Descoubes Clients'. (Complaint ¶ 34 *et seq*; Reda Affirmation Ex. "C" Descoubes Agreement). Additionally, it was agreed that

"Descoubes would receive 15% of the net attorneys' fee Labaton Sucharow ultimately earns in a case in which a Descoubes' client appointed as Lead Plaintiff". (*Id at* 1).

At the time the Descoubes Agreement was executed, Defendants did not expect any actual client referrals from Descoubes. (Complaint ¶ 35; Reda Affirmation Ex. "B" Sillam Affidavit at 2). This was purely a way in which Defendants could attain client referrals from Sillam and use the Descoubes Agreement to get around the New York Rules of Professional Conduct to pay Sillam for his referrals. This is evident in an email exchange between Sillam and Sucharow on March 1, 2007, wherein they discuss Sillam's fees concerning Sillam's client referrals to Defendants. (Reda Affirmation Ex. "D" Email Exchange dated March 1, 2007).

Notwithstanding the above-mentioned agreement, Labaton and Sillam executed an additional separate agreement (hereinafter "Sillam Agreement" or "Consulting Agreement) on April 25, 2006. The Sillam Agreement provided that, "Gerard Sillam shall provide to Labaton Sucharow his personal assistance and expertise, in directly or indirectly facilitating Labaton Sucharow's representation of foreign institutional investors who, as the result of Gerard Sillam's efforts become clients of Labaton Sucharow ('Client(s)'), and consulting on behalf of Labaton Sucharow in relation thereto". (Complaint ¶ 36 *et seq*; Reda Affirmation Ex. "E" Consulting Agreement). For Sillam's services, "Labaton agreed to pay Sillam a 'success fee' for each investment fund client secured by Sillam's efforts", and an additional success fee "in the event that Client is appointed Lead Plaintiff as defined by the Private Securities Litigation Reform Act of 1995 (hereinafter "PSLRA") and Labaton Sucharow is appointed Lead Counsel as defined by the PSLRA". (*Id at 1*).

On or around May 1, 2008, Descoubes assigned all interests and rights in the Descoubes Agreement to Plaintiff Aldric Saulnier (hereinafter "Plaintiff" or "Saulnier"). (Complaint ¶ 37 *et*

*seq*).  Saulnier, a French attorney, had no knowledge of the New York Rules of Professional

Conduct and, that the arrangement between Sillam, Descoubes, and Labaton violated the New

York Rules of Professional Conduct.

"Once the referral arrangement was in place, Sillam arranged dozens of meetings across

Europe between Labaton lawyers and Managers of leading UCITS funds". (Complaint ¶ 38).

Additionally, Sillam also organized a conference in Paris to promote Labaton's efforts and

Sillam secured media coverage of the conference (Complaint ¶ 39). Moreover, Sillam

successfully arranged for meetings between Labaton and numerous funds, "these high-value

referrals resulted in many successful engagements for Labaton", which are more fully set forth in

detail in Plaintiffs' complaint ¶'s 40-47.

Not long thereafter, Labaton began reducing a portion of Sillam's fee (Complaint ¶ 51)

and, "Labaton also resisted its obligation to pay Plaintiffs' referral fees and contract bonus in

connection with the Vivendi class action". (Complaint ¶ 52). Sillam filed a complaint in France,

alleging his entitlement to referral fees and asserting that Labaton had defrauded him (Complaint

¶ 53). Towards the end of 2009 Plaintiffs and Labaton settled their disputes and the parties

executed two (2) settlement agreements, the Saulnier Settlement Agreement (hereinafter "Global

Settlement Agreement"), and the Sillam Settlement Agreement (hereinafter "Sillam Settlement

Agreement").

The terms of the Global Settlement Agreement were that Labaton agreed to pay Saulnier

thirty percent (30%) of the gross contingency fees earned by Labaton "...attributable to the

Vivendi Clients, in connection with its ongoing litigation against Vivendi in the Southern District

of New York...", (Complaint ¶ 56 *et seq*; Reda Affirmation Ex. "F" Global Settlement

Agreement at 3); Additionally, thirty percent (30%) of the gross contingency fees earned by

Labaton, "shall also apply to and include any other matters in which Labaton represents a

Potential Client in Litigation or Pre-litigation...". *(Id. At 3)*; Labaton agreed to pay Saulnier

"...in an amount equal to 15% the gross fees paid to Labaton in any matter in which Labaton is

engaged to represent any of the 'Potential Clients' (who are potential clients at the time

representation is initiated) either in pre-litigation or in litigation...within five (5) calendar years

from the date on which this settlement agreement is executed". *(Id. At 4)*. Potential Clients

signify the "Referred Clients" that Sillam had referred to the Defendants.

