# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GERARD SILLAM and ALDRIC SAULNIER,

    Plaintiffs,         No. 21 CV 6675 (CM)

-against-           **AFFIDAVIT OF GERARD SILLAM**

LABATON SUCHAROW LLP,
CHRISTOPHER J. KELLER, and
LAWRENCE A. SUCHAROW,

    Defendants.
-------------------------------------------------------------------X

GERARD SILLAM, being duly sworn, deposes and says:

1. I am the Plaintiff in the above captioned action. As such, I am fully familiar with the facts and circumstances surrounding this lawsuit. I am submitting this Affidavit in Support of Plaintiffs' Opposition to Defendants Motion to Dismiss.

2. On or around November 2005, I attended a meeting at Labaton Sucharow LLP ("Labaton"), for an unrelated matter. During said meeting Defendant Christopher Keller offered to discuss a business development partnership.

3. Defendant Christopher Keller offered me a 15% interest of their fees collected by Labaton in cases where one of my clients would be a lead or co-lead Plaintiff. I accepted under the condition that a monthly fee would also be paid. Labaton also offered me additional bonuses for my referrals.

4. During that same meeting, Defendant Christopher Keller, who was a Partner at Labaton, communicated to me that I would need to get a lawyer involved, and that this lawyer would not have to do any work.

5. As a result, Maître Jean-Marc Descoubes, a French lawyer, and I signed two (2) separate agreements (Descoubes Agreement and Consulting Agreement) with Defendant Christopher Keller. Neither Mr. Descoubes or I at that time retained the services of a United States attorney to review the agreements that Defendant Christopher Keller sent to us, as Defendant Christopher Keller was a New York attorney, and Labaton had a great reputation at the time. I did not think I needed an additional United States attorney to review the agreements.

6. This agreement is evidenced by an email dated March 1, 2007, sent to me by Defendant Lawrence Sucharow and copied to Defendant Christopher Keller and Eric Belfi, who also discussed this agreement with me. (Reda Affirmation Ex. "D" Email Exchange).

7. Had I known about the New York Rules of Professional Conduct and that it was prohibited for attorneys to share funds with non-attorneys regarding referrals, Mr. Descoubes and I would not have entered in any such agreement.

8. The agreements (Descoubes Agreement and Consulting Agreement) that lead to the dozens of meetings that I organized and attended with the Defendants, and referrals, were intended to defraud me.

9. As per our agreement, Defendants never expected any actual client referrals from Mr. Descoubes. No client referral was ever made by Mr. Descoubes to the Defendants.

10. On or around December 2009, Labaton, Aldric Saulnier (Plaintiff) and I entered into two (2) separate settlement agreements (Sillam Settlement Agreement and Global Settlement Agreement). Defendants were, under the explicit wording of this agreement, obligated to disclose every six months any fees including pre and post litigations fees collected from a list of clients. (Reda Affirmation Ex. "F" Global Settlement Agreement).

2

11. Defendants' argument that they were free to file proof of claims, except any arising from the Credit Agricole group, and not compensate Mr. Saulnier and I, is not true. Defendants were able to file proof of claims for any of my referrals, except Credit Agricole group, but it did not conclude that they did not owe Mr. Saulnier and I a referral fee for doing so.

12. The exception of Credit Agricole group was included in the agreement to protect the interest of my claims filing company who was at that time the exclusive claims filing agents for all the Funds handled by Credit Agricole Asset Management.

13. There has never been any waiver concerning our (Plaintiffs) interests in the pre or post litigation activities fees as evidenced by the fact that Defendants had to report these pre and post litigation fees under the 2009 settlement agreements (Sillam Settlement Agreement and Global Settlement Agreement) in their declarations every six (6) months. (Reda Affirmation Ex. "H" Keller Declarations).

14. On or around July 2015, Mr. Saulnier and I had doubts regarding the representation of certain clients on the Keller Declarations. In France, attorneys are held to a different standard regarding their trustworthiness, if they make a declaration, you believe that to be true. As we assumed this to be true in the United States as well, we had no choice but to believe Defendants' declarations.

