

360 Lexington Avenue
New York, New York 10017

Mark C. Zauderer, Esq.
Main: 212.922.9250, Ext. 232
Fax: 212.922.9335
Email: mzauderer@ganfershore.com

March 23, 2022

**BY ECF**

Honorable Colleen McMahon, U.S.D.J.
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *Sillam v. Labaton Sucharow LLP et al.*, No. 21 Civ. 6675 (CM): Defendants' response to Court Notice dated March 16, 2022

Dear Judge McMahon:

We represent Defendants, Labaton Sucharow LLP, Christopher J. Keller and Lawrence A. Sucharow, in this action. We write in response to Your Honor's Notice dated March 16, 2022 (ECF Doc. 25), concerning whether this action is subject to dismissal as time-barred.

Before filing Defendants' motion to dismiss the Complaint, we considered whether to include the statute of limitations as one of the grounds for dismissal. Your Honor is correct that the last of the Keller Declarations was dated July 8, 2015. Your Honor is also correct that a six-year limitations period starting on July 8, 2015 would have expired on July 8, 2021, which was about one month before Plaintiffs commenced this action on August 6, 2021.

However, a statute of limitations defense is put in doubt because Plaintiffs' First Claim for Relief is denominated as one for fraudulent inducement of the 2015 Universal Settlement Agreement, which was executed on August 15, 2015. In researching the applicable statute of limitations, we found a line of decisions holding that a claim for fraudulent inducement of a contract accrues on the date that the contract was executed. In *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979), the Second Circuit, applying New York law, held that "[t]he six year period of limitations for fraud applies to a claim for fraudulent inducement of contract; 'the cause of action accrues when the document is executed and when the party alleging fraud has given consideration and thus suffered damage.'" *Id.* at 748 (citation omitted).

Several more recent federal and state-court decisions adhere to this rule. *E.g., Financial Guar. Ins. Co. v. Putnam Advisory Co.*, No. 12 Civ. 7372 (AT), 2020 U.S. Dist. LEXIS 9088, at



*5-6 (S.D.N.Y. Jan. 17, 2020) ("A fraudulent inducement claim accrues when the plaintiff enters into the contract or otherwise completes the act that the fraudulent statements meant to induce."); *O'Reilly v. Klar*, 167 A.D.3d 920, 921 (2d Dep't 2018) ("a cause of action to recover for fraudulent inducement to enter into a contract accrues upon the execution of the contract"); *Prichard v. 164 Ludlow Corp.*, 49 A.D.3d 408, 409 (1st Dep't 2008) (fraudulent inducement claim accrued when plaintiffs "entered into the contract" and thereby "completed the act that the fraudulent statements had induced"). A motion to dismiss based on the six-year statute of limitations would have had to address this line of decisions.

In addition, the statute of limitations analysis also involves the question of whether the applicable time period was tolled by the Governor's Executive Orders issued at the outset of the coronavirus pandemic. Several courts have held that all statutes of limitations on claims arising under New York law that had not yet expired as of March 20, 2020 were tolled for the 228-day duration of the Executive Orders. *See, e.g., Barnes v. Uzu*, No. 20 Civ. 5885 (KMK), 2022 U.S. Dist. LEXIS 46014, at *22-30 (S.D.N.Y. Mar. 15, 2022); *Cain v. County of Niagara*, No. 20 Civ. 1710S, 2022 U.S. Dist. LEXIS 38140, at *12-18 (W.D.N.Y. Mar. 2, 2022); *Reynold-Sitzer v. Eisai, Inc.*, No. 21 Civ. 0145, 2022 U.S. Dist. LEXIS 28179, at *12-13 (N.D.N.Y. Feb. 16, 2022); *Brash v. Richards*, 195 A.D.3d 582 (2d Dep't 2021). Moreover, Your Honor has previously observed that this Court must follow New York's "arguably tolled" statute of limitations on claims governed by New York state law. *Citi Connect, LLC v. Local Union No. 3, IBEW*, No. 20 Civ. 5147 (CM), 2020 U.S. Dist. LEXIS 185796, at *8-11 (S.D.N.Y. Oct. 7, 2020) (McMahon, Ch. J.).

To be sure, some New York courts have adopted a narrower construction of the Executive Orders tolling period, and a definitive construction will not exist until the New York Court of Appeals has the opportunity to address the issue. However, if tolling were to be held applicable, then a six-year statute of limitations that would otherwise have expired on July 8, 2021 would be extended for 228 days or until approximately February 21, 2022. If applied, such extension would render the action timely even if Plaintiffs' claims accrued on July 8, 2015.

