UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/9/2022
```

GÉRARD SILLAM and ALDRIC SAULNIER,

       Plaintiffs,

    -against-

LABATON SUCHAROW LLP,
CHRISTOPHER J. KELLER, and
LAWRENCE A. SUCHAROW,

       Defendants.

No. 21 cv 6675 (CM)

## ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

McMahon, J.:

    Defendants Labaton Sucharow LLP ("Labaton"), Christopher J. Keller ("Keller") and Lawrence A. Sucharow ("Sucharow") filed a motion for reconsideration of this Court's decision and order denying in part, granting in part the Defendants' motion to dismiss. (Dkt. No. 29). Defendants submit that the Court overlooked controlling case law and should have found the Plaintiffs' fraudulent inducement claim is barred by the Universal Settlement Agreement's general release because Plaintiffs have failed to allege a "separate fraud" (discussed further below). Defendants ask the Court to dismiss the fraudulent inducement claim. (*See* Dkt. No. 30, at 5). The motion is opposed. (*See* Dkt. No. 36).

    For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

    The facts in this case are fully set forth in this Court's decision and order granting in part and denying in part Defendants' motion to dismiss. (*See* Dkt. No. 28). For the purpose of this motion, only certain facts from that decision are restated here.

This case arises from a "referral" arrangement between Defendants and the Plaintiffs. When Defendants allegedly began to try to avoid paying fees owed to Plaintiffs, Plaintiffs sued for fraud in France. That litigation was resolved with the execution of a series of agreements in 2009 (the "2009 Settlements"), under which agreements Defendant Labaton granted Plaintiffs an ongoing "Limited Interest" in any additional or future litigation fees Labaton would earn from referred clients for the next five years. (*See* Dkt. No. 23-8). Labaton also undertook an obligation to verify whether it was representing any such clients so that Plaintiffs could determine if they were owed any fees. Defendants allegedly lied in each of those verifications (the "Kellner Declarations").

After submitting allegedly false Declarations to Plaintiffs over a period of five years, in 2015, Defendants approached Plaintiffs to enter a new Universal Settlement Agreement that would – once and for all – conclude and terminate the relationship with Plaintiffs. Accordingly, the parties entered into the 2015 Universal Settlement Agreement.

The Universal Settlement Agreement included the following release:

> The Parties to this Universal Settlement understand, acknowledge and agree that upon the timely satisfaction of "The Consideration" made by Labaton as set forth herein, [Saulnier and Sillam] shall universally and forever release and waive any claim or potential claim which could possibly be brought in any jurisdiction anywhere in the world for all time arising out of or in any way related to The [2009] Settlements, as well as any other claim or potential claim [Saulnier and Sillam] have or could possibly have against Labaton or any of its partners, agents or representatives.

(Dkt. No. 16-6, at 1-2).

The complaint alleges that, unbeknownst to Plaintiffs at the time of signing the Universal Settlement Agreement, Defendants had been representing referred clients for a number of years. Plaintiffs claim they should have been paid fees in relation to those matters; however, in reliance

on the Defendants' representations in the Kellner Declarations, Plaintiffs executed the Universal

Settlement Agreement terminating the parties' relationship and releasing their claims.

## STANDARD

Reconsideration is appropriate where there is "an intervening change of controlling law,

the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

*Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "The

standard for granting such a motion is strict, and reconsideration will generally be denied unless

the moving party can point to controlling decisions or data that the court overlooked—matters, in

other words, that might reasonably be expected to alter the conclusion reached by the court."

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should

not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.*

## DISCUSSION

Defendants' motion fails to satisfy the standard for granting reconsideration. Defendants

argue that Plaintiffs have failed to plead "a separate fraud from the subject of the release," which

bars their claim for fraudulent inducement under *Centro Empresarial Cempresa S.A. v. America

Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) and its progeny. This is simply a relitigation of

an issue already briefed by the Defendants on their motion and by which the Court was previously

unpersuaded – although Defendants are correct that this Court's original decision failed to discuss

this question specifically. I do so now.

