UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

GÉRARD SILLAM and ALDRIC SAULNIER,  :

                      Plaintiffs,      :      No. 21 CV 6675 (CM)(OTW)

           -against-              :

LABATON SUCHAROW LLP and      :
CHRISTOPHER J. KELLER,

                                    :

                   Defendants.
                                    :

-------------------------------------------------------------------x


# DEFENDANTS' MEMORANDUM OF LAW CONCERNING
# THE LOCATION OF PLAINTIFFS' DEPOSITIONS


GANFER SHORE LEEDS & ZAUDERER LLP
360 Lexington Avenue
New York, New York 10017
(212) 922-9250
(212) 922-9335 (facsimile)
mzauderer@ganfershore.com
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY ....................................................................................................... 2

ARGUMENT .............................................................................................................................. 5

PLAINTIFFS SHOULD BE REQUIRED TO
APPEAR FOR DEPOSITION IN NEW YORK ...................................................................... 5

    A.   Plaintiffs Chose to Bring Their Claims in New York, Making
New York the Presumptive Location for Their Depositions, and
Plaintiffs Have Not Shown Good Cause Rebutting that Presumption ............................. 5

    B.   Conducting the Depositions in France Pursuant to the
Hague Convention, Whether In-Person or Remotely,
Would Not Assure a Full Examination of the Plaintiffs ................................................... 7

    C.   Conducting the Depositions Remotely Would Not
Obviate the Need to Follow Hague Convention Procedures
and Would Be an Inferior Substitute for In-Person Depositions ..................................... 12

CONCLUSION ......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Austin Air Sys. v. Sager Electrical Supply Co.*,
   19-CV-562Si(F), 2021 U.S. Dist. LEXIS 111181 (W.D.N.Y.
   June 21, 2021) ................................................................................................................ 14

*Clem v. Allied Van Lines Int'l Corp.*,
   102 F.R.D. 938 (S.D.N.Y. 1984) ................................................................................... 5, 6

*Connell v. City of New York*,
   230 F. Supp. 2d 432 (S.D.N.Y. 2002) ............................................................................... 6

*Dagen v. CFC Group Holdings Ltd.*,
   No. 00 Civ. 5682 (CBM), 2003 U.S. Dist. LEXIS 13859
   (S.D.N.Y. Aug. 11, 2003) .................................................................................................. 6

*Fed. Deposit Ins. Co. v. La Antillana, S.A.*,
   No. 88 Civ. 2670 (JFK), 1990 U.S. Dist. LEXIS 13246
   (S.D.N.Y. Oct. 5, 1990) ..................................................................................................... 6

*Herrera v. City of New York*,
   19 CV 3216 (AT) (SDA), 2020 U.S. Dist. LEXIS 68417
   (S.D.N.Y. Apr. 15, 2020) ........................................................................................... 13, 14

*In re Fosamax Prods. Liab. Litig.*,
   1:06-MD-1789 (JFK) (JCF), 2009 U.S. Dist. LEXIS 27209
   (S.D.N.Y. Mar. 4, 2009) .................................................................................................. 14

*Mill-Run Tours, Inc. v. Khashoggi*,
   124 F.R.D. 547 (S.D.N.Y. 1989) ...................................................................................... 5

*Pruco Life Ins. Co. v. Cal. Energy Dev. Co.*,
   2021 U.S. Dist. LEXIS 209840 (S.D. Cal. Oct. 29, 2021) .............................................. 14

*Tangtiwatanapaibul v. Tom & Toon Inc.*,
   1:17-cv-00816 (LGS) (KHP), 2017 U.S. Dist. LEXIS 233395
   (S.D.N.Y. Nov. 22, 2017) ................................................................................................. 5

*Tijerina-Salazar v. Venegas*,
   2021 U.S. Dist. LEXIS 241909 (W.D. Tex. Dec. 20, 2021) ........................................... 14

