**Paris Court of Appeal**
**Judicial Court of Paris**
**13th criminal chamber 2**

Excerpts from the minutes of the
registry of the judicial court of Paris

**Judgement pronounced on**:     09/03/2023
**Minute No.:**                            1
**Prosecutor's Office No.**:     21099000303

**Pleaded on 12/01/2023**
**Pronouncement of the judgement on 09/03/2023**

# CRIMINAL TRIAL JUDGMENT

At the public hearing of the proceedings of the Paris Criminal Court on the TWELFTH OF JANUARY TWO THOUSAND TWENTY-THREE,

**Composed of**:

Presiding Judge:  Mr DAIEFF Guillaume, Vice President,

Assessors:        Ms LASSERRE-JEANNIN Florence, Vice President,
                  <u>Ms PALENNE Jocelyne, Presiding Judge of the chamber</u>.

Assisted by:      Ms CÔME Inès, Clerk,

in the presence of BARRET Nicolas, Deputy Prosecutor,

At the public hearing of the pronouncement of the judgement of the Paris Criminal Court on the NINTH OF MARCH TWO THOUSAND TWENTY-THREE,

**Composed of**:

Presiding Judge:  Ms LASSERRE-JEANNIN Florence, Vice President,

Assessors:        Ms DE-CALAN Jeanne, Vice President,
                  Ms KAPLAN Virginie, Vice President,

Assisted by Mr WAECHTER Pierre-Alexandre, Clerk,

in the presence of Ms LETOR Carine, substitute,

| the case was called | Defendant on: | [handwritten:] *KELLER* |
| --- | --- | --- |
| **BETWEEN** | ~~Civil. resp. on:~~ | *Christopher, SUCHAROW* |
| | | *Lawrence, CANTY Michael P,,* |
| **PLAINTIFFS:** | APPEAL: Prosecution or Plaintiff on: | *STOCKER Michael, BELFI Eric,* |
| | | *CABINET D'AVOCATS* |
| | | *LABATON SUCHAROW LLP on* |
| | | *22/03/2023 [illegible]* |

Mr **SILLAM Gérard,** residing at: 181 rue de la Pompe 75116 PARIS, plaintiff,
*appearing and assisted during the proceedings by Maître MATHIEU Benjamin, lawyer at the PARIS bar,*
*appearing and assisted during the pronouncement of the judgement by Maître LARROQUE Sophie*

**Page 1/21**

* * *

Mr **SAULNIER Aldric,** residing at: 18 avenue Daumesnil 75012 PARIS FRANCE, plaintiff,
*not appearing during the proceedings, represented through a power of attorney by Maître LARROQUE Sophie, lawyer at the HAUTS-DE-SEINE bar, and Maître BATTIKH Mourad, lawyer at the PARIS bar,*
*not appearing during the pronouncement of the judgement, represented through a power of attorney by Maître LARROQUE Sophie*

* * *

The PUBLIC PROSECUTOR, at this court, added party

**AND**

**DEFENDANT**
Company name:                    SCI    CABINET    D'AVOCATS    LABATON
SUCHAROW [Law Firm of Labaton Sucharow]
Trade name:                      LLP
Address:                         140 BROADWAY NEW YORK, NY 10005 USA

*not appearing during the proceedings, represented through a power of attorney by Maître Olivier MORICE, Maître Célia CHAUFFRAY, Maître Timothée BELLANGER, Maître Natasha TARDIF, Maître Camille MARTIN SAINT-LEON and the firm REED SMITH,*
*not appearing during the pronouncement of the judgement, represented through a power of attorney by Maître Célia CHAUFFRAY and Maître Camille MARTIN SAINT-LEON*

**Defendant charged with**:
- FRAUD committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS
- USE OF WRITTEN FORGERIES committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS

* * *

**DEFENDANT**
Name: **KELLER Christopher**
born on 12 November 1970 in New York (USA)
Nationality: American

Residing at: LABATON FIRM, 140 BROADWAY, NEW YORK, NY 10005 USA

*not appearing during the proceedings, represented through a power of attorney by Maître Olivier MORICE, Maître Célia CHAUFFRAY, Maître Timothée BELLANGER, Maître Natasha TARDIF, Maître Camille MARTIN SAINT-LEON and the firm REED SMITH,*
*not appearing during the pronouncement of the judgement, represented through a power of attorney by Maître Célia CHAUFFRAY and Maître Camille MARTIN SAINT-LEON*

**Defendant charged with**:

- FRAUD committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS
- USE OF WRITTEN FORGERIES committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS

\* \* \*

**DEFENDANT**
Name: **SUCHAROW Lawrence**
born on 18 September 1949 in New York (UNITED STATES)
Nationality: American

Residing at: LABATON FIRM, 140 BROADWAY, NEW YORK, NY 10005 USA

*Not appearing during the proceedings, represented through a power of attorney by Maître Olivier MORICE, Maître Célia CHAUFFRAY, Maître Timothée BELLANGER, Maître Natasha TARDIF, Maître Camille MARTIN SAINT-LEON and the firm REED SMITH,*
*not appearing during the pronouncement of the judgement, represented through a power of attorney by Maître Célia CHAUFFRAY and Maître Camille MARTIN SAINT-LEON*

**Defendant charged with**:
- FRAUD committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS
- USE OF WRITTEN FORGERIES committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS

\* \* \*

**DEFENDANT**
Name: **BELFI Eric**
born on 9 April 1970 in New York (UNITED STATES)
Nationality: American

Residing at: LABATON FIRM, 140 BROADWAY, NEW YORK, NY 10005 USA

*not appearing during the proceedings, represented through a power of attorney by Maître Olivier MORICE, Maître Célia CHAUFFRAY, Maître Timothée BELLANGER, Maître Natasha TARDIF, Maître Camille MARTIN SAINT-LEON and the REED SMITH Firm,*
*not appearing during the pronouncement of the judgement, represented through a power of attorney by Maître Célia CHAUFFRAY and Maître Camille MARTIN SAINT-LEON*

**Defendant charged with**:
- FRAUD committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS
- USE OF WRITTEN FORGERIES committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS

