UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GERARD SILLAM and ALDRIC SAULNIER,

                Plaintiffs,                              No. 21 CV 6675 (CM)

  -against-                                   **AFFIRMATION OF**

                                                                  **DOUGLAS M. REDA, ESQ.**

LABATON SUCHAROW, LLP,
CHRISTOPHER J. KELLER, and
LAWRENCE A. SUCHAROW

                Defendants.
------------------------------------------------------------------X

DOUGLAS M. REDA, ESQ, an attorney duly admitted to practice law in the State of New York, affirms the following under the penalties of perjury:

1. I am the attorney for the Plaintiff GERARD SILLAM, in the above-captioned action. As such, I am fully familiar with the facts and circumstances surrounding this lawsuit. I am submitting this Affirmation to explain to the Court the actions that my client took in France regarding the filing of criminal charges in regards to certain actions taken by the defendants and their attorneys that violated French Criminal Law.

## STATEMENT OF FACTS

2. Broadly, the issue of the location of Mr. Sillam's deposition was the subject of many motions, conferences and court appearances going back to the fall of 2022. The defendant's wanted to depose the plaintiff in the US and the plaintiff for medical reasons requested that the depositions be held in France. It was also discussed if the plaintiff's deposition was held in France, would it be pursuant to the Federal Rules or the Hague Convention. The

main concern of the defendant's counsel was that if the plaintiff's deposition was held in France pursuant on the Federal Rules and not pursuant to the Hague Convention, then the plaintiff would file criminal charges against the defendants and their counsel for a violation of French Law. To assuage the fears of the defendant's counsel, it was agreed that the plaintiff would execute an declaration/affidavit (See Exhibit "**A**," the Declarations of Plaintiff Gerard Sillam and Plaintiff Aldric Saulnier dated February 16, 2023, combined) in which Mr. Sillam would agree not to file any criminal complaints in France against the defendant's or their counsel for any alleged violations of French Law pertaining to the deposition taking place in France.

3. On or around August 15, 2023, a Status Conference was held by the Honorable Ona T. Wang to proceed with a Show-Cause Hearing. The Minute Entry for this proceeding was entered onto the record on or around August 17, 2023, and was shortly thereafter obtained by Plaintiff's counsel.

4. As per pages 38 and 39 of the transcript of the Show-Cause Hearing (See Exhibit "**B**," Conference Before Hon. Ona T. Wang dated August 15, 2023), the Honorable Ona T. Wang made the following inquiries:

> Does the use of the documents in the document requests give rise to criminal liability in France? Even if they do -- and I'm not convinced that they do in the way that they were used, but I'm going to give you another chance to try to show me that they do -- but even if they do, do these following facts have any bearing on whether Mr. Sillam breached the promise, violated the promise contained in paragraph 4 of his declarations?
>
> For the later publication on the docket with Mr. Sillam's permission, did the evidence he used, together or separately, constitute a waiver of his right to complain, in any event?
>
> A separate but related issue is whether any of these other actions or inaction, including giving his own counsel the right to publish on the docket without sealing the very same documents he's complaining that defendants and

> defense counsel used in a document request, does that essentially lead to some sort of a waiver of his right to complain, in any event, about the use of the documents in the document request?
>
> I also want to know the status of this criminal case. I want to know about the status of the prior criminal case that resulted in the $150,000-euro sanction. I want to know about the factual and legal findings in that case, and I also want to know whether any of those factual findings inform on what we should do in this case.
>
> The last issue is whether there's any ethical rules or rules of professional responsibility that are also implicated, given Mr. Sillam's reliance and representation that he consulted with his lawyers.

5. Plaintiff's counsel will address these inquiries through this Affirmation and the documents attached to and incorporated into the Affirmation.

## ARGUMENT

6. A review of the January 25, 2023 transcript, (See Exhibit "**C**," Proceedings Before The Honorable Ona T. Wang dated January 25, 2023) clearly demonstrates that the sole purpose of the declaration/affidavit that Mr. Sillam would eventually execute on February 16, 2023 was to prohibit him from filing any frivolous criminal complaints against the defendants or their counsel if the depositions were held in France pursuant to the Federal Rules and not pursuant to Hague Conventions.

