**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
GERARD SILLAM and ALDRIC SAULNIER,      :
                                            :
           Plaintiffs,             :        No. 21-CV-6675 (CM) (OTW)
                                            :
           -against-              :        **OPINION AND ORDER**
                                            :
LABATON SUCHAROW LLP, et al.,           :
                                            :
           Defendants.           :
------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

## I.   BACKGROUND

      This case was referred to me for general pretrial management on September 13, 2022 (ECF 43), after Judge McMahon determined that the only remaining claim in this case would be one for fraudulent inducement arising from Plaintiffs' execution of two release agreements, in 2009 and 2014, with Defendants. This Opinion and Order arises from Plaintiff Sillam's alleged breach of promises he made in order to resolve the parties' dispute over the location of Plaintiffs' depositions. Specifically, Defendants allege that Plaintiff Sillam brought two criminal actions or complaints ("the 2023 Complaints") in March and April of 2023.

## II.   PROCEDURAL HISTORY

      In January 2023, the parties appeared before me for a status conference with what appeared, at first blush, to be a straightforward discovery dispute: Where should Plaintiffs be deposed? (ECF 79). Plaintiffs claimed to be elderly French citizens who raised numerous challenges, including pandemic-related health reasons, to leaving France to be deposed. Defendants also raised two concerns unique to this lawsuit and these Plaintiffs, both relating to

Plaintiffs' propensity for bringing meritless criminal charges against Defendants and their counsel:[1] first, that the questions that defense counsel planned to ask Plaintiffs as they were deposed in France might result in disputes or give rise to criminal charges in France (ECF 81 at 15, Transcript of January 25, 2023 Conference); and second, a more general concern that Defendants and their lawyers might be subjected to other, frivolous criminal proceedings, as they have in the past. *See, e.g.*, *id*. at 28.[2] Plaintiffs' U.S. counsel, Douglas Reda ("Mr. Reda"), made several representations that his clients would be "willing to sign whatever they [defendants and counsel] need, they feel to be protected." *Id*. at 24. Later, Mr. Reda represented:

> [W]e put in our papers that they would sign whatever affidavits that the, we told them this, that they would feel comfortable to protect them that he would not be bringing, neither of them would be bringing any criminal proceedings or any proceedings, whatsoever, in France, in regards to the deposition. They could even have sanctions built into the affidavit if they violate that, I just don't, I think the chances of it happening are so slim because the ultimate sanction here would be you dismiss their case . . .

*Id*. at 46.

Upon those representations, I determined that Plaintiffs would not be required to leave France for their depositions, but ruled as follows:

> [D]efendants may elect whether to conduct a deposition of Mr. Sillam remotely or in person with Mr. Sillam in France. That is [D]efendants' election. The parties are to work together in good faith to agree to the particulars and logistics of the deposition, including but not limited to providing affidavits or other statements or agreements from Mr. Sillam to address the concerns raised by defense counsel about frivolous proceedings brought in France, or potential frivolous proceedings brought in France.

*Id*. at 49. I further cautioned:

---

[1] *See* ECF 130 for Defendants' summary of proceedings instituted in France by the Plaintiffs.
[2] THE COURT: What I've heard articulated, a concern that there will be criminal proceedings . . . unfairly brought . . . that will cause problems . . . Significant problems . . .
MR. ZAUDERER: Yes, he just has to file them, that's all he has to do.

> I am concerned . . . by what you have told me, Mr. Zauderer, about what Mr.
> Sillam has done in the past about criminal proceedings . . . . Maybe I am like
> Charlie Brown with [the] football, but I have faith and hope that Mr. Reda and
> the representations that he's made and the work that he has done with his
> client[s] will make that a nonissue, . . . . If it becomes an issue, I do want to hear
> about it, okay?

*Id*. at 50.

Shortly after the January conference, Defendants prepared declarations for both Plaintiffs

to sign, in which they promised, *inter alia*, that they would not:

> file or pursue any type of legal proceeding in France, including but not limited to
> any type of criminal proceeding or criminal complaint, against Defendants,
> Defendants' counsel, or any persons affiliated with them, relating directly or
> indirectly to the conduct of the Deposition or this action.