Labaton agreed to produce "verifiable documents" for their representation of any of the

"Potential Clients" for pre-litigation and post litigation. *(Id at 4)*. Additionally, Labaton agreed to

produce "in a verified report, a full list of any matters pending in which Labaton represents any

of the Potential Clients anywhere in the world as of the date of execution of The Settlement...".

*(Id At 5.)*. Labaton further agreed to provide to Saulnier's counsel, "a verified declaration

disclosing whether any of the Potential Clients has/have retained Labaton regarding any potential

litigation or actual litigation anywhere in the world during the previous six months...". *(Id At 5)*.

The Saulnier Agreement included a confidentially clause that precluded Saulnier from

making "any disparaging remarks" about Labaton "to French or US federal or state regulators,

members of the French or US federal or state judiciary, or any Bar Association". (Complaint ¶

57; *Id at 8*). These terms were included in the agreement no doubt to further hide Defendants'

violations of the New York Rules of Professional Conduct.

The terms of the Sillam Settlement agreement were that Labaton agreed to pay four

hundred thousand dollars ($400,000) to Sillam. (Complaint ¶ 59 *et seq*).  In exchange, Sillam

agreed to dismiss the lawsuit against Labaton that was pending in a French Court and Sillam

waived and released all claims against Labaton. Notably, there was a section of the Sillam

Settlement Agreement dedicated to claims processing/ filing claims. (See Reda Affirmation Ex. "G" Sillam Settlement Agreement). Sillam maintains two (2) claims processing companies, one in the United States (First International Claims Filing, Inc.), and one in Europe (EU Claims Filing Limited). (*Id at 2*). The Parties agreed that "Labaton is at all times free to undertake and provide assistance of any type regarding claims processing or claims filing on behalf of any company - exclusive of and with the sole exception of Credit Agricole…". (*Id at 3*). Sillam agreed to these terms, however, there was no such agreement that if Labaton filed proof of claims or conducted claims processing with any of Sillam's referred clients ("Potential Clients"), there would be no referral fee paid to Sillam by Labaton.

Moreover, as per the Agreement, Labaton required Sillam to deliver and destroy any and all documents and electronic information in his possession, including but not limited to emails, that relate to Labaton or its attorneys. (*Id At 4*). These terms were also included in the agreement no doubt to further hide Defendants' violations of the New York Rules of Professional Conduct.

Pursuant to the 2009 Settlement Agreements, Keller submitted declarations to Plaintiffs stating that since their agreement, Labaton has not been retained by any "Potential Clients". (Complaint ¶ 61 *et seq*). Defendant Keller signed Declarations to this effect on January 21, 2011, on June 9, 2011, on February 14, 2012, on July 16, 2013, and on July 8, 2015. (Complaint ¶ 62; Reda Affirmation Ex. "H" (collectively) the Keller Declarations). Following the July 8, 2015, Declaration, Plaintiffs did not trust Defendants' assertions in the Keller Declarations and endeavored to investigate further. Plaintiffs found it difficult to investigate as they were unable to attain the necessary documentation that is easier to obtain as a citizen of the United States. (See Reda Affirmation Ex. "B" Sillam Affidavit at 3).

8

As Plaintiffs were unable to conduct a proper investigation, and on the basis of Defendants deceptive Keller Declarations, On August 15, 2015, Defendants persuaded Plaintiffs to execute a new settlement agreement (hereinafter, the "Universal Settlement Agreement"). (Complaint ¶ 64). The Universal Settlement Agreement "explicitly concerns and applies to the two settlement agreements which were entered into on or about 12/30/09 and 12/31/09; respectively entitled 'Settlement and Full Waiver and Release' ('Labaton – Sillam Settlement') and 'Global Settlement Agreement and Full Waiver and Release'…". (See Reda Affirmation Ex. "I" Universal Settlement Agreement at 1). This agreement terminated Plaintiffs' rights under the two (2) previous settlement agreements, in exchange Labaton would furnish $99,999.99 to the Plaintiffs and assignment of Labaton's separate interest in certain fees owed to Labaton regarding the Saipem litigation. (Complaint ¶ 65; *Id at 2*).