15. When I was told by our United States Counsel that a $99,999.99, plus a right in a Saipem case offer, was presented by the Defendants on or around August 2015, we had no reason to refuse it before to sign a release on the basis of the five (5) years of declarations we believed were true and correct.

16. In the course of my consulting activities, I organized and attended a meeting held at La Defense (France) on November 7, 2017, at the Headquarter Offices of Axa Investment Managers, a major European Asset Manager with more than a Trillon

3

Euros under management. I attended this meeting with Louis De Meneval, the Deputy Head of their legal Department at that time, and Levi & Korsinsky LLP, a United States law firm who hired my services as a consultant.

17. In the course of that meeting, Louis De Meneval communicated to me that since I introduced them to Defendant Labaton, they had still to that day been using their services for the filing of the proof of claims. That was clear evidence that the 2015 declarations from Defendant Keller was false.

18. Likewise, I learned of the State Street Class Action case (Arkansas Teacher Retirement System v. State Street Corporation, Index No. 11-CV-10230) that took place in the District of Massachusetts, from an attorney at Levi & Korsinsky LLP. After further review of the aforesaid case, I learned that Labaton had submitted false affidavits to the Court.

19. I filed a criminal complaint in France a few weeks later (see Reda Affirmation Ex. "L" Criminal Complaint).

20. Today, as a matter of consequence, the Defendants are Defendants in a criminal trial to be held in the Paris High Court on or around 2022.

21. I hired several law firms in the United States and abroad to attempt to get Defendants to pay what they owed us without filing a lawsuit, however, nothing came out of these actions except threats and written false accusations of extortion from Defendant Labaton and their Counsels in order to get us to dismiss the criminal complaint above. Another criminal complaint was filed about this specific case and the Prosecutor of the Paris High Court has requested a formal criminal investigation from a sitting investigating Judge.

22. As a matter of consequence, we filed this civil lawsuit before the six (6) years deadline prior to my attorneys, Sher Tremonte LLP holding a meeting with

4

Defendants. After that meeting, Michel Canty, General Counsel of Defendant Labaton, sent two emails to Mr. Justin Sher including a list of fees collected from my clients in relation with the 2009 settlements. (See Reda Affirmation Ex. "K" Email Claims Filing).

23. The five (5) cases designated in the lawsuit include KBC that Labaton has represented but certified to have not represented in their declarations. Shortly thereafter, I concluded that only the filing of the proof of claims, pre and post litigation, was the real basis of our claim.

24. The Reuters interview was a good faith attempt to say that we do not want to claim what is not owed to Mr. Saulnier and I. Steven Czik, my former attorney, who filed that complaint drafted by Sher Tremonte LLP, did not amend the Complaint to represent this prior to the six (6) years deadline.

25. Due to the magnitude of the amounts under management of the introduced clients, the proof of claims fees owed to us are, to the best of my belief, more than $20,000,000.

*[signature]*
Gerard Sillam

Sworn to before this day
31 day of December 2021

Thibauld TAUPIN
Notary Public

*[handwritten note in French]*
Original signé devant moi le 31/12/2021 par M. Gérard SILLAM qui m'a justifié de son identité par la production de sa carte nationale d'identité
Me Thibauld TAUPIN, Huissier associé

*[seal: SCP Reynold PARKER, Raphaël PERROT et Thibauld TAUPIN, Huissiers de Justice associés, avenue de la Grande Armée - 75116 PARIS]*

5

**APOSTILLE**
(Convention de La Haye du 5 octobre 1961)

1. République française ETATS-UNIS
   Le présent acte public
2. a été signé par : Thibaud TAUPIN
3. agissant en qualité de HUISSIER
4. est revêtu du sceau/timbre de HUISSIERS DE JUSTICE

Attesté

5. à Paris
6. le 31 DEC. 2021
7. par le Procureur général près la Cour d'appel de Paris
8. sous n° 26438
9. Sceau : Michel LERNOUT
   PREMIER AVOCAT GÉNÉRAL

"L'Apostille confirme seulement l'authenticité de la signature, du sceau ou timbre sur le document. Elle ne signifie pas que le contenu du document est correct ou que la République française approuve son contenu"