After completing our research on all the potential defenses, we determined that the arguments Defendants presented in moving to dismiss represented much stronger grounds for dismissal than the statute of limitations. In particular, in Point I of our memorandum and reply memorandum of law, Defendants argue that this action should be dismissed based on the release provisions contained in the 2015 Universal Settlement Agreement. In support of this proposition, we cited definitive state and federal caselaw including the then-recent case of *Sodhi v. IAC/Interactive Corp.*, 2022 N.Y. App. Div. LEXIS 60 (1st Dep't Jan. 6, 2022), which is now also reported at 156 N.Y.S.3d 738. (For the Court's convenience, copies of that decision and the



GS
L&Z
Ganfer
Shore
Leeds &
Zauderer LLP

underlying trial court decision are enclosed.) In addition, our moving and reply memoranda also assert in Point II that Plaintiffs also failed to plead the required elements of their claims, including the making of any misrepresentation, reasonable reliance, and damages.

We share the Court's concerns about the lengthy delay before Plaintiffs commenced this action. However, as an officer of the Court, I feel obliged to bring the matters discussed above to the Court's attention in responding to Your Honor's Notice. Given the issues as to when the statute of limitations accrued and whether it was tolled, Defendants respectfully submit that the grounds addressed in the parties' briefs represent more clear-cut and definitive bases for dismissing this action under Rule 12(b)(6).

Respectfully,

Mark C. Zauderer

enclosures

cc: All counsel of record (by ECF)

Neutral
As of: March 21, 2022 8:20 PM Z

# Sodhi v. IAC/InterActive Corp.

Supreme Court of New York, Appellate Division, First Department

January 6, 2022, Decided; January 6, 2022, Entered

Index No. 652390/20, Appeal No. 14965, Case No. 2021-02914

**Reporter**
156 N.Y.S.3d 738 *; 2022 N.Y. App. Div. LEXIS 60 **; 2022 NY Slip Op 00067 ***; 201 A.D.3d 451; 2022 WL 51999

**[***1]** Nina Sodhi, et al., Plaintiffs-Appellants, v IAC/InterActive Corp., Defendant-Respondent.

**Notice:** THE PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.
THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE OFFICIAL REPORTS.

**Prior History:** **[**1]** Order, Supreme Court, New York County (Nancy M. Bannon, J.), entered April 9, 2021, which granted defendant's motion to dismiss the complaint, unanimously affirmed, with costs.

*Sodhi v. Iac/Interactivecorp, 2021 N.Y. Misc. LEXIS 1721 (N.Y. Sup. Ct., Apr. 8, 2021)*

**Counsel:** The Law Office of William Waldner, New York (Edwin J. Kilpela of counsel), for appellant.

Ganfer Shore Leeds & Zauderer LLP, New York (Mark C. Zauderer of counsel), for respondent.

**Judges:** Before: Webber, J.P., Friedman, Oing, Moulton, Kennedy, JJ.

## Opinion

**[*738]** Plaintiffs allege, among other things, that defendant grossly misrepresented the value of the "phantom equity" or units they held in defendant's subsidiary. The units were granted to plaintiffs as part of their employment compensation, under an equity incentive plan (plan). Pursuant to the plan, the senior participant, i.e., the person holding the largest number of units, agreed to an early settlement date, and negotiated and agreed upon a final appraisal value for the units on behalf of all plan participants. In accordance with the senior participant's agreement with defendant, each plaintiff executed a settlement letter whereby they agreed to the appraisal value of the vested units and released defendant from "any and all causes of action" which they "may now have, or hereinafter **[**2]** can, shall or may have" against defendant "with respect to [their] interest in the [u]nits."

The releases in the settlement letters bar plaintiffs' claims for breach of contract, breach of the implied covenant, and fraud arising from the alleged misrepresentation of the value of the units (*see* *Global Mins.*

*& Metals Corp. v Holme, 35 AD3d 93, 98, 824 N.Y.S.2d 210 [1st Dept 2006], lv denied 8 NY3d 804 [2007]*).

In addition, plaintiffs may not invalidate their releases by claiming they were fraudulently induced to enter into them. This new theory of liability, raised for the first time in plaintiffs' opposition papers, should not be considered (*see Price v City of New York, 172 AD3d 625, 628-629, 103 N.Y.S.3d 31 [1st Dept 2019], appeal dismissed 34 NY3d 989 [2019]*). However, even if we were to consider this argument, we would find it unavailing, as the alleged misrepresentations made to the senior participant regarding the units' value did not constitute a "separate fraud" from the subject of the release (*Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d 269, 277, 280 [2011]*; *Kafa Invs., LLC v 2170-2178 Broadway, LLC, 39 Misc 3d 385, 390-393, 958 N.Y.S.2d 577 [Sup Ct, NY County 2013], affd 114 AD3d 433 [1st Dept 2014], lv denied* **[*739]** *24 NY3d 902 [2014]*).