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269

(2011) explains that, "If 'the language of a release is clear and unambiguous, the signing of a

release is a 'jural act' binding on the parties.'" *Id.* at 276 (quoting *Booth v. 3669 Delaware*, 92

N.Y.2d 934 (1998). "However, a release may not be read to cover matters which the parties did

not intend to cover." *Desiderio v. Geico General Ins. Co.*, 107 A.D.3d 662, 664 (2d Dep't 2013) (citing cases).

In every case, "'The meaning and scope of a release must be determined within the context of the controversy being settled.'" *Id.* (quoting *Matter of Schaefer*, 18 N.Y.2d 314, 317 (1966)). Notably, a release only "encompass[es] . . . unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made.'" *Id.* (quoting *Mangini v. McClurg*, 24 N.Y.2d 556, 566-567 (1969)).

"Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release 'shifts the burden of going forward . . . to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release.'" *Id.* (quoting *Fleming v. Ponziani*, 24 N.Y.2d 105, 111 (1969)). "A release may be invalidated . . . for any of 'the traditional bases for setting aside written agreements" including fraud. *Id.* (quoting *Mangini*, 24 N.Y.2d at 563) (emphasis added). "A plaintiff seeking to invalidate a release due to fraudulent inducement must 'establish the basic elements of fraud, namely a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury.'" *Id.* (quoting *Global Mins. & Metals Corp. v. Holme*, 35 A.D.3d 93, 98 (1st Dep't 2006)).

However, "a party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release." *Id.* "Were this not the case, no party could ever settle a fraud claim with any finality." *Id.*

In *Centro*, the plaintiffs were minority shareholders in a company, Conecel, that they co-owned with one of the defendants. 17 N.Y.3d at 272. All the parties' interests were held through an entity called TWE. Various agreements governed the parties' relationship, including an LLC

agreement pursuant to which the plaintiffs could negotiate to exchange their shares in the company for shares of a newly created entity, and a "Put Agreement" pursuant to which plaintiffs could exercise a put option to force the purchase of their shares at a set price. *Id.* at 272-73. When a new entity was later created, it triggered the plaintiffs' right to negotiate an exchange of their shares under the LLC agreement. *Id.* at 273. Plaintiffs requested financial information regarding TWE and Conecel for use in the exchange negotiations but were never provided any financial information – although the defendants represented that Conecel was financially weak and had not generated profits, and later provided a balance sheet that showed the company was not doing well. *Id.* Plaintiffs also repeatedly attempted to engage defendants in talks about a share exchange, but defendants were uncooperative. Plaintiffs – unable to get defendants to engage in negotiations, unable to obtain the full financial picture and relying on the allegedly false information provided – exercised their put option under the Put Agreement and sold their interests in Conecel. *Id.* at 274. In conjunction with the sale of their interests, plaintiffs executed several agreements and granted defendants a release that barred, *inter alia*, claims "arising under or in connection with the Agreement Among Members and/or arising out of, based upon, attributable to or resulting from the ownership of membership interests . . ." *Id.*

Later, plaintiffs learned via a government audit that defendants had supplied them with false financial information about Conecel, and that a share exchange would have been a better option than selling their interests. *Id.* Plaintiffs sued the defendants for "fail[ing] to provide them with accurate tax and financial statements" and for failing to negotiate in good faith for the share exchange. *Id.* Plaintiffs asserted twelve causes of action, including breach of contract and fraud. *Id.* They sought damages in the amount they claimed would have been obtained in a good faith share exchange under the parties' agreement.

The New York Court of Appeals found that the plaintiffs' claims were barred by the release because they were precisely the type of claim contemplated by the agreement and release at the time of the sale. The Court explained:

> Having executed this release, plaintiffs cannot now claim that defendants fraudulently misled them . . . unless the release was itself induced by a separate fraud. The fraud described in the complaint, however, falls squarely within the scope of the release: plaintiffs allege that defendants supplied them with false financial information regarding the value of [certain ownership interests], and that, based on this false information, plaintiffs sold their interests . . . and released defendants from claims in connection with that sale.

*Id.* at 277; *accord Sodhi v. IAC/Interactive Corp.*, 201 A.D.3d 451 (1st Dep't Jan. 6, 2022). Restated, plaintiffs in *Centro* agreed to sell their interests and release all their claims, including for fraud, in connection with that sale. However, the release itself was not induced by some separate fraud or misrepresentation. Rather, the fraud alleged was the same type of claim contemplated at the time of sale.