*Wei Su v. Sotheby's, Inc.*,
   17-CV-4577 (VEC), 2019 U.S. Dist. LEXIS 146667,
   (S.D.N.Y. Aug. 28, 2019) ........................................................................................ 5, 6, 14

*Yan v. Zhou*,
   18-CV-4673(GRB)(JMW), 2021 U.S. Dist. LEXIS 169128
   (E.D.N.Y. Sept. 7, 2021) ................................................................................................. 13

**Rules**

Fed. R. Civ. P. 30(d)(4) ................................................................................................................. 13

**PRELIMINARY STATEMENT**

    Defendants submit this memorandum of law concerning the location of Plaintiffs' depositions in this action, pursuant to Magistrate Judge Wang's order dated November 15, 2022. For the reasons discussed below, Plaintiffs should be required to appear in New York, the forum where they chose to bring this lawsuit, for their depositions. As discussed in the accompanying declaration of an experienced French attorney, depositions of Plaintiffs in France, whether in-person or virtual, would have to be conducted under France's implementation of the Hague Convention On the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"). This would cause unnecessary delay and expense while providing no assurance that Defendants would be able to examine Plaintiffs fully as they would in a U.S. deposition. Such a limitation might be acceptable in the case of a non-party witness who is not subject to the Court's jurisdiction; however, we respectfully submit that allowing Plaintiffs – who filed this action in this District – to insist upon being deposed in France would be unfair and highly prejudicial to Defendants.

    The Court's November 15, 2022 order suggests that the Court may view this motion as a motion for reconsideration of a prior ruling on the location of the depositions. As discussed below and in the accompanying Declaration of Mark C. Zauderer, Esq., however, this memorandum of law and the accompanying declarations represent the first opportunity that Defendants have had to fully brief the issues on this motion. Accordingly, Defendants submit that the standard applied on motions to reconsider or reargue prior decisions should not apply here. We submit that the United States and French legal authority cited herein, and in the accompanying Declarations of Defendants' French counsel, warrants adhering to the general rule that Plaintiffs should appear for deposition in New York under any standard.

## PROCEDURAL HISTORY

Plaintiffs, Gérard Sillam and Aldric Saulnier, who are French citizens residing in or near Paris, commenced this action by filing a three-count complaint in the Southern District of New York. Judge McMahon dismissed two of Plaintiffs' three claims, leaving only one claim for fraudulent inducement of a contract, asserted against Defendants Labaton Sucharow LLP and Christopher Keller.

On August 1, 2022, Defendants served notices for the taking of Plaintiffs' depositions. (Zauderer Decl. ¶ 2 & Ex. A). The depositions were noticed to be taken at defense counsel's offices in New York, the jurisdiction where Plaintiffs filed this action. (*Id.*). Plaintiffs' counsel initially asserted that the depositions would have to be taken remotely because counsel did not want to risk attending in person due to the coronavirus pandemic. (*Id.* ¶ 2). Defense counsel responded that at this time, courts and litigants nationwide were returning to in-person proceedings and offered to take any reasonable health-and-safety precautions that counsel might wish. (*Id.*).

With the retreat of COVID as a major impediment to in-person depositions, Plaintiffs' counsel then asserted that the depositions could not be taken in New York based on the alleged ill-health of Plaintiff Sillam and the age of Plaintiff Saulnier. (Zauderer Decl. ¶ 3). With respect to Plaintiff Sillam, counsel furnished a one-paragraph, conclusory letter from a French physician, which did not include any pre-litigation health history. (*Id.*).[1] Sillam also furnished a copy of his passport, which reflects that he visited the United States at least eight times between 2012 and 2018. (*Id.* ¶ 4 & Ex. B). Plaintiff Saulnier did not even claim any medical issue, and provided no evidence of inability to travel, but merely asserted that he should not be required to come to New

---

[1] The physician's letter is not submitted as an exhibit because it contains medical information concerning an individual, but we would be pleased to submit it for the Court's *in camera* review or Plaintiffs are of course free to do so.