\* \* \*

**DEFENDANT**

Name: **CANTY Michael P**
born on 17 December 1976 in New York (UNITED STATES)
Nationality: American

Residing at: LABATON FIRM, 140 BROADWAY, NEW YORK, NY 10005 USA

*not appearing during the proceedings, represented through a power of attorney by Maître Olivier MORICE, Maître Célia CHAUFFRAY, Maître Timothée BELLANGER, Maître Natasha TARDIF, Maître Camille MARTIN SAINT-LEON and the firm REED SMITH,*
*not appearing during the pronouncement of the judgement, represented through a power of attorney by Maître Célia CHAUFFRAY and Maître Camille MARTIN SAINT-LEON*

**Defendant charged with**:
- FRAUD committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS
- USE OF WRITTEN FORGERIES committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS

\* \* \*

**DEFENDANT**
Name: **STOCKER Michael W**
born on 29 March 1968 in the UNITED STATES
Nationality: American

Residing at: California Advocates for Nursing Home, 650 Harrison Street - 2nd Floor, SAN FRANCISCO, CA 94107 USA

*Not appearing during the proceedings, represented through a power of attorney by Maître Olivier MORICE, Maître Célia CHAUFFRAY, Maître Timothée BELLANGER, Maître Natasha TARDIF, Maître Camille MARTIN SAINT-LEON and the firm REED SMITH,*
*not appearing during the pronouncement of the judgement, represented through a power of attorney by Maître Célia CHAUFFRAY and Maître Camille MARTIN SAINT-LEON*

**Defendant charged with**:
- FRAUD committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS
- USE OF WRITTEN FORGERIES committed between 21 January 2011 and 17 August 2015 in NEW YORK, PARIS

## PROCEDURE

The defendants were summoned by SAULNIER Aldric and SILLAM Gérard, plaintiffs, by bailiff's writ delivered to the public prosecutor's office on 18 June 2021, to appear at the hearing of 15 October 2021. The summons was served abroad with direct dispatch to the recipients of the writ on 20 July 2021.

At the hearing of 15 October 2021, the case was adjourned to a later date in the presence of the parties.
At the hearing of 8 April 2022, the case was adjourned to a later date in the presence of the parties.

By submissions dated 12 January 2023:

"*The petitions of the Public Prosecutor's office heard.*

*The Court is requested to:*

*DECLARE that this summons is admissible and well-founded;*

*As a result,*

- *ADJUDGE AND DECLARE Mr Christopher KELLER, Mr Lawrence SUCHAROW, Mr Eric BELFI, Mr Michael CANTY, Mr Michael W. STOCKER and the firm Labaton SUCHAROW LLP guilty of having in New York, in Paris, in any case on national territory and within a time period not covered under the statute of limitations, between 21 January 2011 and 17 August 2015, committed fraud as an organised group to the detriment of Messrs Gérard SILLAM and Aldric SAULNIER, in this case by impersonating a lawyer and by using a series of fraudulent manoeuvres, by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs SILLAM and SAULNIER and, secondly, of leading them to waive agreements entered into and to waive contractual commissions;*

- *ADJUDGE AND DECLARE Mr Christopher KELLER, Mr Lawrence SUCHAROW, Eric BELFI, Michael CANTY, Michael W. STOCKER and the firm Labaton SUCHAROW LLP guilty of having in New York, in Paris, in any case on national territory and within a time period not covered under the statute of limitations, between 21 January 2011 and 17 August 2015, committed, as an organised group, acts of forgery and used forged documents to the detriment of Messrs Gérard SILLAM and Aldric SAULNIER, in this case, by issuing and using false certificates in order to escape their contractual obligations in order to lead Messrs SILLAM and SAULNIER to waive the agreements entered into and in particular the contractual commissions provided for;*

*APPLY CRIMINAL LAW TO THEM*

*And as a result,*

- *DECLARE admissible and well-founded the filing of civil actions by Mr Gérard SILLAM and Mr Aldric SAULNIER;*

- *ORDER Mr Christopher KELLER, Mr Lawrence SUCHAROW, Mr Eric BELFI, Mr Michael CANTY, Mr Michael W. STOCKER and the firm Labaton SUCHAROW LLP, jointly and severally, to pay Mr Gérard SILLAM and Mr Aldric SAULNIER the provisional sum of €20,000,000.00 in respect of their material loss, on the basis of the client tables submitted by Labaton in 2019;*

- *ORDER Mr Christopher KELLER, Mr Lawrence SUCHAROW, Mr Eric BELFI, Mr Michael CANTY, Mr Michael W. STOCKER and the firm Labaton SUCHAROW LLP, jointly and severally, to pay Mr Gérard SILLAM and Mr Aldric SAULNIER the sum of €5,000,000.00 for their non-pecuniary damage;*

- *ORDER Mr Christopher KELLER, Mr Lawrence SUCHAROW, Mr Eric BELFI, Mr Michael CANTY, Mr Michael W. STOCKER and the firm Labaton SUCHAROW LLP, jointly and severally, to pay Mr Gérard SILLAM and Mr Aldric SAULNIER the sum of €15,000 under Article 475-1 of the Code of Criminal Procedure;*

*ORDER THEM, lastly, to pay all the costs".*

* * *

The legal representative of the LAW FIRM OF LABATON SUCHAROW LLP has not appeared but is duly represented by its counsel, who has been granted a power of attorney; they have therefore been given the opportunity to be heard.

It is charged with;
- having, in ( PARIS ), on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, committed fraud to the detriment of Messrs Gérard Sillam and Aldric Saulnier, through impersonation and criminal conspiracy, in this case by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Sillam and Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the contractual commissions provided for, acts covered by Art. 313-1 of the Criminal Code, and punished by Art. 313-1 para. 2, Art. 313-7, Art.313-8 of the Criminal Code.
- having, in Paris and New York, on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, knowingly used a written document, whose purpose is to establish proof of a right, in this case [*sic*], in which the truth had been altered, this forgery being likely to cause harm to [*sic*], in this case , acts covered by Art. 441-1 of the Criminal Code, and punished by Art. 441-1 para. 2, Art.441-10, Art. 441-11 of the Criminal Code.