7. From the beginning, the conference with the Court was almost entirely about the defendants' counsels concern that Mr. Sillam would file frivolous criminal complaints in France regarding what would transpire if his deposition was conducted in France. On page 15, lines 6 through 13 of the January 25, 2023 transcript, in talking to Mr. Zauderer, U.S. counsel to the defendant, specifically about depositions, the Court states, "… [S]o the concern as you're articulating it now… [i]s if you were to go to Paris to take the deposition you don't have any assurances that you're not going to be subjected to a frivolous, some

sort of proceeding in France on the basis of what are the facts taking the deposition," to which Mr. Zauderer replied, "Yes, your Honor" (page 15, line 14). I responded in part on page 16, "[W]e stated it in our papers that they are willing to sign affidavits stating that they will not do anything in regards to these lawyers pertaining to the depositions that occur in France." Page 16, lines 9-12 of the January 25, 2023 hearing. Most of the hearing dealt with how to protect the defendants and their lawyers from a frivolous criminal complaint filed as it pertains to the depositions if conducted in France. Even toward the end of the hearing, the Court and the parties were still discussing the taking of the depositions in France when the Court on page 46 asks, "So, Mr. Reda, you've tendered or you proffered some sworn affidavit or undertaking that your clients would not pursue?" to which I respond, "Yeah, we put in our papers that they would sign whatever affidavits that that the, we told them this, that they feel comfortable to protect them he would not be bringing, neither of them would be bringing any criminal proceedings or any proceedings, whatsoever, in France, **in regards to the deposition.**" Page 46, lines 9-19 of the January 25, 2023 hearing.

8. I bring these few excerpts from the January 25, 2023 hearing to the Court's attention to highlight that it appears that the main issue before the Court was to address the defendants' and their counsel's concerns that Mr. Sillam would bring a frivolous criminal complaint against the defendants and their counsel regarding the depositions if they occurred in France whether in-person or remotely. I think it is important to note that the criminal complaints brought by Mr. Sillam in France were on March 30, 2023, well over a month before his May 5 and May 12 depositions.

9. As it turned out, the original purpose of the declaration/affidavit was rendered moot when the defendants and their counsel decided to hold the depositions pursuant to the Hague Convention and not the Federal Rules. In fact, Mr. Sillam's deposition was held in France on May 5 and May 12 of 2023.

10. Even though the depositions were held in France pursuant to the Hague Convention and not the Federal Rules, thereby obviating the need for the protections contained in the declaration/affidavit, (there is no violation of French law if depositions are held in France pursuant to the Hague Convention), a problem arose when the parties and the Court were informed that on March 30, 2023, Mr. Sillam had filed a criminal complaint against the defendants and their counsel for violations of French Law that had nothing at all to do with his deposition, since at the time of the filing of the complaint his deposition in France had not yet occurred.

11. When Mr. Sillam's action of filing the criminal complaint in France on March 30, 2023 was brought to the Court's attention, the Court was very concerned that Mr. Sillam had in some way defrauded the Court when he executed the declaration/affidavit and intentionally violated the declaration/affidavit when he filed the criminal complaint in France. Based on that filing the Court conducted a hearing on the matter on August 15, 2023 (Ex. "B"). At the hearing, the Court requested that the plaintiff and his counsel address the Court's concerns and also answer certain specific questions concerning this matter. I believe that the memorandum submitted by French Counsel Mourad Battikh (See Exhibit "**D**," Memorandum of Law dated September 15, 2023) addresses the questions the Court had pertaining to French Law. As Mr. Battikh clearly explains in his Memorandum, the criminal complaints in France against the defendants and their counsel had absolutely nothing to do

with Mr. Sillam's deposition that occurred in May of 2023, but pertained to the illegal and criminal use of Mr. Sillam's Minutes (a history of criminal accusations, *not* convictions) to make false accusations against Mr. Sillam in the trial held in France on January 12, 2023 (hereinafter referred to as the "FRENCH TRIAL"), as well as to share the same document between the defendants' French and American counsels which was then incorporated in the defendant's American counsel's January 27, 2023 discovery demands in the instant action.