(ECF 104-4 at ¶ 4, Exhibit D - Declarations of Plaintiffs Sillam and Saulnier (February 16, 2023)).

Plaintiffs signed these declarations on February 16, 2023, and Sillam, sitting in France, was

deposed by remote means on May 5 and May 12, 2023. (*See* ECF 104-5, Exhibit E - Excerpts from

Plaintiff Sillam's Deposition Transcript (May 12, 2023); ECF 111 at 2).

By August 2023, however, Defendants notified the Court that Sillam[3] had filed a criminal

complaint in March 2023 that they believed breached the promises in his declaration. (*See* ECF

104). We later learned that Sillam had filed *two* criminal complaints, the 2023 Complaints, in

March and April[4] of 2023.[5] More letters followed in the ensuing days, see ECF Nos. 105 and 107,

---

[3] Although prior criminal proceedings appear to have been brought by both Plaintiffs, the 2023 Complaints appear to have been brought only by Plaintiff Sillam.

[4] During the course of the briefing on the order to show cause, Sillam apparently admitted that he had filed a second complaint on April 27, 2023, "for the violation of privilege, possession of stolen goods applied to it and also for defamation," apparently based on the same facts that gave rise to Sillam's March 2023 complaint. (*See* ECF 124-4 at 11, Declaration of Sillam's French counsel).

[5] As Sillam's French counsel describes, there is a file or database called "traitement des antécedents judiciaries" (the "TAJ") maintained by the French police that "includes all people who have been subject to a police hearing," including victims of crimes and regardless of outcome of the hearing. (ECF 126-4 at 8). The presence of a person's name in the TAJ does not mean one has been found guilty of any crime. *Id.*; *see also* ECF 130 at 6. The public prosecutor provided to Defendants' French counsel a copy of the TAJ (referencing Sillam, apparently) at some time before December 16, 2022, and the TAJ was referenced by Defendants and incorporated in a written response filed December 16, 2022

after which I issued an order to show cause specifically related to the promises Sillam made in his

declaration. (*See* ECF 108). As directed, the parties made several written submissions on August

14, 2023, and appeared for a show cause hearing on August 15, 2023. (ECF 117). I made a

preliminary finding at the hearing that Sillam had failed to show cause that he had not breached

the promises made in his February 2023 declaration, and directed supplemental briefing on

whether Sillam breached those promises and whether French law "placed him in such a quandary

that he had no choice but to institute a new criminal complaint." *Id*. at 1; ECF 118-1 at 39,

Transcript of August 15, 2023 Show Cause Hearing.

### III.   SILLAM'S AND HIS COUNSEL'S EXPLANATIONS

Sillam and his counsel's explanations in response to the Order to Show Cause follow the

same path: (1) the declaration only covered criminal complaints arising from or relating to the

deposition; (2) Defendants and their counsel violated French law before Sillam signed the

Declaration, so Sillam's right to file the 2023 Complaints arose before he signed the Declaration,

and thus the 2023 Complaints "had nothing to do with" the depositions; and (3) in any event,

Sillam had a good faith basis for filing his complaints and/or he relied on the advice of counsel. I

find each of these explanations meritless, and will address each argument in turn.

---

regarding a criminal complaint instituted by Plaintiffs against Labaton and its outside counsel, Brown Rudnick LLP. (*See* ECF 130 at 7–8). Plaintiffs filed their reply to this written response on January 11, 2023, without referencing or objecting to Defendants' prior use of the TAJ. This case was then tried before three judges on January 12, 2023 (the "French trial"). *Id*. at 8.

Sillam has proffered two bases for the 2023 Complaints. First, Sillam's counsel asserts that Defendants' French counsel made false statements at the French trial about Sillam's prior criminal history based on the TAJ. (ECF 126-4 at 9). Second, Defendants attached the TAJ to their Third Set of Document Requests dated January 27, 2023, sent to Plaintiffs' U.S. counsel in January 2023, after the French trial. (*See* ECF 110-3, Exhibit B – Minutes).

On March 9, 2023, the French tribunal ruled that, *inter alia*, Defendant Labaton was not guilty of fraud, dismissed Plaintiffs' criminal complaint, and ordered Plaintiffs Sillam and Saulnier to pay damages and sanctions of approximately 150,000€ to Labaton and five of its lawyers. (ECF 111-2 at 20–21). The April 2023 process appears to be an appeal of the March 9, 2023 ruling. (ECF 126-4 at 5–6).