Subsequent to the execution of the Universal Settlement Agreement, on or about November 7, 2017, "Sillam learned from a representative of AXA Investment Managers that Labaton has filed proof of claims in class actions on AXA Investment Managers behalf". (Complaint ¶ 70). Sillam learned the same from a representative of Degroof PeterCam regarding Labaton and filing proof of claims on their behalf. (Complaint ¶ 71). Plaintiffs began to discover additional matters in which Defendants have represented certain "Referred Clients" or "Potential Clients". Plaintiffs' assertions that Defendants represented the aforementioned clients are not limited to mere litigation, but also include pre-litigation, post litigation, and the proof of claims process, all of which should have been at the very least represented on the Keller Declarations. Importantly, pre-litigation, post litigation and proof of claims process are not public, and without a proper discovery process and/or exchange of documents, Plaintiffs are unable to "obtain additional information concerning the extent of Labaton's work for Referred Clients since the

settlement Agreements in 2009". (Complaint ¶ 73). Thus, "Labaton has concealed from Plaintiffs that it has earned millions of dollars from Referred Clients since 2009". (Complaint ¶ 76).

Furthermore, an attorney at Levi & Korsinsky LLP, revealed to Sillam the matter of the State Street Class Action (Arkansas Teacher Retirement System v. State Street Corporation, Index No. 11-CV-10230) that was filed in the District of Massachusetts. Upon information and belief, Labaton had allegedly submitted false affidavits to the Court concerning attorneys' fees. This matter is currently pending an appeal (Lieff Cabraser v. Labaton Sucharow, Index No. 21-1069) at the 1st U.S. Circuit Court of Appeals. Shortly after receiving this information, Plaintiffs filed a criminal matter in France against the Defendants. (See Reda Affirmation Ex. "B" Sillam Affidavit at 4 and Ex. "M" Sophie Larroque Affidavit).

Thereafter, Plaintiffs attempted to assert their current claims against Defendants. Plaintiffs' attorneys contacted the Defendants to attempt to resolve this matter without pursuing further litigation. (See Reda Affirmation Ex. "B" Sillam Affidavit at 4, 5). Plaintiffs then sought to postpone until the criminal matter in France was completed before they continued to pursue any matters against the Defendants in the United States. As the criminal matter in France has yet to be completed and Defendants did not accept Plaintiffs prior requests for resolution, Plaintiffs had no choice but to commence the action against the Defendants before the deadline on August 13, 2021.

On or around September 2020 Sillam was interviewed by a Reuters reporter, wherein Sillam stated that "Labaton did not end up paying any alleged improper referral fees to his French Lawyer because no clients he referred served as lead plaintiffs". (See Reda Affirmation Ex. "J" Reuters Report). Plaintiffs concluded that only the filing of the proof of claims, pre and post litigation, was the real basis of their claim. The Reuters interview was a good faith attempt

to say, "that we do not want to claim what is not owed to Mr. Saulnier and I". (Reda Affirmation

Ex. "B" Sillam Affidavit at 5). Plaintiffs' former attorney, who filed the complaint, did not

amend the Complaint to represent this prior to the six (6) years deadline.

## ARGUMENT

Rule 12(b)(c) provides for the dismissal of a complaint containing allegations which fail

to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Thus, in order to

survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face. *See Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In assessing plausibility on a Rule

12(b)(6) motion to dismiss, a court must assume the veracity of all well-pleaded factual

allegations contained in the complaint and afford the plaintiff every reasonable inference. *See*

*Zinermon v. Burch*, 494 U.S. 113, 118 (1990).

In deciding a dismissal motion under Rule 12(b)(6), a district court "must accept all of

the plaintiff's factual allegations in the complaint as true and draw inferences from those

allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412

F.3d 103, 109 (2d Cir. 2005); *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198,

202 (2d Cir. 1999).

A complaint should not be dismissed "unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). "The issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1999)).

Plaintiffs here have asserted sufficient allegations in the Complaint to demonstrate that they can prove their claims once given access to factual evidence long withheld by Defendants. Defendants' Motion to Dismiss is yet another mechanism Defendants are employing to circumvent liability. Accordingly, Defendants' Motion to Dismiss should be denied in its entirety.