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: January 6, 2022

---

End of Document

Positive
As of: March 23, 2022 3:34 PM Z

# *Sodhi v. Iac/Interactivecorp*

Supreme Court of New York, New York County

April 8, 2021, Decided

652390/2020

**Reporter**
2021 N.Y. Misc. LEXIS 1721 *; 2021 NY Slip Op 31220(U) **

**[**1]** NINA SODHI, AZEEM ANSAR, KAGISO BOND, FRANKIE CHEUNG, KUAN HUANG, STEVE KATZ, BOBBY MANUEL, and MATT STITZER, Plaintiffs, - v - IAC/INTERACTIVECORP, Defendant.

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**Subsequent History:** Affirmed by *Sodhi v. IAC/InterActive Corp., 2022 N.Y. App. Div. LEXIS 60 (N.Y. App. Div. 1st Dep't, Jan. 6, 2022)*

**Judges:** **[*1]** HON. NANCY M. BANNON, J.S.C.

**Opinion by:** NANCY M. BANNON

## Opinion

**DECISION + ORDER ON MOTION**

I. INTRODUCTION

In this action to recover damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud, the defendant moves pursuant to *CPLR 3211(a)(1)* and *(5)* to dismiss the complaint based on a defense founded on documentary evidence and the existence of a release barring the action. The plaintiffs oppose the motion. For the following reasons, the motion is granted.

II. BACKGROUND

The complaint alleges that the plaintiffs are all former employees of Hatch Labs, Inc. ("Hatch"), a division of IAC Mobile, which is a wholly owned subsidiary of defendant IAC/InterActiveCorp ("IAC"). Hatch was a startup incubator company that developed applications for mobile phones. Among other applications, Hatch launched Tinder, the highly popular mobile dating application, in 2012. At the time they were hired, the plaintiffs were **[**2]** granted "phantom" equity units (the "Units") in Hatch pursuant to an Equity Incentive Plan (the "Plan"), which was incorporated by reference into the letters outlining the plaintiffs' terms of employment. The Plan provided for a one-time valuation (the "Appraisal Value") and

payout **[*2]** to the plaintiffs, as participants in the Plan, for all vested Units on a date certain (the "Settlement Date") in 2015.

Nonparty Dinesh Moorjani, as the Plan participant holding the most Units and the majority of Units, was designated under the Plan as the "Senior Participant," the authorized representative of all Plan participants. In his capacity as Senior Participant, Moorjani was empowered to review the Appraisal Value provided by IAC, obtain an alternative appraisal of the value of the Units, communicate critical information to other Plan participants, and challenge IAC's Appraisal Value before an arbitrator, if necessary. In his capacity as majority Unit-holder, Moorjani also had the right to provide consent to amend, modify, change, suspend, or terminate the Plan on behalf of all participants. Conversely, all other Plan participants, including the plaintiffs, were "deemed to have joined in the actions and agreements of the Senior Participant and waived any claim with respect thereto," pursuant to the terms of the Plan.

In March of 2014, Moorjani, in his capacity as Senior Participant and majority Unitholder, agreed with IAC to accelerate the Settlement Date. Pursuant to a written **[*3]** agreement submitted by the defendant, Moorjani also agreed that the Appraisal Value for each Unit would be $166,566.42. Moorjani notified the plaintiffs and other Plan participants of the acceleration on March 21, 2014. In accepting their payout, each of the plaintiffs signed a Settlement Letter agreeing to the Appraisal Value accepted by Moorjani, the number of vested Units to be settled, and the aggregate purchase price that IAC was to pay the participants as consideration for settling their vested Units. Each Settlement Letter further provided the plaintiffs a conditional **[**3]** right to an upward adjustment of the amount of their payout if, before October 15, 2014, a "Third Party Equity Financing" occurred in Tinder that implied a higher valuation of Tinder than the original Appraisal Value. Finally, each Settlement Letter included a release that reads as follows:

> "By execution hereof and upon acceptance of the Settlement Amount, you hereby release and forever discharge IAC and [Hatch Labs] and their respective directors, officers and employees from any and all causes of action, suits, claims, charges, complaints, promises and contracts which you may now have, or hereinafter can, shall **[*4]** or may have against IAC and [Hatch Labs] and their respective directors, officers and employees with respect to your interest in the Units, except for any claim that may arise from the obligations contained in this letter."