After an extensive review of the case law, the Court is unpersuaded that *Centro* dictates a different result than the Court has already found in this case.

First, the Court addresses the *scope of the release* and whether the fraud alleged falls within the scope of the release. The fraud alleged here was unknown to Plaintiffs at the time of executing the release. Yet, the broad language of the release itself in this case reaches "any claim or potential claim which could possibly be brought in any jurisdiction anywhere in the world for all time arising out of or in any way related to The [2009] Settlements, as well as any other claim or potential claim [Saulnier and Sillam] have or could possibly have against Labaton or any of its partners, agents or representatives." (Dkt. No. 16-6, at 1-2). Such broad language indicates an intent to release Defendants from fraud claims, including those unknown at the time of contract. *See Centro*, 17 N.Y.3d at 277.

However, *Centro* also dictates that an unknown fraud claim is only released where (1) "the parties so intend" and (2) "the agreement is 'fairly and knowingly made.'" *Id.* at 276. Intent, fairness, and knowledge are factual and case-specific determinations. *See Desiderio*, 107 A.D.3d at 664. As this question is before the Court on a motion to dismiss, only the well-pleaded facts of the complaint are considered, along with "documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

Here, whatever the unambiguous language of the release indicates, it cannot be said based on the facts alleged in the complaint that the agreement was "fairly and knowingly made" or that the fraud that allegedly induced the release was not a "separate" fraud from the 2009 Agreement. The allegation in this case is that Labaton breached the 2009 Agreement and then lied blatantly to Plaintiffs about that fact for years – that is, a partner of the firm made repeated misrepresentations (under the penalty of perjury, no less) attesting that Labaton was not representing any referred clients. Then, having made those misrepresentations, Defendants approached Plaintiffs and asked for an additional settlement, one containing a broad release of all claims – including but not limited to those arising out of the 2009 Agreement -- to which Plaintiffs could never have agreed but for the fraudulent declarations. Even though the five-year period encompassed by the terms of the 2009 Settlement had expired, the sophisticated New York law firm allegedly sought to reopen matters, by asking Plaintiffs for a further release – one that, conveniently, would prevent them from being sued for their post-2009 misrepresentations, which were entirely unknown to Plaintiffs. If those pleaded facts are true, I cannot agree that Plaintiffs entered into that release fairly and knowingly.

The facts of this case are obviously not comparable to *Centro* and its progeny. In the *Centro*, the plaintiffs not only had some false information – that the company was not valuable – but they also knew they had never been given the full financial picture of the company, and that defendants had been unwilling to engage in share exchange negotiations. All this was alleged in the complaint. Nonetheless, despite having incomplete information (some of which proved to be false), plaintiffs in *Centro* decided to sell their equity interests instead of negotiating a share exchange. They later learned – from information revealed in a separate government audit – that they had made the wrong decision from the point of view of their financial interests. However, at the time of that sale, they agreed to release their claims in connection with that sale, including any claims for fraud. There was no allegation that the release itself was induced by some separate fraud, as is the case here. Plaintiffs went into the sale with eyes wide open to the fact that they did were acting on incomplete information, and they nonetheless chose to sell rather than insist on their right to negotiate a share exchange. Having done this, the plaintiffs could not then avoid the release they so fairly and knowingly entered.

Finally, and separately, there are a number of cases, post-*Centro*, that do not consider the question of "separate fraud" at all, but simply find the claim for fraudulent inducement sufficiently pled (as the Court did here) and not barred by the release at issue. *See e.g.*, *Illuminex Diamonds Corp. v. Chou*, No. 18 Civ. 1751 (PGG), 2022 WL 204219 (S.D.N.Y. Jan. 24, 2022); *CMG Holdings Group v. Wagner*, No. 15-CV-5814 (JPO), 2016 WL 4688865 (S.D.N.Y. Sept. 7, 2016); *Bollinger Industries Inc. v. Walter R. Tucker Enterprises, Ltd.*, No. 3:20-CV-95 (FJS/ML), 2021 WL 5585795 (N.D.N.Y. Nov. 29, 2021); *Gonzalez v. 40 W. Burnside Ave. LLC*, 107 A.D.3d 542 (1st Dep't 2013). The reasoning of these cases varies but several find that the plaintiff, having plausibly alleged fraudulent inducement, is entitled to the equitable remedy of rescission or non-

enforcement of the release. For example, in *Bollinger Industries*, in allowing fraud and fraudulent inducement claims to proceed, Judge Scullin pointed out that "recission of a release of claims is a remedy . . . to which a plaintiff must be entitled" and "because the Court finds that Plaintiff has plausibly alleged that the Settlement Agreement was procured by fraud, the Court holds that Plaintiff is entitled to such remedy." 2021 WL 5585795, at *7. The Court agrees with the reasoning that where, as here, a plaintiff has plausibly alleged fraudulent inducement, the plaintiff may well be entitled to the equitable remedy of rescission or non-enforcement of the release.