2

York for his deposition because he was 79 years old. (*Id*. ¶ 5). When Defendants served a document request seeking documents sufficient to identify any travel by Sillam and Saulnier since 2018, Plaintiffs objected and refused to respond. (*Id*. ¶ 6 & Ex. C (Response No. 8)).

During August and September 2022, counsel met-and-conferred several times concerning this and several other discovery disputes. Counsel were able to resolve many of the disputes but could not come to agreement on the location of Plaintiffs' deposition and one other discovery issue. (*Id*. ¶ 7). On September 9, 2022, defense counsel wrote to Judge McMahon and requested that she refer this action to Magistrate Judge Wang with respect to discovery matters, pursuant to Paragraph V.B. of Judge McMahon's Individual Practices, which Judge McMahon did on September 13, 2022. (*Id.*; ECF Doc. 43).

Upon receiving the referral, Judge Wang directed the parties to submit a joint letter summarizing the status of discovery and any discovery disputes. (*Id.*; ECF Doc. 44). Judge Wang's Individual Practices limit the length of letters to three pages. Defendants' portion of the joint letter argued that Plaintiffs should be required to appear for their depositions in New York. (*Id.* ¶ 8; ECF Doc. 45). Defendants cited legal authority that plaintiffs are generally required to come to the forum in which they filed their lawsuit for their depositions; that conclusory allegations of ill-health are generally insufficient to overcome this presumption; and that the courts had long since resumed ordering in-person rather than remote depositions. (*Id.*). Defendants did not, however, have the opportunity to fully brief the issues concerning the deposition location.

After the parties filed their joint letter as directed, Judge Wang convened a conference to address the discovery issues. The order directed the parties to file a short "agenda" in advance of the conference, but did not authorize or invite the parties to file discovery motions or make any other written submissions in advance of the conference. (*Id.* ¶ 9; ECF Docs. 46, 51).

3

The conference was held on November 3, 2022.  (For the transcript, see Zauderer Decl. Ex. D).  The Court stated that it was denying Defendants' request that Plaintiffs be deposed in New York and suggested that the depositions could instead be taken either in France or remotely.  The Court concluded the conference by directing that the parties meet-and-confer further regarding the deposition location and report back within one week.

Counsel met-and-conferred as directed, but were unable to reach agreement.  Plaintiffs remained inflexible that their depositions could only be taken in France, either in-person or remotely.  (Zauderer Decl. ¶ 10).  On November 10, 2022, counsel submitted a joint letter setting forth the parties' respective positions, with Plaintiffs insisting that they should be deposed only in France, either in-person or remotely.  (ECF Doc. 58).  Defendants, in their portion of the joint letter, reiterated the presumption that plaintiffs be deposed in the forum where they have chosen to litigate; discussed the legal requirements and restrictions associated with seeking to depose Plaintiffs in France pursuant to the Hague Convention; noted that the Hague Convention would apply equally to virtual depositions of Plaintiffs in France as well as to in-person depositions; and observed that Plaintiffs have filed a series of complaints in France against attorneys representing Labaton Sucharow, so that if defense counsel conducted a deposition in France they would potentially also be subjected to the unnecessary risk of such abusive proceedings.  (*Id.* at 1-2).

On November 15, 2022, the Court entered an order indicating that to the extent Defendants' submission in the joint letter requested reconsideration of the Court's prior ruling concerning the location of the depositions, Defendants were to submit motion papers.  (ECF Doc. 59).  This memorandum of law and the accompanying declarations of Mark C. Zauderer, Esq., Anthony Tetley, and Natasha Tardif are submitted pursuant to the Court's directive.  As noted above, however, Defendants have not previously had the opportunity to submit a full briefing or other

4

papers, beyond short letters, regarding the matters discussed herein. There was no prior motion before the Court; if there had been, pursuant to Local Civil Rule 7.1 and Judge Wang's Individual Practices, either a formal notice of motion or a letter-motion would have been submitted. Accordingly, Defendants respectfully submit that the legal standard governing motions for reconsideration or reargument should not be applied on this motion (although we urge that the outcome should be the same regardless of which standard is applied).

# ARGUMENT

## PLAINTIFFS SHOULD BE REQUIRED TO APPEAR FOR DEPOSITION IN NEW YORK

**A.     Plaintiffs Chose to Bring Their Claims in New York, Making New York the Presumptive Location for Their Depositions, and Plaintiffs Have Not Shown Good Cause Rebutting that Presumption**

The Southern District of New York applies the "general rule" requiring plaintiffs to make themselves available for deposition in the District where they chose to file suit. *Wei Su v. Sotheby's, Inc.*, 17-CV-4577 (VEC), 2019 U.S. Dist. LEXIS 146667, at *1-2 (S.D.N.Y. Aug. 28, 2019). This rule is based upon the "long enunciated policy of requiring a non-resident plaintiff who chooses this district as his forum to appear for deposition in this forum absent compelling circumstances." *Id.* (quoting *Clem v. Allied Van Lines Int'l Corp.,* 102 F.R.D. 938, 939 (S.D.N.Y. 1984)); *Tangtiwatanapaibul v. Tom & Toon Inc.*, 1:17-cv-00816 (LGS) (KHP), 2017 U.S. Dist. LEXIS 233395, at *6 (S.D.N.Y. Nov. 22, 2017) (applying the "general rule" that a "[p]laintiff having selected the forum in which the suit is brought, will be required to make himself or herself available for examination there.").

> The general rule that a plaintiff should bear any inconvenience arising out of litigating in their choice of forum is rooted in fairness: as between a plaintiff and any other party, the plaintiff has the greatest latitude in choosing the most convenient forum. *See Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989) ("[A] plaintiff must generally submit to deposition in the district

where he has commenced litigation.") . . . . By commencing litigation in this district . . . Plaintiffs should have reasonably anticipated being required to appear in this district for depositions or other proceedings, including trial.

*Wei Su,* 2019 U.S. Dist. LEXIS 146667, at *1-2; *see also Connell v. City of New York*, 230 F. Supp. 2d 432, 436 (S.D.N.Y. 2002).

Plaintiffs can overcome the presumption in favor of being deposed in their chosen forum, New York, only by establishing "good cause" – also referred to as "compelling circumstances" – why their depositions should not be conducted here. *See Wei Su*, 2019 U.S. Dist. LEXIS 146667, at *1-2; *Clem,* 102 F.R.D. at 939. As the parties who chose the forum, the plaintiffs "should bear any reasonable burdens of inconvenience that the action presents." *Fed. Deposit Ins. Co. v. La Antillana, S.A.*, No. 88 Civ. 2670 (JFK), 1990 U.S. Dist. LEXIS 13246 at *1 (S.D.N.Y. Oct. 5, 1990)); *accord Wei Su*, 2019 U.S. Dist. LEXIS 146667, at *1-2*; Dagen v. CFC Group Holdings Ltd.*, No. 00 Civ. 5682 (CBM), 2003 U.S. Dist. LEXIS 13859, at *5 (S.D.N.Y. Aug. 11, 2003).

Plaintiffs have not established the requisite "good cause" or "compelling circumstances" necessary to overcome the presumption that they should be deposed in New York. Plaintiffs no longer offer the coronavirus pandemic as a reason the participants cannot attend an in-person proceeding. Instead, with respect to Plaintiff Sillam, Plaintiffs rely exclusively upon a conclusory doctor's note that supposedly directed him not to travel for six months. (Zauderer Decl. ¶ 3). Vague assertions in a doctor's note that traveling to New York "would endanger [the plaintiff's] life" unaccompanied by a pre-litigation medical history or diagnosis cannot excuse a plaintiff from having to travel to a deposition. *Wei Su*, 2019 U.S. Dist. LEXIS 146667, at *6. Moreover, Sillam's passport reflects that he visited the United States at least eight times since 2012, raising questions about his asserted inability to travel. (Zauderer Decl. ¶ 4 & Ex. B). When noticed to produce documents reflecting his travels outside France since 2018, Sillam refused. (Zauderer Decl. ¶ 6 &

Ex. D). As for Plaintiff Saulnier, Plaintiffs have never even suggested that he suffers from any health condition, but they simply mention that he is 79 or 80 years old.

It is submitted that Plaintiffs have not made the required "compelling" showing of "good cause" as to why they should not be required to appear for their depositions in New York. Finally, it would be unconscionable for Plaintiffs to assert that they are not well enough to travel to New York for their depositions, but then later appear in New York for a multi-day trial.

B. **Conducting the Depositions in France Pursuant to the Hague Convention, Whether In-Person or Remotely, <u>Would Not Assure a Full Examination of the Plaintiffs</u>**

In contrast to taking Plaintiffs' depositions in New York, conducting their depositions in France would require compliance with time-consuming, burdensome, and expensive procedures for international discovery under the Hague Convention. Even if all those procedures are undertaken, there would still be no assurance that Defendants would be able to conduct a full examination of Plaintiffs in France to the extent allowed under the Federal Rules of Civil Procedure.

Defendants are submitting herewith the Declaration of Anthony Tetley, a French attorney, concerning French law and practice under the Hague Convention. As set forth in the Tetley Declaration, France, like the United States and about 60 other countries, is a party to the Hague Convention. (Tetley Aff. ¶ 3 & Ex. B). By its terms, the Hague Convention applies, among other settings, whenever evidence is to be obtained in France from a citizen or resident of France for use in civil or commercial proceedings commenced in another country that is a party to the Hague Convention, including the United States. (*Id.* ¶ 4). France's ratification of the Hague Convention was subject to a number of declarations and reservations, which restrict the types of discovery available in France and establish procedural requirements for taking evidence in France. (*Id.* ¶ 5

7

& Ex. C). It typically takes several weeks or months for a letter of request under the Hague Convention to be processed, approved, and carried out by the relevant national authorities, under the procedures described below, and for the deposition to be scheduled and conducted. (*Id.* ¶ 6).

A request under the Hague Convention is initiated by the Court in which the underlying action is pending, which issues a document known as a letter of request addressed to the appropriate national authority of the country in which the deposition is to be taken. In France, this is the *Département de l'entraide, du droit international privé et européen* within the Ministry of Justice in Paris. (*Id.* ¶ 10). For depositions in France, the letter of request must be accompanied by a translation into French; must contain specified types of information concerning the pending litigation and the deposition to be taken; and must be transmitted by the requesting Court directly to the *Département de l'entraide, du droit international privé et européen* within the Ministry of Justice. (*Id.*).

There are two authorized procedural tracks or "Chapters" for obtaining and taking a deposition in France, referred to as "Chapter 1" or "Chapter 2". (*Id.* ¶ 12). A deposition under Chapter 1 is conducted by a French Judge, assigned by the French judicial authorities. (*Id.* ¶ 13). The French Judge would examine the witness himself or herself, using questions proposed by the attorneys. Some of the proposed questions might not be asked by the French Judge, who has discretion to rephrase, restructure, or simply not ask some of the proposed questions. (*Id.*). Moreover, even if a question proposed by counsel is asked and answered, the Judge may not ask the follow-up questions that counsel would ask. (*Id.*). The attorneys for the parties, whether American or French, may ask questions to the witnesses only if authorized by the French Judge. (*Id.*).

8

Moreover, in a Chapter 1 deposition, a verbatim transcript of the examination is not prepared. Instead, the French Court Registrar draws up a written summary record of the testimony, which is not a word-for-word record of the proceedings and which may fail to capture portions of the testimony that counsel might consider significant. (*Id*. ¶ 14). In summary, a deposition under Chapter 1 may not provide Defendants in this action with the full ability to question Plaintiffs, including appropriate exploratory and follow-up questions, to the same extent as a deposition in the United States.

Depositions in France pursuant to Chapter 2, instead of being taken before a French Judge, are taken before an individual designated by the U.S. Judge and authorized by the French authorities, referred to as a Commissioner. (*Id.* ¶ 15). The parties are required to explain to the national authority why the appointment of a Commissioner under Chapter 2 is being requested and, if the appointment of a specific person as Commissioner is requested, the criteria used for selecting that person. (*Id.*).

The Chapter 2 procedure presupposes the consent and full cooperation of all parties, because the Commissioner may not sanction a witness who does not appear at the deposition and does not have powers of compulsion. (*Id.* ¶¶ 16). For example, the Commissioner cannot sanction a witness who fails to appear at the deposition or violates any of the rules applicable to the deposition. (*Id.*). If a dispute arises as to how the deposition should be conducted, the Commissioner does not have any power to decide the dispute; nor can a Commissioner call on the assistance of a French judge for this purpose. (*Id.*). Moreover, the Commissioner has no, or limited, knowledge of the case itself, limited to what is set out in the letter of request. Accordingly, there is no assurance that a Commissioner will carry out a deposition with the same degree of rigor and in conformity with U.S. procedural rules as would be the case in the United States. (*Id.*).

Under either chapter, it will typically take a considerable time from when the letter of request is submitted to the French authorities as required by the Hague Convention, to the time the deposition can actually be conducted. As noted above, conducting the depositions of Plaintiffs situated in France, whether taken in person or remotely, may not ensure that Defendants can exercise the rights available to them in U.S. proceedings to fully examine and cross/examine the plaintiffs.

Depositions of Parties, Rather than Non-Parties, Are at Issue

Limitations on questioning of witnesses under the Hague Convention and related foreign law may be unavoidable and acceptable in the case of non-party witnesses, who, unlike Plaintiffs here, could not be required to come to the United States to give evidence. Here, however, the Plaintiffs voluntarily chose the United States as their forum and would be expected to appear here to give live testimony at trial. It would be extremely unfair to Defendants not to have available a transcript of Plaintiffs' deposition testimony for use on cross-examination or as admissions of a party. In addition, as noted above, it would take at least weeks, if not months, from the time a request to conduct depositions is submitted to the French authorities to the time the depositions can actually be conducted. In fairness, Defendants and their counsel should not be subject to such unnecessary delay, or to the inconvenience and considerable expense of having to travel to a foreign country to depose the very Plaintiffs who commenced this American action, as well as the expense of having French counsel participate in the deposition process both before and during the examination.

Conducting Plaintiffs' depositions in France, whether in-person or remotely, would also subject Defendants' New York counsel to the risk that Plaintiffs will file harassing prosecutions or other legal proceedings against them in France. As the Court is aware, conducting a deposition

in France without authorization of the national authority, or violating other procedural requirements concerning such depositions, could constitute a violation of Law No. 68-678 of 26 July 1968, sometimes referred to as the French "blocking statute." (Tetley Decl. ¶ 18). Such violations are subject to the potential of both civil and criminal sanctions. Although criminal convictions against attorneys for violating this statute are not common, at least one such case has been reported. (*Id.*).

Ordinarily one might consider the likelihood of a prosecution connected with taking depositions in France to be remote, assuming that there is a reasonable good-faith effort to comply with the required procedures. However, these particular Plaintiffs have previously filed a "direct summons" prosecution and other complaints against Labaton Sucharow LLP and several of its partners in France. (Zauderer Decl. ¶¶ 11-13; Declaration of Natasha Tardif ¶¶ 4-6). One of Plaintiffs' complaints in France was initiated via "direct summons," a procedure that does not require the authorization of any French prosecutor or other governmental authorities, but commences a proceeding in a French criminal court with the complaining party as the initiator. (Tardif Decl. ¶ 5). A number of Plaintiffs' allegations in this proceeding overlap with the allegations they have made in their civil case in the United States. (*Id.*). Although this purported private criminal proceeding appears to be meritless, and is subject to multiple procedural defenses as well as defenses on the merits, under French criminal rules, Labaton Sucharow and its partners have still been required to hire French counsel and incur tens of thousands of dollars in defense costs. (*Id.*).

In addition, Plaintiffs have also filed two purported, related complaints with French prosecutors against Labaton Sucharow and some of its partners – as well as against outside counsel who previously represented Labaton Sucharow in its dispute with Plaintiffs. (Zauderer Decl. ¶ 11-

13; Tardif Decl. ¶ 6). Indeed, Plaintiffs have actually boasted about the various complaints they have filed in France against Labaton Sucharow, its partners, and their former outside counsel, including in an affidavit signed by Plaintiffs' French counsel and filed in Plaintiffs' U.S. action, as well as two press releases disseminated earlier this year by Plaintiffs' French counsel on Plaintiffs' behalf. (Zauderer Decl. Exs. E, F). The press releases even went so far as to assert that the proceedings in the "direct summons" case reflected approval of the case by the French prosecuting authorities (*see id.*), even though public prosecutors are not involved in such cases. (Tardif Decl. ¶ 5).

Plaintiffs have repeatedly made tactical misuse of the French legal system, even including complaints against Labaton's former outside counsel, and continuing even after one of their complaints resulted in a refusal to prosecute by the public prosecutor. (Tardif Decl. ¶ 6). It should be understandable that U.S. counsel (including the declarant Mark C. Zauderer) is requesting this Court to allow him to conduct Plaintiffs' depositions under U.S. law in New York rather than under French law in Paris. The Hague Convention's procedural requirements are complex and their acceptable practical methods of implementation are uncertain. It is unfair to impose on counsel the risk that Plaintiffs would seek to manufacture yet another harassing ancillary French legal proceeding arising from the depositions, in light of Plaintiffs' already-demonstrated propensity to bring meritless complaints in France against Labaton and its attorneys, and then publicize them in the United States, which could produce terrible reputational damage.

C. **Conducting the Depositions Remotely Would Not Obviate the Need to Follow Hague Convention Procedures and Would Be an Inferior Substitute for In-Person Depositions**

The Court in its November 15, 2022 order directed that "Defendants shall also specify why remote depositions are not feasible."

If French witnesses are to be deposed in France, the Hague Convention requirements will apply. This will be the case even if the deposition is conducted remotely by attorneys in the United States. (Tetley Decl. ¶ 7). The French national authority has provided guidance, in response to a questionnaire issued by the Secretariat of the Hague Conference, confirming that remote or virtual depositions are subject to the Hague Convention and that "the rules of ordinary law" applicable to depositions conducted in person apply to depositions conducted over video links, to the same extent as if conducted in-person. (Tetley Decl. ¶ 8 & Ex. D).

If a deposition is conducted remotely by virtual or electronic means, it is the location of the witness, not that of the lawyer examining the witness, that determines whether the Hague Convention applies under French law. (*Id.*). U.S. law is to the same effect. *See* Fed. R. Civ. P. 30(d)(4) ("For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions."); *Yan v. Zhou*, 18-CV-4673(GRB)(JMW), 2021 U.S. Dist. LEXIS 169128, at *8 (E.D.N.Y. Sept. 7, 2021). Thus, if Plaintiffs are deposed remotely, with Plaintiffs appearing in Paris being questioned by lawyers located in New York, the Hague Convention requirements will still apply – with all of the attendant delay, risks that the scope of examination will be artificially curtailed, and potential for Plaintiffs to bring private prosecutorial charges in France, causing unwarranted reputational damage to U.S. counsel.

Moreover, the courts have observed that "conducting a deposition remotely simply fails to be an adequate substitute for an in-person deposition" when that alternative is available. *Herrera v. City of New York*, 19 CV 3216 (AT) (SDA), 2020 U.S. Dist. LEXIS 68417, at *6 (S.D.N.Y. Apr. 15, 2020) (citation omitted). As "courts in this Circuit have repeatedly recognized, an in-person deposition is also preferable in terms of ensuring the accuracy of the depositions and interpretations of testimony." *Id.* It is also "important to have counsel present so that the

13

examination most closely approximates that which would occur in the courtroom." *Id.; In re Fosamax Prods. Liab. Litig.*, 1:06-MD-1789 (JFK) (JCF), 2009 U.S. Dist. LEXIS 27209, at *30 (S.D.N.Y. Mar. 4, 2009) (collecting cases).

Remote depositions also deprive parties and their counsel of the ability to view the witnesses' demeanor and evaluate their credibility. *Herrera*, 2020 U.S. Dist. LEXIS 68417, at *6; *see also Austin Air Sys. v. Sager Electrical Supply Co.*, 19-CV-562Si(F), 2021 U.S. Dist. LEXIS 111181, at *2 (W.D.N.Y. June 21, 2021) ("a deposing party has a valid interest in personally assessing the credibility of the deponent during the conduct of an oral deposition as reasonably necessary to the effective conduct of the deposition").[2]

The inferiority of remote depositions would be further aggravated here by the challenges of conducting remote depositions across multiple time zones (a six-hour difference) and the technical complications associated with having to work with extensive documents and also the need for a remote translator, as Plaintiffs' counsel has advised that Plaintiffs will need interpretation. *See Wei Su*, 2019 U.S. Dist. LEXIS 146667, at *6-7.  Once again, if we were discussing the depositions of non-party witnesses, these limitations might be unavoidable.  But here, what is at issue are the depositions of the Plaintiffs themselves, who will be important fact witnesses and whose credibility will be at issue.  The risk of Plaintiffs' making frivolous allegations in France against defense counsel involved in questioning the Plaintiffs remotely, discussed above, would also exist for virtual depositions with the Plaintiffs located in France.

---

[2]   While virtually all aspects of litigation, including depositions, were necessarily conducted remotely during the height of the COVID pandemic, as the country returned to normal, Court have increasingly reverted to pre-COVID norms and resumed requiring in-person depositions. *See, e.g. Tijerina-Salazar v. Venegas,* 2021 U.S. Dist. LEXIS 241909, at *10 (W.D. Tex. Dec. 20, 2021) (ordering in-person deposition because "COVID concerns are not nearly as pertinent now ... as they were in July 2021 when the Court issued its remote deposition order"); *Pruco Life Ins. Co. v. Cal. Energy Dev. Co.*, 2021 U.S. Dist. LEXIS 209840, at *46-47 (S.D. Cal. Oct. 29, 2021) (ordering in-person deposition).

Under these circumstances, it is respectfully submitted that the Court should revisit its ruling at the November 3, 2022 conference and direct that Plaintiffs appear for their depositions in New York. All of the concerns discussed above under the Hague Convention would disappear if Plaintiffs' depositions were taken in New York, because the Hague Convention applies only where discovery is taken in *one* contracting state for use in *another* contracting state. It would not apply if the discovery is taken in the United States for use in the United States, where Plaintiffs voluntarily submitted to this Court's jurisdiction by filing a civil action in this Court.

## CONCLUSION

For the foregoing reasons, the Court should direct that Plaintiffs appear for in-person depositions in New York.

Dated: New York, New York
November 23, 2022

GANFER SHORE LEEDS & ZAUDERER LLP

By: /s/ Mark C. Zauderer
Mark C. Zauderer
Ira Brad Matetsky
Yoram J. Miller
360 Lexington Avenue
New York, New York 10017
(212) 922-9250
(212) 922-9335 (facsimile)
mzauderer@ganfershore.com
*Attorneys for Defendants*

15