* * *

KELLER Christopher did not appear but is duly represented by his counsel, who has been granted a power of attorney; he has therefore been given the opportunity to be heard.

He is charged with:
- having, in ( PARIS ), on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, committed fraud to the detriment of Messrs Gérard Sillam and Aldric Saulnier, through impersonation and criminal conspiracy, in this case by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Sillam and Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the contractual commissions provided for, *acts covered by Art. 313-1 of the Criminal Code and punished by Art. 313-1 para. 2, Art. 313-7, Art. 313-8 of the Criminal Code*.
- having, in Paris and New York, on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, knowingly used a written document, whose purpose is to establish proof of a right, in this case [*sic*], in which the truth had been altered, this forgery being likely to cause harm to [*sic*], in this case , *acts covered by Art. 441-1 of the Criminal Code and punished by Art. 441-1 para. 2, Art. 441-10, Art. 441-11 of the Criminal Code.*

* * *

SUCHAROW Lawrence did not appear but is duly represented by his counsel, who has been granted a power of attorney; he has therefore been given the opportunity to be

heard.

He is charged with:
- having, in ( PARIS ), on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, committed fraud to the detriment of Messrs Gérard Sillam and Aldric Saulnier, through impersonation and criminal conspiracy, in this case by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Sillam and Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the contractual commissions provided for, *acts covered by Art. 313-1 of the Criminal Code and punished by Art. 313-1 para. 2, Art. 313-7, Art. 313-8 of the Criminal Code.*
- having, in Paris and New York, on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, knowingly used a written document, whose purpose is to establish proof of a right, in this case [*sic*], in which the truth had been altered, this forgery being likely to cause harm to [*sic*], in this case , *acts covered by Art. 441-1 of the Criminal Code and punished by Art. 441-1 para. 2, Art. 441-10, Art. 441-11 of the Criminal Code.*

* * *


BELFI Eric did not appear but is legally represented by his counsel, who has been granted a power of attorney; he has therefore been given the opportunity to be heard.

He is charged with:
- having, in ( PARIS ), on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, committed fraud to the detriment of Messrs Gérard Sillam and Aldric Saulnier, through impersonation and criminal conspiracy, in this case by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Sillam and Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the contractual commissions provided for, *acts covered by Art. 313-1 of the Criminal Code and punished by Art. 313-1 para. 2, Art. 313-7, Art. 313-8 of the Criminal Code.*
- having, in Paris and New York, on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, knowingly used a written document, whose purpose is to establish proof of a right, in this case [*sic*], in which the truth had been altered, this forgery being likely to cause harm to [*sic*], in this case , *acts covered by Art. 441-1 of the Criminal Code and punished by Art. 441-1 para. 2, Art. 441-10, Art. 441-11 of the Criminal Code.*

* * *

CANTY Michael P did not appear but is duly represented by his counsel, who has been granted a power of attorney; he has therefore been given the opportunity to be heard.

He is charged with:
- having, in ( PARIS ), on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, committed fraud to the detriment of Messrs Gérard Sillam and Aldric Saulnier, through impersonation and criminal conspiracy, in this case by issuing false

certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Sillam and Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the contractual commissions provided for, *acts covered by Art. 313-1 of the Criminal Code and punished by Art. 313-1 para. 2, Art. 313-7, Art. 313-8 of the Criminal Code.*

- having, in Paris and New York, on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, knowingly used a written document, whose purpose is to establish proof of a right, in this case [*sic*], in which the truth had been altered, this forgery being likely to cause harm to [*sic*], in this case , *acts covered by Art. 441-1 of the Criminal Code and punished by Art. 441-1 para. 2, Art. 441-10, Art. 441-11 of the Criminal Code.*

\* \* \*

STOCKER Michael W did not appear but is duly represented by his counsel, who has been granted a power of attorney; he has therefore been given the opportunity to be heard.

He is charged with:
- having, in ( PARIS ), on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, committed fraud to the detriment of Messrs Gérard Sillam and Aldric Saulnier, through impersonation and criminal conspiracy, in this case by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Sillam and Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the contractual commissions provided for, *acts covered by Art. 313-1 of the Criminal Code and punished by Art. 313-1 para. 2, Art. 313-7, Art. 313-8 of the Criminal Code.*
- having, in Paris and New York, on 21 January 2011 and 17 August 2015, in any case on national territory and within a time period not covered under the statute of limitations, knowingly used a written document, whose purpose is to establish proof of a right, in this case [*sic*], in which the truth had been altered, this forgery being likely to cause harm to [*sic*], in this case , *acts covered by Art. 441-1 of the Criminal Code and punished by Art. 441-1 para. 2, Art. 441-10, Art. 441-11 of the Criminal Code.*

## PROCEEDINGS

When the case was called, the reporting judge indicated that the case was being prosecuted by SAULNIER Aldric and SILLAM Gérard against SCI CABINET D'AVOCATS LABATON SUCHAROW LLP, KELLER Christopher, SUCHAROW Lawrence, BELFI Eric, CANTY Michael P and STOCKER Michael W.

The reporting judge noted the absence of the defendants, represented by their counsels, and gave notice of the writ that referred the matter to the court.

The reporting judge noted the presence of SILLAM Gérard, assisted by his counsel, and the absence of SAULNIER Aldric, represented by his counsel.

The reporting judge heard the case.

The arguments of Maître MATTHIEU, counsel for SILLAM Gérard were heard.

The arguments of Maître LARROQUE, counsel for SAULNIER Aldric, were heard.

The petitions of the Public Prosecutor's office were heard.

The arguments of the defendants' counsels were heard.

The clerk noted the progress of the proceedings.

Then at the end of the proceedings held at the hearing of the TWELFTH OF JANUARY TWO THOUSAND TWENTY-THREE, the court informed the parties present or duly represented that the judgement would be pronounced on 9 March 2023 at 1:30 p.m.

On this date, ceasing deliberations in accordance with the law, the Presiding Judge gave a reading of the decision, under Article 485 of the Code of Criminal Procedure.

**The court deliberated and ruled in accordance with the law in these terms**:

* * *

### STATEMENT OF THE FACTS AND PROCEDURE

On 3 November 2005, Gérard SILLAM, French business finder, entered into talks with the U.S. law firm Labaton Sucharow, specialising in class action lawsuits in securities fraud, to bring large European institutional clients, in particular French clients, to this firm, with a view to entering into referral agreements with the latter to ensure that the firm plays a key role as lead counsel in class action lawsuits.

On 21 February 2006, a contract for collaboration between the Labaton Sucharow Firm and Maître Descoubes, who had been introduced to Labaton Sucharow by Gérard SILLAM, was drafted.

Under the terms of this contract relating to disputes concerning securities class action lawsuits and other representative disputes on behalf of clients obtained mainly through the efforts of Maître Descoubes and his relationships was drafted and sent to Maître Descoubes [*sic*]. The Labaton Sucharow Firm and the latter agreed that Maître Descoubes would receive *15%* of the net attorneys' fees of Labaton Sucharow in the event that a client of Maître Descoubes was designated as the lead plaintiff alone or within a group consisting of up to five separate entities. It was expected that this commission would be reduced in proportion to the contribution relating to a client if the client presented by Maître Descoubes belonged to a group composed of other clients collectively designated as principal plaintiffs.

This document was not signed by Maître Descoubes.

Furthermore, on 25 April 2006 the Labaton Sucharow Firm and Gérard SILLAM signed an agreement referred to as a "consulting agreement". Under this agreement, Gérard SILLAM was to: *"provide the Labaton Sucharow Firm with his personal assistance and expertise by directly or indirectly facilitating the representation of Labaton Sucharow to foreign institutional investors who, as a result of Gérard SILLAM's efforts, become clients of Labaton Sucharow and the consultation on behalf of Labaton Sucharow in this regard. This agreement is a personal services agreement and Labaton Sucharow relies on and enters into this agreement specifically based on Gérard SILLAM's ability to leverage his personal contacts and relationships with potential clients and other relationships with potential clients[...].*

Under the terms of this agreement, Gérard SILLAM was to receive: in addition to the payment of reasonable costs directly related to the performance of the aforementioned services provided [to the] Labaton Sucharow Firm:

a) for funds with assets invested in U.S. securities in excess of $2 billion:
- a maximum success fee of US$30,000 if an exclusive commitment letter is obtained in favour of the Labaton Sucharow Firm to monitor the client's

portfolio, which includes Labaton Sucharow's regular access to the client portfolio
- for funds with assets less than $2 billion [but] greater than $1 billion the success fee will be reduced pro rata,

b) an additional success bonus in the event that the client is designated as lead plaintiff and the Labaton Sucharow Firm is designated as lead counsel within the meaning of the Private Security Litigation Reform Act of 1995, i.e. a fee of $65,000 if the Firm Labaton Sucharow is appointed as the sole lead counsel, to be paid for the success of the proceedings. In the event the Labaton Sucharow Firm is designated as the co-lead counsel, fees in the amount of $30,000 will be paid.

The Labaton Sucharow Firm was also required to pay, in any event, $6,000 per month during the term of the contract as an advance for success fees earned in accordance with a and b. However, and in any event, Labaton Sucharow's obligation to pay converted success fees: one of the is not triggered monthly under this paragraph will not be reimbursable to the Labaton Sucharow [*sic*].

The agreement also provided that during the term of the agreement, Gérard SILLAM could be privy to information concerning the trade secrets [and] confidential business information of the Labaton Sucharow Firm and [its] clients, [and] without limitation, information relating to general declarations, or lists of clients, to sales, marketing, production processes and procedures and other matters of the Labaton Sucharow Firm and information about client investments, confidential information that he agreed not to disclose or provide to any person.

On 4 August 2007, Gérard SILLAM terminated the contractual relationship with the Labaton Sucharow Firm with effect from 3 September 2007 and claimed rights for him and for Maître Descoubes and the payment of his remuneration on the basis of the matters entrusted or to be entrusted by the groups he claimed to have presented to the Labaton Sucharow Firm. The latter, by letter in response dated 24 October 2007, contested having in its possession a contract signed by Maître Descoubes, and contested the fact that the latter is presented to clients under the social agreement, asserting that Labaton Sucharow Firm had not been appointed in the context of a dispute by a European investor and even less by an investor designated as a lead plaintiff.

On 1 May 2008, Maître Descoubes and Aldric Saulnier drew up a contract for the assignment of rights and interests arising from or created by the referral commission agreement between Maître Descoubes and the Labaton Sucharow Firm, under which Aldric Saulnier was authorised to negotiate on behalf of the former a settlement agreement to settle the dispute arising from the execution of the agreement of 21 February 2006.

Gérard SILLAM, considering that Aldric Saulnier held at his request the rights of Maître DESCOUBES with the Labaton Sucharow Firm by virtue of the assignment agreement, filed an ethics complaint with the Paris bar on 12 October 2007 against Maître Descoubes, who had officially indicated that he had not signed the agreement of 21 February 2006, while Gérard SILLAM argued that the Labaton Sucharow Firm and Maître DESOCUBES had signed said agreement.

The Labaton Sucharow Firm and Gérard SILLAM differed in the interpretation of the agreement of 21 February 2006 and the remuneration that would be due to Gérard SILLAM: The Labaton Sucharow Firm did not respond to Gérard SILLAM's claims.

In June 2008, the Labaton Sucharow Firm informed Gérard SILLAM and his counsel that it was willing to consider a settlement.

On 23 April 2009, Gérard SILLAM filed a criminal complaint in France against the Labaton Sucharow Firm and its counsel for attempted organised fraud, forgery and use of forged documents and concealment.

The Labaton Sucharow Firm was keen to preserve its reputation and entered into two settlement agreements on 30 December 2009.

The first agreement was drawn up between the Labaton Sucharow Firm on 31 December 2009 [and] entitled "settlement and waiver and full release". The following were parties to the agreement: Maître Georges Gérard Alfonso, Maître Bertrand Jeanne as liquidator of Gérard SILLAM and [the] bankruptcy trustee, represented by its counsel Maître Hendrick Saulnier. The parties under this agreement agree to settle any potential claims that may exist under the consultation agreement entered into between S [*sic*] the agreement was to mutually and jointly release the parties from any known or unknown claims that either party may bring against the other in any jurisdiction in the world. Under the terms of this agreement, the Labaton Sucharow Firm agrees, in return for the full settlement [and] the termination of all obligations to which Gérard SILLAM could claim or allege [to be owed to him [*sic*]] by the Labaton Sucharow Firm, to pay in a single payment the sum of $400,000 by wire transfer to the account of his counsel, Maître Alfonso.

A second agreement was drawn up on 31 December 2009 between Maître Descoubes, represented by his counsel, Maître Saulnier, as his appointed lawyer, represented by Maître Georges Alfonso. The agreement [which was] entitled "international settlement agreement for withdrawal and complete waiver" concerned:

- on the one hand, the Vivendi litigation pending in the court of the Southern District of New York. With regard to this case, it was planned that Maître Descoubes would be paid 30% of the fees received by the Labaton Sucharow Firm if the threshold of $500,000 in fees received by Labaton Sucharow was exceeded. The minimum due to Maître Descoubes in the event of a favourable outcome could not be less than $150,000, no sum being due in the event of an unfavourable outcome
- on the other hand, and particularly with regard to all other disputes, the agreement provided for the payment of 15% of the fees received in the cases of a list of potential clients who would have appointed the Labaton Sucharow Firm in the pre-litigation *or* litigation phase as of the signing of the settlement agreement and for the next five years

In 2015, Gérard SILLAM, relying on the contract between the Labaton Sucharow Firm and Maître Descoubes and the assignee of the latter's rights, Maître Saulnier, claimed from the Labaton Sucharow Firm the payment of fees for the Vivendi litigation, which was to bring in €2 billion, to claim, as a settlement, the payment of retroactive fees in the amount of €1,250,000 to be paid on 5 August 2015 [at the latest]. He contested the veracity of the information sent by the Labaton Sucharow Firm on the procedures [and] the fees received.

On 15 August 2015, a settlement agreement entitled: Universal settlement agreement for the withdrawal and complete waiver of any [actual or potential] claim against LABATON or any of its agents, representatives or partners was entered into between Labaton and Gérard SILLAM and Aldric Saulnier, represented by their counsel Maître Georges Alfonso, referred to in the agreement as "Alfonso clients".

Gérard SILLAM and Aldric Saulnier withdrew from any actual or potential claims before any jurisdiction in the world arising from the agreements relating to them in any way, and in return, the Labaton Sucharow Firm undertook to pay the sum of $99,999.99".

On 20 December 2017, Gérard SILLAM filed a complaint with the Public Prosecutor's office of Paris against the Labaton Sucharow Firm for organised fraud, use of an inaccurate certificate, forgery and use of forgeries, concealment [and] conspiracy without any basis.

Following the preliminary investigation, the case was dismissed on the grounds: "offence insufficiently characterised".

* * *

In a writ dated 16 June 2021, Gérard SILLAM and Aldric Saulnier summoned the law firm of LABATON Sucharow LPP as well as Christopher J. Keller, Lawrence SUCHAROW, Erik J. BELFI, Michael P. CANTY, Michael W. STOCKER DARK, in the 13th Criminal Chamber, for:

*Regarding the criminal action*

- pursuant to Articles 313-1 et seq. of the Criminal Code, for having, in Paris and New York, in any case on national territory and within a time period not covered under the statute of limitations, between 1 January 2011 and 17 August 2015, committed fraud to the detriment of Gérard SILLAM and Aldric Saulnier, for impersonation and criminal conspiracy, in this case by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Gérard SILLAM and Aldric Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the commissions contractually provided for

- pursuant to Articles 441-1 et seq. of the Criminal Code, for having, in New York and Paris, and in any case for committing acts of forgery and use of forgery to the detriment of Gérard SILLAM and Aldric Saulnier by impersonation and criminal conspiracy in this case by issuing and using false certificates in order to evade their contractual obligations to lead Gérard SILLAM and Aldric Saulnier to waive the signed agreements entered into and in particular the contractual commissions provided for.

*Regarding the civil action*

Order them jointly and severally to pay the provisional sum of €20 million in compensation for their material damage as well as the sum of €5 million in compensation for their non-pecuniary damage as well as the sum of €15,000 on the basis of Article 475-1 of the Code of Criminal Procedure as well as the full costs of the proceedings.

On 15 October 2021, the court set the amount of the deposit [at] €3,000 for each of the plaintiffs [and] these sums were paid;

At the hearing, Gérard SILLAM alone appeared in person, and the other parties were represented by their respective counsel.

According to the summary submissions and submissions in reply produced at the hearing, Gérard SILLAM and Aldric Saulnier, concerning the criminal action, modified the accusations and now ask the court to adjudge and declare that the defendants are guilty: -of having, in Paris and New York, and in any case on national territory and within a time period not covered under the statute of limitations, between 1 January 2011 and 17 August 2015, committed fraud to the detriment of Gérard Sillam and Aldric Saulnier, through impersonation of a lawyer and through the use of a series of fraudulent manoeuvres, by issuing false certificates for the purpose, firstly, of setting aside the contractual commitments binding them to Messrs Sillam and Saulnier and, secondly, leading the latter to waive the agreements entered into and in particular the contractual commissions provided for
- having: in New York and Paris and in any case without committing acts of forgery and use of forgery to the detriment of Gérard SILLAM and Aldric Saulnier by impersonation in this case by issuing and using false certificates in order to escape their contractual obligations [and] to lead Gérard SILLAM and Aldric Saulnier to waive the signed agreements entered into and in particular the contractual commissions provided for.

/

Gérard SILLAM confirmed his claims concerning both the criminal and the civil action.

Upon questioning from the court, he argues that he was in France when the contracts were signed with the Labaton Sucharow Firm, even though he visited the United States at the beginning of their business relationship. He argues that between 2011 and 2015, the Labaton Sucharow Firm sent false certificates by failing to mention the class action lawsuits [*sic*] referred to it, the list of which is reproduced in Exhibit 28 A of his exhibits "Proof of claim". He asserts the agreements entered into in 2006 and 2009 and 2015, since he was still in contact with the LABATON firm and especially with Christopher Keller, and since he was paid on the basis of the 2015 agreement to which he was a party [and this] would not have been the case if the relations had been terminated with the Labaton Sucharow Firm, and since it is therefore admissible in his action.

He adds that while the client names are true even in the potential client list, the information that the Labaton Sucharow Firm was not engaged by these clients and that it did not receive a provision is false. Gérard SILLAM told the hearing that he had discovered this in 2017 during a meeting with AXA, where he learned that the Labaton Sucharow Firm had been taking care of their class action lawsuits since 2006; Gérard SILLAM therefore claims not only the 15% of retroactive fees referred to in the agreement of 21 February 2006 but in reality the 30% provided for in the agreement in the event of forgery or omission. He considers that the $400,000 resulting from the agreement he entered into on 30 December 2009 with the Labaton Sucharow Firm constitutes only a portion of the amount he is owed.

Through their counsel, the plaintiffs argue that false certificates were communicated by Mr KELLER on behalf of the Labaton Sucharow Firm and the partners, on 21 January 2011, 9 June 2011, 14 February 2012, 16 July 2013 and 8 July 2015. The last of these certificates sent to Aldric Saulnier's office, dated 8 July 2015, was intended to make them decide to sign the 15 August 2015 agreement.

They further argue that the drafting of false certificates, whose content is contradicted by the list of clients represented by the Labaton Sucharow Firm during class action in post-litigation, caused them material and non-pecuniary harm and Gérard SILLAM was unable to enforce his contract.

In response to the defendants' challenges, they consider that they have brought evidence that the Labaton Sucharow Firm was involved in the KCB cases and other cases listed in their Exhibit 28 A, and new exhibits numbered 40 to 48, subject to the parties' adversarial proceedings, concerning three VIVENDI cases, two Karam - KBC cases, two Computer Science Corporation cases, one Freedman case, and one ATRS case.

In defence, on the merits, the defendants conclude that the civil action brought by Gérard SILLAM and Aldric Saulnier is inadmissible because they do not have standing to act.

With regard to Gérard SILLAM, they point out that he is not involved in the agreement entered into between Mr Descoubes, represented by Maître Saulnier, and the Labaton Sucharow Firm; with Gérard SILLAM having abandoned the terms [of] the settlement he had entered into with Labaton Sucharow, all claims against Labaton Sucharow and his rights have been fulfilled.

The defendants also argue that Maître Saulnier was not a party to the agreements [and was not] a stakeholder in them, [and therefore] he has no standing to act on this basis in these proceedings. According to the defendants, the agreement for the assignment of interests and rights of 11 June 2008, which is referred to, is in reality a simple mandate granted by Maître Descoubes to Maître Saulnier for a final settlement with the Labaton Sucharow Firm. They add that as a French lawyer, Aldric Saulnier could not, without violating Articles 11-3 and 11-4 of the national regulations of the lawyer profession, be compensated as a business finder or share fees with a natural person who is not himself/herself a lawyer. Lastly, they conclude that Aldric Saulnier did not carry out any lawyer''s work justifying the fees claimed, so he did not suffer any harm and therefore has no standing to act.

The defendants request that they be acquitted, and dispute that they have committed the alleged forgeries and fraud. In defence, the defendants argue that Maître Descoubes never worked with the Labaton Sucharow Firm on the slightest case, since none of the clients referred was designated as lead plaintiff in a class action and that moreover [*sic*] the Labaton Sucharow Firm was never designated as lead counsel. They added that, between 2006 and 2007, Gérard SILLAM organised some meetings in the United States between certain European funds, [and] lawyers from Labaton Sucharow gave them some advice.

They also argue that the dispute between them and the plaintiffs is of a civil nature. Gérard SILLAM has also brought proceedings before the US court in New York. Two of his claims have been dismissed, and the third is the subject of discovery proceedings.

As a counterclaim, they claim damages by invoking the reputational damage of this case, as they themselves are lawyers:
-under Article 472 of the Code of Criminal Procedure, they request that the plaintiffs be ordered to pay as damages the sum of €50,000 for the Labaton Sucharow Firm and the sum of €10,000 for each of the partners being sued. They [*sic*] also request that the

plaintiffs be ordered to pay the sum of €75,000 and the sum of €9087.24 based on Article 800 2 of the Code of Criminal Procedure.

The court authorised communication during the parties' deliberation of the four disputed certificates in English and the KBC decisions.

## EXPLANATION OF THE GROUNDS

### Regarding the criminal action

Firstly, the defendants concluded that the summons was null and void, on the grounds that it was incomprehensible, as they did not know what they were being accused of between fraud, a criminal conspiracy, a criminal offence or a breach of contract, and that it did not specify the facts alleged against each of the defendants, making it hard to defend themselves. They argue, moreover, that the criminal court of Paris lacks jurisdiction, as no part of the offences is connected to French territory.

All parties were heard and the public prosecutor's office, whose petitions were heard, concluded that the pleas of nullity be dismissed.

*- Regarding the nullity of the summons*
The plaintiffs clearly indicated in the grounds and operative part of the writ the date and place of the acts being prosecuted; the criminal qualification and the applicable laws were also referred to; the reading of the summons allows the defendants to understand the offences alleged against them. The court also notes that the plaintiffs have abandoned the allegation of criminal conspiracy as a constitutive element of the offences of fraud and forgery being prosecuted, as criminal conspiracy is in reality a separate offence. Contradictions in the recounting of the facts or interpretation of the contracts giving rise to the proceedings, although they can cause confusion, do not affect the understanding of the offences being prosecuted, as the court hearing the case must assess the relevance of the evidence in support of the criminal action initiated by the plaintiff.

The defendants, in their written submissions, have put forward numerous substantive arguments to counter the accusations made against them. One can infer from this that they have fully understood the offences alleged. For these reasons, the court dismisses the plea based on the nullity of the summons.

*-Regarding the plea of lack of jurisdiction of the French court*

In law and pursuant to the provisions of Article 113-2 of the Code of Criminal Procedure, French law is applicable to offences committed in the territory of the French Republic; the offence is deemed committed in the territory of the French Republic when one of the constitutive acts has taken place in this territory.

In this regard, the court finds that, even though Gérard SILLAM travelled several times to the United States, in particular at the beginning of the discussions concerning his contract as a business finder with the Labaton Sucharow Firm, the disputed agreements entered into in February 2006 and then in April 2006, as well as the settlements entered into in December 2009 as well as in August 2015, gave rise to exchanges by email and mail sent by Fedex, and that the contracts were signed in the national territory, where the business of Gérard SILLAM and Aldric Saulnier, a Parisian lawyer, is located. They signed the contracts and either returned them to the United States or handed them over to French correspondents of the U.S. firm in Paris.

Furthermore, the court notes that in respect of the performance of the contract on 31 December 2009, which required the Labaton Sucharow Firm to regularly send the list of clients who had engaged it, the certificates drawn up under the signature of Mr Keller, although they were certainly drawn up in the United States, were indeed sent to Aldric Saulnier for use in France as proof of the performance of the contract.

All of these elements stem from offences relating to the national territory.

Therefore, this criminal court rules to dismiss the plea of lack of territorial jurisdiction of the French court and retains its jurisdiction.

*Regarding admissibility*

Considering the provisions of Articles 2 and 423 of the Code of Criminal Procedure

In law, a criminal action cannot be initiated by a civil party that does not demonstrate a personal injury caused by the offence being prosecuted. If there is no direct and personal injury, the civil party is not admissible and cannot initiate the criminal action.

With regard to Gérard SILLAM, the court finds that in order to claim an injury in respect of retroactive fees that he did not receive, Gérard SILLAM relies on the settlement agreement drawn up on 31 December 2009 between the Labaton Sucharow Firm and Maître Descoubes, represented by his assigned counsel, Aldric Saulnier, and invokes non-performance of contractual obligations relating to the transmission of certificates concerning potential clients appearing on the list attached to said agreement and who called upon the LABATON firm and paid it fees. However, it must be noted that Gérard SILLAM was not a party to the 2009 agreement, contrary to what he maintains. He invokes a "continuum" between the contract that bound him in April 2006 to the Labaton Sucharow Firm, and considers   immaterial the end of relations in 2007 and the subsequent settlement agreements drawn up to put an end to the dispute.

The court therefore considers that he cannot plead fraudulent non-performance of the contract, which would fall under criminal law, since the contract stipulates fees solely for the benefit of Aldric Saulnier. Consequently, the court declares him inadmissible as a civil party and finds that the matter was not properly referred to the court.

With regard to Aldric Saulnier, the court finds that he is a party to the disputed contract of 31 December 2009 on which he relies to claim compensation for his loss resulting from the offences of fraud, forgery and use of forgery. Therefore, the court declares him admissible in his action.

**Regarding the merits**

The court notes that in the settlement agreement of 30 December 2009 between Decoubes, represented by Maître SAULNIER, and the Labaton Sucharow Firm in Article III § A entitled "basis of the agreement": *the parties acknowledge, understand, and accept that curves [sic] had been presented to Labaton by Gérard SILLAM [sic] persons hired as consultants by Labaton by means of a separate and independent contract. The Alfonso clients acknowledge, understand and accept that [sic] the person was working under the direction of, pursuant to, their respective contract with Labaton and that Labaton now wishes to complete and conclude any liability obligation to see the current or future interest that it may have with Descoubes".*

In paragraph C entitled: "**possible fees arising from additional and/or future litigation**: *Labaton acknowledges, understands and accepts in consideration of the withdrawal and the full and final waiver given by the Alfonso clients as well as the*

*confidential arbitration agreement signed by the parties hereto, the Alfonso clients at least will retain a limited-time interest in an amount equal to 15% of the gross fees paid to LABATON in any matter where Labaton is engaged to represent any of the potential clients (who are potential clients from the moment the representation began), both during the preparation and during the course of a dispute - as confirmed in the appendix attached to this agreement identified as Exhibit number 1 ("potential clients"). Such limited share shall exist as soon as any potential client engages Labaton within five calendar years from the date of execution of this settlement agreement (the five-year period) and shall be paid on the terms of reference set forth in the agreement. In any case where Labaton represents a potential client, obtains a judgement or agreement in parentheses (before or after the potential client commences trial) anywhere in the world at any time. It is understood that Labaton may represent a potential client and another client in the same litigation, and the parties will determine in good faith what portions of the fees received by Labaton are subject to the limited portion.*

In §1 entitled: **"verification of verdicts or agreements obtained by Labaton concerning fees"** it is indicated in particular: "*that Labaton will produce the verifiable documents that there are [or] will be and attach them to and incorporate [sic] them automatically into this agreement as a document to establish the structure of 'Labaton's fees in parentheses, flat hourly rates of fees or contingent fees) for each of the cases in which Labaton represents one of the potential clients during the five-year period. If necessary, Labaton will subsequently provide the documents to be automatically attached to this agreement to confirm the structure of Labaton's fees, including the flat rate hourly fees or contingent fees, when the indicated fees have been adjusted, reduced, [or] modified [sic] in any way, [in] each case where Labaton was hired by a potential client before, during or after a trial.*".

Under the terms of § 2 and§3 of this same article it is indicated that

- *LABATON must communicate to Georges Alfonso, before the execution of the agreement, and in a verified report, the complete list of ongoing (or contemplated) cases in which Labaton represents any of the potential clients anywhere in the world as of the date of execution of the agreement and, if applicable, a full description of the case for which Labaton was engaged in each case as well as the agreement for payment of hourly or flat-rate or contingent fees* [...]
- *-must, every six months, start[ing] six months from the date of execution of the agreement, produce for Georges Alfonso a statement indicating whether any of the potential clients have retained Labaton in a real dispute in the world in the last six months and if so, a full description of the case for which the club was retained in each case as well as a good faith estimate by Labaton of the potential damages and/or legal fees generated by these representations of potential clients s[...]*

The court finds that the parties differ as to the interpretation of the terms of the contracts, the plaintiff considering that the due diligence of the Labaton firm in the post-litigation phase and, consequently, the fees received fall within the scope of the aforementioned agreement. On the other hand, the Labaton Sucharow Firm and the other defendants consider that the terms of the agreement have been complied with and that the information provided for by agreement has been sent to Maître Descoubes as to the follow-up given to the cases relating to the clients introduced by Mr Sillam, in the pre-litigation or litigation phase, provided that the firm has performed actual work for these [*sic*] clients and that the latter have given their consent and therefore that the Labaton firm has actually represented them, which according to Labaton Sucharow was not the case. The defendants consider that the firm's work in the post-litigation phase and, consequently, the fees received in this context do not fall within the scope of the agreement providing for the payment to Mr Descoubes of 15% of the fees received by

the Labaton firm.

The court notes, in light of the exhibits submitted and the explanations provided at the hearing, that the facts in question fall within the realm of a civil dispute and interpretation difficulties both regarding the scope of the agreement and the procedures for determining retroactive fees; that these difficulties do not therefore result from a criminal offence whether on the grounds of fraud or on the grounds of forgeries and use of forgeries. The demonstration of the existence of fraud by means of forgery and use of forgery to get the plaintiffs to waive their agreements and commissions is therefore not provided. Consequently, the court acquits all the defendants for the purposes of the prosecution.

**Regarding the civil action**

Concerning SILLAM Gérard, the court declares his civil action inadmissible for the reasons mentioned above.

The court declares the civil action of Aldric Saulnier admissible.

Given the decision to acquit, it is appropriate to dismiss his claims.

**Regarding the counterclaims**

*Regarding the claims based on the provisions of Article 472 of the Code of Criminal Procedure*

The court notes that the right to summon a person before the criminal court for acts punished criminally by imprisonment and/or a fine, must, without prejudice to any litigant in the exercise of his/her right of access to the criminal judge and his/her right to report the offences that have caused him/her harm, be exercised in good faith; the court also notes that this is not the case here, considering the elements of the record.

The court believes, for the reasons already set out, that the plaintiffs could not be mistaken about the existence of a difference in interpretation of the contracts in dispute, on which the damage they claim to suffer is based, and which falls under the sole jurisdiction of the civil court in the United States, to which the case was already referred; the plaintiffs also did not hesitate to request provisions for exorbitant amounts.

Without calling into question the fundamental right of access to a judge, the infamy of a lawsuit before the criminal court, the conviction and the sentence pronounced must lead the plaintiff to act with caution, without wanting to make criminal justice an instrument foreign to its functions.

Therefore, the court considers that Gérard SILLAM and Aldric Saulnier have improperly summoned the defendants and must therefore compensate the resulting damage, which will be precisely assessed at the amount of [see decision]

*Regarding the claims based on the provisions of Article 800-2 of the Code of Criminal Procedure.*

The defendants, the Labaton Sucharow Firm and each of the five partners summoned had to organise their defence in criminal proceedings. As they are defendants of foreign nationality and this dispute is intimately related to proceedings falling under foreign jurisdictions and foreign law, they had to incur significant costs, both in translating (justified by exhibits) the exhibits of the proceedings and in the technical legal analysis

to defend [themselves] in these proceedings.

For these reasons, their request will be granted under the terms of the operative part, with the remainder of their requests being dismissed.

* * *

### ON THESE GROUNDS

The court, ruling publicly, in the first instance and

- **in the presence of both parties** with regard to SCI CABINET D'AVOCATS LABATON SUCHAROW LLP, KELLER Christopher, SUCHAROW Lawrence, BELFI Eric, CANTY Michael P, STOCKER Michael W, SILLAM Gérard and SAULNIER Aldric,

**IN LIMINE LITIS**

**DISMISSES** the plea of nullity based on the inaccuracy of the summons;

**DISMISSES** the plea of lack of jurisdiction raised by the defendants;

* * *

**REGARDING THE CRIMINAL ACTION**

**ACQUITS**:
- SCI CABINET D'AVOCATS LABATON SUCHAROW;
- KELLER Christopher;
- SUCHAROW Lawrence;
- BELFI Eric;
- CANTY Michael P;
- STOCKER Michael W;

* * *

**REGARDING THE CIVIL ACTION**

- **<u>Concerning SAULNIER Aldric</u>**

**DECLARES** admissible the civil action of SAULNIER Aldric;

**DISMISSES** the claims of SAULNIER Aldric, plaintiff, due to the acquittal;

* * *

- **<u>Concerning SILLAM Gérard</u>**

**DECLARES** inadmissible the civil action of SILLAM Gérard;

* * *

- **Regarding the counterclaims**

**GRANTS** the counterclaims by
- SCI CABINET D'AVOCATS LABATON SUCHAROW;
- KELLER Christopher;
- SUCHAROW Lawrence;
- BELFI Eric;
- CANTY Michael P;
- STOCKER Michael W;

**ORDERS** SILLAM Gérard and SAULNIER Aldric, jointly and severally, on the basis of Article 472 of the Code of Criminal Procedure, to pay the following amounts:
- €50,000 to SCI CABINET D'AVOCATS LABATON SUCHAROW
- €10,000 to KELLER Christopher;
- €10,000 to SUCHAROW Lawrence;
- €10,000 to BELFI Eric;
- €10,000 to CANTY Michael P;
- €10,000 to STOCKER Michael W;

**ORDERS** SILLAM Gérard and SAULNIER Aldric, jointly and severally, to pay the translation costs in the amount of €4,353.60 and €50,000 for the remainder on the basis of Article 800-2 of the Code of Criminal Procedure;

**DISMISSES** the remainder of the claims;

and this judgement having been signed by the presiding judge and the clerk.

| **THE CLERK** | Certified copy of original | **THE PRESIDING** |
| [signature] | The Clerk | **JUDGE** |
| | [signature] | [signature] |
| | [stamp:] JUDICIAL | |
| | COURT OF PARIS | |
| | 2020-0398 | |

 TRANSPERFECT

# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

File Name:          Jugement 21099000303 - LABATON et autres

Source Language:    French

Target Language:    English

Authorized Signature:

*Stefania De Miglio*
Stefania De Miglio (May 2, 2023 15:00 GMT+1)

Name:     *Stefania De Miglio*

Title:    *Senior Project Manager*

Date:     *02/05/2023*

Reason for signature: I approve the accuracy of this document content as written

D 03700