12. As is clear in the Memorandum submitted by Counsel Battikh, the use of this document (which contains only unfounded and unproven accusations) in the FRENCH TRIAL and the current civil case before Your Honor without the express written consent of the local French Prosecutor are violations of French Criminal Law. It also is clear from an examination of Mr. Battikh's Memorandum that when the defendant's French counsel fraudulently told the Court at the FRENCH TRIAL that these accusations were actual convictions for bankruptcy fraud, such conduct was also a violation of French Criminal Defamation Laws.

13. It is clear from the memorandum of Mr. Battikh that the criminal conduct complained of was not in any way frivolous and had nothing at all to do with Mr. Sillam's May 2023 depositions. Mr. Battik also states in his memorandum that the filing by this office of the "Minutes" (with the consent of Mr. Sillam) on the Federal Court docket in no way alters, affects or negates that the prior conduct of the defendants and their French counsel was unethical or that using the "Minutes' in the FRENCH TRIAL and in the discovery demand in this case without the express written consent of the local French prosecutor were violations of French Criminal Law.

14. The reason that I am concentrating on the fact that the declaration/affidavit of Mr. Sillam was meant to protect the defendants and their counsel from criminal complaints filed against them regarding the deposition held in France is because I am very much aware that the Court and the defendants' counsel are concerned that paragraph #4 of the declaration/affidavit could, if looked at in a vacuum, be interpreted as a blanket preclusion to prevent Mr. Sillam from commencing **any** criminal actions in France for **any** conduct of the defendants and their counsel regardless of whether they dealt with the depositions that occurred in France. I believe that such an interpretation of the declaration/affidavit goes against the main reasons that were discussed at length at the January 25, 2023 hearing. It was my belief that the purpose of the declaration/affidavit was to protect the defendants and their attorney from any criminal violations as they pertained to the taking of Mr. Sillam's deposition in France pursuant to the Federal Rules.

15. I bring this point to the Court's attention because when I instructed Mr. Sillam to execute the declaration/deposition, I told him it only had to do with not commencing any criminal complaints as they pertained his deposition in France. It was never my belief that the signing of the declaration/affidavit by Mr. Sillam would give the defendants and their counsel carte blanche to violate French laws that had nothing whatsoever to do with his deposition in France. In fact, I would have counseled him **against** signing the declaration/affidavit if I had realized it could be used as a sword by the defendants and their counsel to violate multiple French Laws without any fear of any repercussions.

16. I now realize that that the crux of the problem is the line in the declaration/affidavit (Ex. "A") on page 2, paragraph 4 which states in part, "… to the conduct of the Deposition *or* this action." When I read that part of the affidavit, I mistakenly thought it was referring to

conduct of the deposition **IN** this action, not OR this action. It was my mistake in reading the affidavit as I believed that the declaration/affidavit only pertained to the deposition held in France and nothing else. I want the Court to be aware that the subtle construction of this conjunctive clause led to my failure in realizing how the declaration/affidavit could be interpreted to preclude any criminal complaints being filed against defendants no matter how unethical or illegal their conduct; this was my error and my error alone. All the advice I gave my client to execute the declaration/affidavit was based on my honest belief that Mr. Sillam was only agreeing to not file any future criminal complaints against the defendants and their counsel as it pertained to the taking of the deposition in France.

17. I also want the Court to be aware that while I understand the wording in paragraph 4 of the declaration/affidavit can be interpreted to be a blanket prohibition of Mr. Sillam bringing any criminal action in France against the defendants and their counsel, I believe that such an interpretation contradicts the spirit of what the Court and the parties were trying to accomplish at the January 25, 2023 hearing, which was to protect the defendants and their counsel from criminal complaints being filed in France as they pertained to the depositions to be held in France.

18. Additionally, the Court should be aware that all of the advice I gave Mr. Sillam regarding him executing the declaration/affidavit was based on my honest belief that it only dealt with the prohibition of filing any criminal complaints pertaining to the deposition. I believe that since the criminal complaint filed by Mr. Sillam was on March 30, 2023, over a month before the deposition took place, it therefore had nothing to do with a deposition that had not occurred. This also explains why Mr. Sillam consulted with his French counsel about filing the March 30, 2023 criminal complaint since, based on my interpretation of the scope

of the declaration/affidavit, Mr. Sillam did not think he needed to discuss the filing of the criminal complaint with me since it did not have anything to do with his deposition or declaration/affidavit. While I understand that the Court may take the position that my interpretation of the declaration/affidavit was incorrect, it was clearly not Mr. Sillam's intention to violate the declaration/affidavit by filing the criminal complaint since it clearly had nothing to do with his deposition that had not yet even occurred.

19. I also want to bring to the Court's attention that as I was reading the transcript of the January 25, 2023 hearing, Mr. Zauderer spent a fair amount of time discussing the fact that he had appeared at the January 12, 2023 trial in France incognito and was aware of the "Minutes" of Mr. Sillam's history of criminal accusations (none of which resulted in convictions) being used against Mr. Sillam at the trial. At the time of the January 25, 2023 hearing, I was not yet aware of this document as it was not sent to my firm until January 27, 2023—two (2) days after the hearing before Your Honor. It appears that the defendants' counsel were aware of the use of those documents at the trial but that neither the Court nor I were aware of that fact. While it is not my intention to cast aspersions against defense counsel, it appears that since they were aware that the use of these materials at the trial might have been a violation of French Criminal law, that might explain the wording of paragraph 4 of the declaration/affidavit that not only prohibits a filing of a criminal complaint as it pertains to the depositions, but a further prohibition of filing **any** criminal complaint against the defendants and their counsel for **any** criminal actions they might take while this instant case is pending. Such an interpretation goes against the spirit of why my client executed the declaration/affidavit which was intended to protect the defendants and

their counsel for any criminal prosecution as it pertains to the deposition being taken in France.

20. According to the Memorandum of French counsel Battikh, it would appear that the defendant's French counsel was aware or should have been aware that the use of the "Minutes" at the FRENCH TRIAL and the sharing of those "Minutes" with the defendant's US counsel without the express consent of the local prosecutor was a clear violation of French Law. Furthermore, it was at the very least unethical and defamatory, and also a violation of French Criminal Law, for Labaton's French Counsel to argue that the mere accusations contained in the "Minutes" were in fact criminal convictions. Mr. Zauderer also parlayed these unfounded accusations into continuous attacks on my client's character in front of Your Honor, as evidenced on pages 8, 14, 21, and 30 of the January 25, 2023 transcript (Ex. "C"). I myself mention this may be grounds for defamation on page 34, line 7 **before I even knew that a similar occurrence took place in France which did ultimately become actionable for defamation**.

21. We have attempted in this affirmation, the plaintiff's affidavit (see Exhibit "**E**," Affidavit of Gerard Sillam dated September 15, 2023) and the Memorandum of Mr. Battikh to answer the questions asked by Your Honor. If the Court requires more information or clarification of any arguments, we are willing to provide as much information as the Court deems sufficient.

22. In closing, I wish to make it clear that it was never Mr. Sillam's intention to mislead or defraud the Court or to intentionally violate the declaration/affidavit he signed. As Mr. Sillam states in his affidavit, he is very appreciative of the Court allowing him to be deposed in France and does not want the Court to think otherwise.

23. Even if the Court finds that Mr. Sillam did violate the declaration/affidavit, it was not done intentionally, and the dismissal of his justified complaint would be too severe a punishment for this unintentional act.

Dated: September 15, 2023
       Mineola, New York

_____
Douglas M. Reda