**A.** <u>**"Arising from" or "Relating to" the Depositions**</u>

In the January conference, Plaintiffs' counsel repeatedly offered "affidavits or other statements or agreements" to assuage defense counsel's concerns that they and their clients would be subjected to criminal process in France by Sillam. (ECF 81 at 49; *see also id.* at 16, 46). Indeed, Defendants and their counsel[6] had already been subjected to four separate criminal complaints instigated by Plaintiffs, for which they had to hire French counsel and expend resources to defend them. (*See* ECF 130 at 6–11). Indeed, after the French trial on January 12, 2023, on civil and criminal claims arising from the same contracts at issue in this case,[7] the French tribunal, on March 9, 2023, dismissed all the civil and criminal claims against the Labaton parties and granted their counterclaims, ordering Plaintiffs to pay the Labaton parties, jointly and severally, approximately 150,000€. (*See* ECF 111-2 at 20–21).

Against this backdrop – after the French trial had occurred but before the French tribunal's decision – the dispute over the location of Plaintiffs' depositions arose and was litigated. Defendants drafted declarations – which Plaintiffs signed on or around February 16, 2023 – that they expected would protect them from further harassment and litigation in France. (ECF 104-4). The language in the declarations was clear and unequivocal. It made no exception for meritorious complaints versus frivolous ones, for in-person depositions or remote depositions, or for depositions under the Hague Convention, the Federal Rules, or upon consent. *Id*. Moreover, the declarations explicitly acknowledged, under penalty of perjury, that each Plaintiff had had a full

---

[6] *See generally* ECF 130 at 6–11. Plaintiffs had filed four complaints against Labaton, several of its partners, and Labaton's former outside counsel before filing the instant action.

[7] The claims are summarized at ECF 111-2. Indeed, while not at issue here, the Court questions whether Plaintiffs' actions in France have any preclusive or estoppel effect on Plaintiffs or the case here.

opportunity to consult with both his New York and French attorneys and understood that a breach of the agreement would lead to sanctions. *Id*. at 2, 5. That language, too, was unequivocal.

It defies belief that Defendants would have intended to limit themselves the way Plaintiff's counsel suggests, given their past history. Mr. Reda's own comments at the colloquy in January 2023 do not help; he repeatedly argued that defense counsel's concerns were exaggerated and overblown since defense counsel Mark Zauderer ("Mr. Zauderer") had recently traveled to France (apparently for the French trial) and had not been arrested, even though criminal proceedings were pending against them. (ECF 81 at 16–19). Even Plaintiffs' counsel acknowledged, as early as January 2023, that Plaintiffs would not risk sanctions for instituting proceedings that might lead to defense counsel being arrested. *Id*. at 46–47. Sillam's own argument is also illogical: if the Declaration was only intended to protect Defendants and counsel from criminal action *after* they had taken Sillam's deposition, or because of the manner in which the deposition was taken, then Defendants would have had zero protection from criminal action (and arrest) upon arriving in France to depose Sillam, if they had chosen to do so. That they wisely opted to conduct the deposition remotely does not change the meaning of the declaration.

Accordingly, I find that the Declaration, by its plain language, was not limited to the manner of taking the deposition or claims arising from questions asked at the deposition. Alternatively, even if it were so limited, Plaintiffs knew – because they proposed it – that a promise to be free from legal harassment in France was necessary for the Court to allow them to be deposed in France.[8]

---

[8] At the August 15, 2023 Show Cause Hearing, I expressed my concern about fraud on the tribunal (ECF 118-1 at 12) (emphasis added):

THE COURT: There's a concern here, because I was also led to believe that this was a way to get the depositions done without having to force the issues of making your clients come to the United States to be deposed. So in addition to

**B. The Merits (or lack thereof) of the 2023 Complaints are Irrelevant**

Sillam's French counsel provides an overview of the French criminal complaint process and the bases for,[9] and procedural posture of, the 2023 Complaints. (ECF 126-4). Defendants contest the merit of any of the French proceedings (ECF 81 at 7–8; ECF 130 at 18), and also argue that they did not violate French law during the French trial or by attaching the TAJ to their Third Set of Document Requests dated January 27, 2023. (ECF 130 at 19–21; *see also* ECF 110-3).

Even assuming[10] the 2023 Complaints were meritorious, however, Sillam and his counsel do not explain why the merits of the French complaints excuse them from a prior promise not to sue that was made in consideration for a procedural benefit in this case. At best, Sillam's French counsel suggests that claims for defamation must be filed within three months (ECF 126-4 at 12), but does not explain whether that time frame can be extended or tolled. And nothing in Plaintiff Sillam's filing suggests that he was compelled to file these complaints; indeed, Sillam casts these filings as decisions made after consulting with counsel. (*See* ECF 126-5, Exhibit E – Affidavit of Gerard Sillam). Finally, nothing in Sillam's briefing or argument suggests that this covenant not to

---

this concern about whether the promises contained in the declaration were breached, in addition to that, **I am extremely concerned, also, about a fraud upon the tribunal**. Do you understand what is at stake here? MR. REDA: Yes, Judge.

[9] French counsel lists three "[o]ngoing legal proceedings" in France: (1) Sillam's 2018 complaint "for slanderous denunciation and threat" against Labaton; (2) the January 12, 2023 criminal trial against Labaton for fraud resulting in the March 9, 2023 judgment; and (3) a March 30, 2023 prosecution complaint against Labaton's French and American counsel "for violation of French legal privilege and possession of stolen goods falling within the boundaries of said legal privilege," which was dismissed. (ECF 126-4 at 5; *see also* ECF 130 at 21–22 discussing the current status of the criminal complaints).

[10] As Defendants discuss in their briefing after the show cause hearing, the trial on the Direct Summons took place on January 12, 2023. Defense counsel Mr. Zauderer was present but played no role in the proceedings. (ECF 130 at n.2). The tribunal issued its oral judgment on March 9, 2023, sanctioning Plaintiffs and noting that there was already a civil dispute (i.e., this case) pending on the same claims in the United States. *See id.* at 9–11; ECF 111-2. The March 2023 criminal complaint alleged wrongdoing in France as a result of Defendants' and their counsel's conduct at the January 2023 trial and in discovery in this case. After that complaint was dismissed, Sillam refiled it in April. *Id.* at 13–14. Although Defendants' briefing outlines several reasons why the 2023 Complaints had no merit under French law, and it is regrettable that Plaintiffs did not raise their objections to U.S. discovery requests in a U.S. Court, this opinion does not examine the merits of the actions filed in France.

sue was not enforceable. *See, e.g.*, *Town of Newton v. Rumery*, 480 U.S. 386, 397–8 (1987)

(enforcing covenant not to bring civil rights action after resolving criminal case, where agreement

was voluntary and no evidence of prosecutorial misconduct).

  **C.** <u>**Good Faith Basis and Advice of Counsel**</u>

   It is unclear from Sillam's Affidavit whether he received preposterously bad advice or no

advice at all about the declaration, what it meant, and his choices to proceed with the French

complaints. It may not matter, however, for determining whether Sillam's filings violated the

promises in his declaration: the plain language of the declaration made no distinction between

frivolous and meritorious complaints, nor was it, on its face, limited to complaints arising from the

depositions. The declaration was translated into French, and Sillam acknowledged that he had had

an opportunity to consult with his French and U.S. counsel. The plain language was clear and

expansive enough to cover the 2023 Complaints. There is no carve-out for good faith.

   The legal advice Sillam sought and received (and what he chose to do with the information

he had), may shed light, however, on whether his actions were in fact in good faith, which may be

relevant to an appropriate sanction. As Mr. Reda stated back in August, notwithstanding his

"belief" that the Declaration did not cover the complaints, he would have counseled his client not

to file the complaints if his client had asked him. That Sillam chose to ask only French counsel

about discovery practices here – and did not apparently ask either counsel to confirm whether the

declarations covered the filing of the 2023 Complaints – belies Sillam's conclusory assertions of

good faith, and obviates the need for the Court to inquire into counsel's state of mind when he

allegedly misinterpreted the language of the declaration. Indeed, Sillam and his counsel hid the

fact of these filings until directly asked in deposition, and even then Sillam only admitted that the

cases were filed in 2023, citing to confidentiality and privilege concerns to avoid testifying in more detail. (*See* ECF 111-4).

Accordingly, I find that Sillam has breached the promises in his Declaration by filing the 2023 Complaints. I further find that he did so intentionally and not in good faith, and he has not shown good cause to find otherwise.

## IV.   SANCTIONS ANALYSIS

Defendants first raised this issue in the context of Rule 37, in light of their attempts to obtain further information on Sillam's French complaints. (*See* ECF Nos. 105 and 105). Rule 37 provides for a wide range of sanctions – including contempt – under Rule 37(a)(5) and Rule 37(b) and (c). At the August 15, 2023 show cause hearing, defense counsel sought sanctions including monetary sanctions payable to the court, cost shifting, and attorneys' fees under Rules 33 and 37, (incorporating ECF 104), up to dismissal of the action. (ECF 126-2 at 19–24).

### A.   Monetary Sanctions

At a minimum, a monetary sanction is warranted under Rule 37(a)(5). The parties were cautioned about sanctions under Rule 37(a)(5) as early as January (ECF 81 at 53). Relying on Plaintiffs' representations that they would sign "whatever affidavits" needed to assuage Defendants' concerns, I ruled that Plaintiffs could remain in France for their depositions, and Defendants proceeded to conduct those depositions, at considerable cost and inconvenience. When they learned that Sillam had breached the promise not to bring actions in France, they had to engage in additional discovery and filings to bring those breaches to the Court's attention and to litigate them. Thus, Sillam will be directed to pay reasonable fees and costs under Rule 37(a)(5) for: (1) Defendants' drafting and negotiation (if any) of the declaration, (2) preparing for and

taking Sillam's deposition, and (3) the motion practice ensuing from their discovery of the 2023 Complaints.

### B. Other Sanctions

More may be necessary here: Sillam's counsel made broad representations in January that Plaintiffs would sign affidavits that "neither of them would be bringing any criminal proceedings or any proceedings, whatsoever, in France, in regards to the deposition,"[11] and that the risk was "slim to none" that Plaintiffs would "have some lawyer that they don't know somehow frivolously arrested and risk the case being dismissed and then being financially sanctioned," by violating such promises. (ECF 81 at 46–47). Yet that is what happened here, and apparently without Mr. Reda's knowledge. (ECF 118-1 at 16). Defendants have also sought dismissal, and I have raised concerns about a fraud on the tribunal. *See supra* n.8. If Defendants seek a recommendation of dismissal or any other equitable or monetary relief, they shall file supplemental briefing as directed below.

### V.   CONCLUSION

Defendants are hereby directed to file, **by Friday, May 3, 2024**, factual support for an award of monetary sanctions under Rule 37(a)(5). Such support shall include, but is not limited to, contemporaneous billing records and, if necessary, communications with opposing counsel. Any privileged or confidential material may be filed in redacted form, with a fully unredacted copy filed under seal so that the Court may review the entire filing *in camera*. Plaintiffs' opposition to the amount of a monetary sanction shall be filed **by Friday, May 10, 2024**. If Plaintiffs intend to file any material they believe is privileged or confidential, they shall follow the same procedures in the first instance, and the Court will address motions to seal at a later date.

---

[11] *See supra* Section III.A.

The Court is also considering recommending or ordering harsher sanctions, whether under Fed. R. Civ. P. 16, 37(b) or (c), under 28 U.S.C. § 1927 (counsel's liability for excessive costs), and/or the Court's inherent authority. Defendants are directed also to brief whether a harsher sanction, such as dismissal, is warranted here, explaining the bases for the Court's authority. This brief shall also be filed on **Friday, May 3, 2024**, with Sillam's opposition due on **Friday, May 10, 2024**.

Plaintiff Saulnier is directed to file, on **Friday, May 10, 2024**, a letter describing what discovery he believes remains outstanding in *his* case. Defendants' response, if any, is due on **Friday, May 17, 2024**. All discovery is **STAYED** until further order of the Court.

**SO ORDERED.**

_/s/ Ona T. Wang_

Dated: April 22, 2024                                        **Ona T. Wang**
     New York, New York                          United States Magistrate Judge