<u>**POINT I**</u>
**Plaintiffs' claims that Defendants made misrepresentations to them between 2011 and 2015 are not barred by the Universal Settlement Agreement and General Release.**

The Universal Settlement Agreement was executed by the Parties on August 15, 2015. Defendants were able to persuade Plaintiffs to execute the Universal Settlement Agreement on the sole foundation that the Keller Declarations were in fact true and authentic. Plaintiffs would not have signed the Universal Settlement Agreement but for the Keller Declarations stating that "Since the execution of the Agreement, Labaton Sucharow has not been retained by any 'Potential Clients' as defined in 'Exhibit 1' of the Agreement, attached hereto". (Complaint ¶ 15). Shortly thereafter, Plaintiffs ascertained that that Defendants were in fact retained by the "Potential Clients" and that the Defendants fraudulently persuaded Plaintiffs to sign the Universal Settlement Agreement based on the fictitious Keller Declarations.

. "…a party that release a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release. *Bellefonte Re Inc. Co. v Argo naut Ins. Co.,* 757 F2d 523, 527-528 [2d Cir 1985]. The Universal Settlement Agreement, "explicitly concerns and applies to the two settlement agreements which were entered into on or about 12/30/09 and 12/31/09". (See Reda Affirmation Ex. "I" Universal

Settlement Agreement at 1). The Sillam Settlement Agreement and Global Settlement Agreement (hereinafter "2009 Settlement Agreements") were a result of Labaton reducing a portion of Sillam's fee (Complaint ¶ 51) and, Labaton defying its obligation to pay Plaintiffs' referral fees and contract bonus in connection with the Vivendi class action". (Complaint ¶ 52).

The 2009 Settlement Agreements were not a dispute over the (Keller) Declarations. Plaintiffs' claims of fraud that resulted in the execution of the 2009 Settlement Agreements are a separate fraud from Defendants fraudulently persuading Plaintiffs to sign the Universal Settlement Agreement based on the Keller Declarations. Therefore, Plaintiffs claim of Fraudulent Inducement against Labaton, and Keller are not barred by the General Release (Universal Settlement Agreement).

## POINT II
**Plaintiffs have successfully plead the elements of their claim.**

**A.     Fraudulent Inducement**

"There are four elements to a claim of fraudulent inducement: 1) the allegedly fraudulent act was committed by the defendant; 2) the act was material and false; 3) the plaintiff justifiably relied upon the act; and 4) the plaintiff was damaged because he relied upon it. *White v. Nat'l Steel Corp.*, 938 F.2d 474, 490 (4th cir.1991) (citing *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981)). Defendant Keller made false declarations as an agent of Defendant Labaton by declaring that Defendants did not represent the "Potential Clients". Since the execution of the 2009 Settlement Agreements, Labaton was in fact retained by the "Potential Clients". In 2017, Sillam learned from a representative of AXA Investment Managers and Degroof PeterCam that Labaton has filed proof of claims in class actions on AXA Investment Managers and Degroof PeterCam's behalf since Sillam referred them to Labaton. (Complaint ¶ 70 & ¶ 71). Defendants made these false statements with the intention of inducing Plaintiffs to

sign the Universal Settlement Agreement. Plaintiffs relied upon these false (Keller) declarations in their decision to sign the Universal Settlement Agreement. Plaintiffs would not have signed the Universal Agreement if they had the knowledge that Defendants did in fact represent the "Potential Clients" from 2011 to 2015. Labaton concealed from Plaintiffs that it has earned millions of dollars from Plaintiffs Referred Clients since 2009. (Complaint ¶ 76). In signing the Universal Settlement Agreement, Plaintiffs gave up their valuable rights to the fees set forth in the 2009 Settlement Agreements.

Defendants replaced the 2009 Settlement Agreements with the (2015) Universal Settlement Agreement in exchange for $99,999.99 and assignment of Labaton's separate interest in certain fees owed to Labaton regarding the Saipem litigation. (Complaint ¶ 65; *Id at 2*). If the Keller Declarations were in fact true, and Defendants did not retain any "Potential Clients", then theoretically Defendants did not owe anything to the Plaintiffs in 2015, therefore, the Universal Settlement Agreement would be unnecessary. Why even persuade the Plaintiffs in signing a new Settlement Agreement (Universal Settlement Agreement) in exchange for $99,999.99 and assignment of Labaton's separate interest, if Defendants did not owe Plaintiffs any fees as per the 2009 Settlement Agreements?

## B.    Negligent Misrepresentation

"On a cause of action alleging negligent misrepresentation, the plaintiff is required to demonstrate, '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information'". *Kimmell v. Schaefer*, 89 N.Y.2d 257, 675 N.E.2d 450 (1996), (quoting, *J.A.O. Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 863 N.E.2d 585). "Professionals, such as lawyers and engineers, by virtue of their

training and expertise, may have special relationships of confidence and trust with their clients, and in certain situations we have imposed liability for negligent misrepresentation when they have failed to speak with care". *Kimmell v. Schaefer*, 89 N.Y.2d 257, 675 N.E.2d 450 (1996) (*quoting, e.g., \*264 Ossining Union Free School Dist. v. Anderson LaRocca Anderson,* 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91).

Pursuant to the 2009 Settlement Agreements, Keller submitted declarations to Plaintiffs stating that since their agreement, Labaton has not been retained by any "Potential Clients". (Complaint ¶ 61 *et seq*). Defendant Keller signed Declarations to this effect on January 21, 2011, on June 9, 2011, on February 14, 2012, on July 16, 2013, and on July 8, 2015. (Complaint ¶ 62; Reda Affirmation Ex. "H" Keller Declarations). Nonetheless, Plaintiffs would later learn that Defendants mispresented that they were retained by the "Potential clients" as listed in Exhibit No. 1 of the Agreement. (Reda Affirmation Ex. "H" Keller Declarations at 2).

In the Motion, Defendants' limit Plaintiffs claims, that Defendants retained "Potential Clients", to the cases that are referenced in the Complaint. Specifically, the Hannezo case, the Corinthian Colleges case, the Bank of America case, The Weight Watchers case, and the Rackspace case, however, Plaintiffs were not suggesting that Defendants were only retained by clients associated with those five (5) cases. Plaintiffs were simply providing some examples of cases in which they believed Labaton was retained by the "Potential Clients". Defendants state that "...documentary evidence, in the form of publicly filed court records available on the nationwide ECF/PACER system, demonstrates that Labaton made no misrepresentations to Plaintiffs concerning any of these cases". (See Defendants Memorandum of Law at 15). Conversely, documentary evidence of Defendants representation of the "Potential Clients", including the clients referenced in the five (5) cases, for pre-litigation, post litigation, and filing

proof of claims/conducting claims processing would not be in the "form of publicly filed court records".

Labaton agreed to produce "verifiable documents" for their representation of any of the "Potential Clients" for pre-litigation and post litigation. (Reda Affirmation Ex. "F" Global Settlement Agreement at 4). Filing proof of claims/ conducting claims processing is a form of post litigation. If a fee for retaining the "Potential Clients" for pre and post litigation was not owed to the Plaintiffs, there would be no need for the Defendants to have to produce "verifiable documents" to Saulnier for pre and post litigation.

The Parties agreed in the 2009 Sillam Settlement Agreement that "Labaton is at all times free to undertake and provide assistance of any type regarding claims processing or claims filing on behalf of any company …". (See Reda Affirmation Ex. "G" Sillam Settlement Agreement at 3). There was no such agreement that if Labaton filed proof of claims or conducted claims processing with any of Sillam's referred clients, there would be no referral fee paid to Sillam by Labaton. Exclusive of Sillam's referrals, Labaton would not be commencing claims processing or claims filing for said clients, the clients came directly from Sillam. Sillam would employ his own claims processing companies, First International Claims Filing, Inc or Claims Filing Limited, as it is not required to be an attorney to do so. Additionally, if Defendants owed no fee to Sillam for filing proof of claims, and their relationship was completely severed by the 2009 Sillam Settlement Agreement, why involve Sillam in the 2015 Universal Settlement Agreement at all. Defendants persuaded Sillam to execute a settlement agreement in 2015 that terminated Plaintiffs' rights under the previous (2009) settlement agreement, however, Defendants are claiming that Sillam's relationship with Defendants was already terminated as a result of the 2009 Sillam Settlement Agreement.

Not only did Sillam learned from a representative of AXA Investment Managers and Degroof PeterCam that Labaton has filed proof of claims, in an email exchange between Michael P. Canty (hereinafter "Canty"), an attorney at Labaton, and Justin Sher, Plaintiffs prior attorney, Canty provides a breakdown of Defendants filing claims on behalf of seven (7) "Potential Clients", (see Reda Affirmation Ex. "K" Email Claims Filing). Defendants should have produced verifiable documents to Saulnier, and it should have been listed on the Keller Declarations, that Defendants filed proof of claims for these "Potential Clients". Thus, Defendants negligently misrepresented to the Plaintiffs in the Keller Declarations that no "Potential Clients" were retained, causing Plaintiffs to sign the Universal Settlement Agreement.

## C.    Reasonable Reliance

Following the July 8, 2015, Declaration, Plaintiffs were weary of Defendants' assertions in the Keller Declarations and endeavored to investigate further. Plaintiffs found it difficult to investigate as they were unable to attain the necessary documentation that is easier to obtain as a citizen of the United States. Sillam is a French businessman and Saulnier is a French Attorney, as such they do not have any experience with the procedures of the New York Courts, nor do they have readily access to ECF/PACER. Most of the documents needed are not public record and are in the Defendants possession

Pre-litigation, post litigation and proof of claims process are not public record, and without a proper discovery process and/or exchange of documents, Plaintiffs are unable to "obtain additional information concerning the extent of Labaton's work for Referred Clients since the settlement Agreements in 2009". (Complaint ¶ 73). "A motion to dismiss should be denied and discovery permitted only when the party opposing the motion establishes that knowledge of the facts needed to oppose the motion is solely and exclusively in the possession of

the movant". *Cantor v. Levine,* 115 A.D.2d 453, 495 N.Y.S.2d 690 (2nd Dept.1985).

Plaintiffs request the opportunity to demand additional documents from Defendants to

further prove their claims regarding pre-litigation, post litigation and proof of claims

filing. Without such opportunity, Plaintiffs would not be able to provide further evidence

needed to prove their claims against the Defendants.

Furthermore, it is common practice in France to trust the declaration of an

individual with the status such as an attorney. (See Reda Affirmation Ex. "B" Sillam

Affidavit at 3). Thus, Plaintiffs decided to trust in the Keller Declarations and execute the

Universal Settlement Agreement.

**D.     Plaintiffs Damages**

As for Plaintiffs' damages, as mentioned in detail above, filing proof of claims/

conducting claims processing is a form of post litigation. If a fee for retaining the

"Potential Clients" for pre and post litigation was not owed to the Plaintiffs, there would

be no need for the Defendants to have to produce "verifiable documents" to Saulnier for

pre and post litigation. Sillam did not agree to allow Labaton the freedom to file proof of

claims for the "Potential Clients" without compensation. If that were the case, Sillam

would employ his own companies to file proof of claims on behalf of the "Potential

Clients" himself. Again, if Defendants did not owe any fees to both Sillam and Saulnier

between 2011 and 2015 regarding the 2009 Settlement Agreements, why did Defendants

pursue the 2015 Universal Settlement Agreement?

Based upon Plaintiffs knowledge of the funds that Sillam referred to Labaton,

Plaintiffs estimate that Labaton has filed proof of claims for the "Potential Clients"

holding a collective $500 billion in U.S. securities. As investors receive an average of

$0.0007 to every $1 invested in US securities from class actions, it is estimated that Labaton has recovered a total of $1.75 billion for clients that Sillam referred to Labaton (the "Potential Clients"). Upon information and belief, Labaton charged a minimum of 4% to file proof of claims, which would have generated $70 million in fees during 2011-2015. Accordingly, Plaintiffs would be entitled to 30% of these fees for filing proof of claims/claims processing and 30% of any fees earned by Labaton in connection with filed actions on behalf of the "Potential Clients".

## CONCLUSION

For the foregoing reasons, and based on the pleadings and all prior proceedings and accompanying documents submitted herein, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety or at a minimum only grant a dismissal with prejudice and allow repleading of an Amended Complaint.

Dated: December 31, 2021
       Mineola, New York

Respectfully submitted,

**RAISER & KENNIFF, P.C.**
*Attorneys for Plaintiff*

Douglas M. Reda
300 Old Country Road, Suite 351
Mineola, New York 11501
(516) 742-7600
douglas@raiserkenniff.com

19