One of the plaintiffs, Matthew Stitzer, signed an additional release in favor of IAC in August 2017 in connection with his departure from employment with an IAC affiliate. Stitzer released IAC from claims related to the "non-payment of wages or other compensation," "grants of stock options or any other equity compensation," and "stock or other interests."

Approximately six years after the plaintiffs received their payouts for their Units, the plaintiffs commenced this action against IAC, asserting causes of action to recover for breach of the Plan (first cause of action), breach of the implied covenant of good faith and fair dealing contained in the Plan (second cause of action), and fraud arising from IAC's alleged misrepresentation of the value of the Units (third cause of action). The plaintiffs contend, *inter alia*, that IAC misled Moorjani as to the true value of Tinder, which was the principal asset underlying the value of the Units, withheld information from **[*5]** Moorjani with respect to Tinder's value, and coerced Moorjani to accelerate the Settlement Date to March 2014. The defendant asserts that the complaint must be dismissed in its entirety in light of the contractual releases described herein.

[**4] III. DISCUSSION

"Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 N.Y.3d 269, 276, 952 N.E.2d 995, 929 N.Y.S.2d 3 (2011)*. Though the plaintiffs make much of whether the releases incorporated in the Settlement Letters were specific or general releases, the relevant question is merely whether the claims in this action are the subject of those releases. By their plain terms, the Settlement Letter releases applied to any and all claims related to the plaintiffs' "interest in the Units." In this action, the plaintiffs challenge the one-time valuation of the Units and ensuing payout, and the amendment of the Plan to accelerate the Settlement Date of the Units, as tainted by IAC's alleged misrepresentations, coercion, and fraud.

The plaintiffs aver that the Settlement Letter releases they signed do not cover the claims in this action because the claims relate to their entitlement to a payout under the Plan, and not to their basic possessory **[*6]** interest in the Units. This narrow interpretation of the scope of the releases is strained and unconvincing. The language of the releases indicates the parties' intention to bar "any and all" claims the plaintiffs "may now have, or hereinafter can, shall or may have" with respect to the plaintiffs' interests in the Units. As the complaint makes clear, the plaintiffs' interests in the Units are the basis for their participation in the Plan and the source of any claim they have to a payout at a certain time or in a certain amount. Thus, each of the plaintiffs' claims in this action, including their fraud claims, derive from their interests in the Units and are covered by the expansive language of the subject releases they signed. See *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., supra at 277* ("broad language" of release reaching "all manner of actions," whether "past present or future" arising out of the plaintiffs' "ownership of membership interests" in company held to bar the plaintiffs' claims that **[**5]** they were fraudulently induced to sell their interests); *Avnet, Inc. v Deloitte Consulting LLP, 187 AD 3d 430, 133 N.Y.S.3d 553 (1st Dept. 2020)* (release reaching "any and all claims," whether "known or unknown" in connection with the defendant's software system covered claim that the plaintiff was fraudulently induced to enter **[*7]** into work orders for the system).

Moreover, as the defendant correctly points out, the plaintiffs' proposed reading of the releases is nonsensical in the context of the Settlement Letters. It is beyond dispute that the Settlement Letters were meant to document the terms under which the plaintiffs would receive a payout as consideration for the Units. The inclusion of releases covering only the plaintiffs' ability to claim ownership of the Units would serve no purpose at that juncture, since the plaintiffs would no longer possess the Units after payment was made. Construing the releases in a commercially reasonable manner, (see *Landmark Grp., Inc. v New York City Sch. Const. Auth. 148 AD3d 603, 50 N.Y.S.3d 349 [1st Dept. 2017]*), and relying on their plain, expansive terms, the court concludes that they do cover all of the claims included in the complaint. The court need not reach the issue of whether the additional release signed by Stitzer in 2017 separately forecloses his claims.

Notwithstanding the foregoing, the plaintiffs argue that they should be allowed to proceed in litigating their claims because the releases in the Settlement Letters were procured by fraud. Specifically, the plaintiffs allege that "IAC, either in conjunction with or utilizing Dinesh Moorjani, defrauded Plaintiffs **[*8]** by hiding the true value of Tinder (which was known to IAC at the time to be nearly $1 Billion) at the time of the settlement *and* accelerating that settlement to deprive Plaintiffs of settling their

phantom equity one year later, as called for in the Plan, when Tinder's value had swelled to approximately $3 Billion."

**[**6]** "A signed release 'shifts the burden of going forward ... to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release.'" *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., supra at 276* (quoting *Fleming v Ponziani, 24 NY 2d 105, 111, 247 N.E.2d 114, 299 N.Y.S.2d 134 [1969]*). However, "a party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release." *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., supra at 276* (citing *Bellefonte Re Ins. Co. v Argonaut Ins. Co., 757 F 2d 523 [2d Cir. 1985]*); see *Avnet, Inc. v Deloitte Consulting LLP, supra*; *Davis v Rochdale Village, Inc., 109 AD 3d 867, 971 N.Y.S.2d 340 (2nd Dept. 2013)*.

In *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., supra*, the plaintiffs, in connection with the sale of their membership interests in an Ecuadorian mobile telephone company, had executed a release of "all manner of actions," whether "past, present or future" arising out of the plaintiffs' "ownership of membership interests" in the telephone company. The plaintiffs then commenced an action against the owner of the majority interest in the telephone company and its affiliates, alleging that they fraudulently induced the plaintiffs to sell **[*9]** their interests. The Court of Appeals held that the plaintiffs could "not now claim that defendants fraudulently misled them regarding the value of their ownership interests in [the telephone company] unless the release itself was induced by a separate fraud." *Id. at 277*. Notably, the plaintiffs' claim that they sold their interests based on false financial information provided by the defendants was not a "separate fraud" sufficient to set aside the release; the plaintiffs could not be relieved from the release "on the ground that they did not realize the true value of the claims they were giving up." *Id. at 278* (internal quotation marks omitted).

**[**7]** Like the plaintiffs in Centro Empresarial, the plaintiffs in this action have alleged no fraud separate from that which was the subject of the releases they signed, whether known or unknown to the plaintiffs at the time. The plaintiffs nonetheless aver that the holding in Centro Empresarial should not be applied here because there was a lack of equal bargaining power and the plaintiffs, who were contractually obligated to join in Moorjani's actions, were "forced to accept the valuation and settlement date and were [sic] could not do anything about it." In the **[*10]** discussion the plaintiffs allude to in Centro Empresarial regarding bargaining power, the Court of Appeals rejected the contention that its conclusions should be altered by the fact that the parties in that case had a fiduciary relationship. In that context, the Court of Appeals emphasized that the parties were sophisticated entities advised by counsel. See *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., supra at 278-79*. Here, in contrast, the plaintiffs do not argue that, as holders of phantom equity in Hatch, they had any sort of fiduciary relationship with IAC such that the special scrutiny given in Centro Empresarial should apply.

In any event, the plaintiffs acknowledge that the Plan, which they were parties to, provided Moorjani in his capacity as Senior Participant with exclusive responsibility for negotiating with IAC and agreeing to the final Appraisal Value, and in his capacity as holder of the majority of Units the exclusive right to provide written consent to amend the Plan on behalf of all participants. The plaintiffs make no factual, non-speculative allegations to suggest that Moorjani had any incentive to take a position adversarial to the plaintiffs in his representation of them in his dealings with IAC. Rather, as the defendant **[*11]** observes, all signs point to Moorjani's interests being wholly aligned with the plaintiffs' interests. For all of the

foregoing reasons, the court declines to carve out an exception to the holding in *Centro Empresarial* in order to permit the plaintiffs to proceed on claims they duly released in 2014.

**[**8]** Finally, the plaintiffs aver that the defendants' motion must be denied at least in part insofar as the plaintiffs have plausibly alleged claims that were expressly excluded from any release. The plaintiffs refer in their opposition brief to a claim that their conditional right to an upward adjustment of the payout, as granted in the Settlement Letters, was violated. Though such a claim may be excluded from the Settlement Letter releases to the extent that it "arises under" the Settlement Letters, it does not appear anywhere in the complaint. Nor have the plaintiffs made any application to amend the complaint. The plaintiffs' allegations, made for the first time in opposition to a motion to dismiss, cannot form a basis for the survival of the complaint in its current form.

IV. CONCLUSION

Accordingly, it is

ORDERED that the defendant's motion to dismiss the complaint pursuant to *CPLR 3211(a)(1)* and *(a)(5)* is granted, **[*12]** and the complaint is dismissed in its entirety; and it is further

ORDERED that the Clerk shall enter judgment and mark the file accordingly.

This constitutes the Decision and Order of the Court.

**Dated: April 8, 2021**

**ENTER**:

/s/ Nancy M. Bannon

NANCY M. BANNON, J.S.C.

---

End of Document