My colleague Judge Oetken applied precisely this logic in *CMG Holdings Group v. Wagner*. In *CMG Holdings Group* – a "sprawling" action with ten defendants and fifteen claims – the plaintiff was a holding company that had acquired a bankrupt company called "XA" in 2009; for five years after the acquisition, XA "hovered around break-even profitability despite significant gross revenues." 2016 WL 4688865, at *1-2. After these years of suppressed profits, the plaintiff, as successor to XA, sued three corporate defendants and seven individual defendants, including the Chief Executive Officer ("CEO") of XA, alleging that the company's lack of profitability resulted from the defendants' "behind the scenes activity" that diverted profits and property from XA to themselves. *Id.* This "shell game" included fraudulent misrepresentations to the clients of XA that defendants' own businesses were the same as XA. *Id.* Among other arguments, the defendants sought to dismiss all the claims against the CEO as barred by a "Release Agreement" which had been executed in 2014 in connection with the CEO's departure from XA. *Id.* at *7-8. That broad agreement released the defendant CEO from "all claims" by plaintiff. *Id.* at *7.

However, Judge Oetken found that the broad release did not bar plaintiff's claims against the defendant CEO, because it was the CEO's own "calculated nondisclosures [that] induced [plaintiff] to enter into the Release Agreements" in the first place. *Id.* at *8. Given the complaint's

"pervasive and particularized allegations of fraudulent behavior" by the CEO, Judge Oetken surmised, "The scope and magnitude of those actions strongly support an inference that if [plaintiff] knew about [defendant's] actions it would not have entered into the two Release Agreements." *Id.* He noted, "While valid release agreements are enforced according to their terms, '[c]ourts will not enforce a release that is the product of fraud,'" *id.* (quoting *Becher v. Tyco Intern. Ltd.*, 27 Fed.Appx. 48, 51 (2d Cir. 2001)), and "[E]ven an explicit waiver will not be given effect[,] 'when the facts are peculiarly within the knowledge of the party invoking the disclaimer." *Id.* (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 576 (2d Cir. 2005)) (alterations in original). Because the facts of the fraud were peculiarly within the CEO's knowledge and unknown to the plaintiff at the time of executing the release, Judge Oetken acknowledged that the release was "presumptive invalid[]." (*Id.* at *8 n. 4). He found the fraudulent inducement claim against the CEO sufficiently pled to survive a motion to dismiss and refused to enforce the release. *Id.* at *8.

Similar logic applies in this case. Plaintiffs have plausibly alleged they were unaware of Defendants' fraud at the time of executing the release and maintain that they would not have entered into the Universal Settlement Agreement and released their fraud claims against the Defendants had they known the Kellner Declarations were false. The facts that would have allowed Plaintiffs to learn of the falsity of those Declarations were and are peculiarly within Labaton's knowledge. Having plausibly alleged fraudulent inducement (as explained in this Court's original decision denying Defendants' motion to dismiss the fraudulent inducement claim), Plaintiffs are entitled to non-enforcement of the release of their claims against the Defendants.

The Court affirms its original holding that Plaintiffs have sufficiently plead fraudulent inducement and for that reason the release may be avoided as fraudulently induced.

## CONCLUSION

In accordance with the foregoing decision, Defendants' motion for reconsideration is DENIED.

This constitutes the opinion and order of the court. It is a written opinion.

The Clerk is directed to close the motion at Docket Number 29.

Dated: May 9, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL