UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

GERARD SILLAM and ALDRIC SAULNIER,

        Plaintiffs,

   -against-

LABATON SUCHAROW, LLP,
CHRISTOPHER J. KELLER, and
LAWRENCE A. SUCHAROW,

        Defendants.

---------------------------------------------------------------X

21 Civ. 6675 (CM)(OTW)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/9/2024

## DECISION AND ORDER CONDITIONALLY GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE FOR FAILURE TO COMPLY WITH COURT ORDER

McMahon, J.:

    Plaintiff Gerard Sillam has been a troublesome litigant.

    Sillam, a French businessman, and French attorney Aldric Saulnier filed this lawsuit in 2021. Defendants are the well-known plaintiffs' securities law firm Labaton Sucharow, LLP, and two partners in that firm.

    Back in 2005 or so, the Labaton firm was alleged to have entered into an unethical fee-splitting arrangement with Sillam and a predecessor in interest to Saulnier. The fees (originally in the amount of 15% of Labaton's earnings on any representation) were to be paid in exchange for Sillam's referring clients (principally large European investment funds) to Labaton. The referrals were to come from Sillam, and the fees (15% of the total fee earned by Labaton for whatever work it performed) were intended to be earned by and paid to Sillam. The role of the lawyer – first one named Descroubres, then Saulnier – was to serve as intermediary; the lawyer was to accept payment from Labaton, and then to forward the money to Sillam, the intended recipient. Plaintiffs allege that Defendants devised this arrangement in order to circumvent the ethical prohibition against a lawyer's splitting fees with a non-lawyer – a prohibition with which the two Frenchmen were entirely unfamiliar.

    The arrangement fell apart several times.[1] The first time, it was due to the alleged non-payment of Sillam's full referral fee. That disagreement, which led to the filing of a lawsuit in

---

[1] All of the sordid facts alleged in the complaint, including details about how the deals fell apart and were renegotiated, are recounted in the court's opinion dismissing Counts II (negligent misrepresentation) and III (aiding and abetting fraudulent inducement) of the Complaint, but denying the motion to dismiss Count I

France, was settled by the signing of two agreements – one between Sillam and Labaton, one between Saulnier and Labaton – in 2009. Among its other terms, the 2009 Settlement required Labaton to aver each year, under oath, for a period of five years, whether the firm had done any work for any client covered by the 2009 Settlement. That information could then be used by Sillam and Saulnier to determine whether they were owed any money pursuant to the terms of the 2009 Settlement Agreements. Defendant Keller, an attorney at law, allegedly filed affidavits in the years covered by the 2009 Settlement Agreements. In each of those affidavits, Keller averred that the firm had not represented any covered client during the preceding year. In this lawsuit, those averrals are alleged to have been false.

After the five-year period covered by the 2009 Settlement expired, Labaton suggested that the parties enter into yet another settlement agreement – known as the Universal Settlement – which was ostensibly intended to put an end to the parties' relationship once and for all, in exchange for the payment of $99,999 to Sillam and other consideration. The Universal Settlement contained a broad general release of all claims. At the time it was signed, Plaintiffs allege that they did not know, and had no reason to know, that Keller's annual sworn statements were not true. Plaintiffs allege that, had they been aware of the true facts – which were that Labaton had done work for several of the clients covered by the 2009 Settlement Agreements, meaning that Sillam was owed money[2] – they would never have agreed to the Universal Settlement proposed by Labaton. Indeed, Plaintiffs suggest that the Universal Settlement (the reason for which was unclear, since the 2009 Agreements had expired by their terms) was a plot by Labaton to obtain a release of any claims that might relate to those alleged misrepresentations. Labaton, of course, denies everything.

Once the court declined to dismiss Plaintiffs' claim for fraudulent inducement against Labaton and Keller – and then denied a motion to reconsider – the case was turned over to my colleague, The Hon. Ona T. Wang, for general pretrial supervision. The pre-trial discovery process turned out to be quite contentious, thanks to Sillam, who – while perfectly content to sue Defendants in the United States – turned out not to want to play the litigation game by American rules. Apparently Sillam also failed to play the French litigation game by its rules: Between 2017 and 2020, Sillam (sometimes with Saulnier) commenced at least four civil and criminal proceedings in France, against Labaton, Keller, Sucharow, other Labaton partners, and the lawyers who have represented them in the United States and in France.[3] The allegations in these various actions closely mirror or duplicate the claims in suit in this court. It is my understanding that the French courts or prosecutors have dismissed these claims for failing to allege any violation of French law, and have sanctioned Sillam in the amount of 115,000 euros for bringing one of those

---

(fraudulent inducement). That opinion can be found at Docket # 28. Rather than reiterate it I incorporate it by reference. The court's decision denying Defendants' motion for reconsideration can be found at Docket # 38.

[2]   I gather from reviewing the docket sheet that it may be that Labaton did nothing more than file proofs of claim on behalf of certain European funds in lawsuits in various securities fraud lawsuits in which Labaton was not designated as class counsel. (See Dkt. # 109). Whether that is true – and if it is, whether the ministerial act of filing a proof of claim qualifies as reportable work under the 2009 Agreements – appears to be the factual dispute at the crux of this lawsuit.

[3]   These four proceedings are fully described at Docket #130 at 3-8.

harassing proceedings (the so-called Direct Summons Action, which was dismissed in March 2023 after a full trial) in utter bad faith. [4]

But as bad as Sillam's conduct has been in France, it is his actions before Judge Wang that have led to the present motion.

Defendants noticed Sillam's and Saulnier's depositions in this action, and specified New York – the situs of the lawsuit – as the place where those depositions were to be taken. Sillam and Saulnier moved before the learned Magistrate Judge to be deposed in France, where they live – alleging that they were elderly (in their late 60s, I believe) and were reluctant to travel out of fear of infection with COVID-19 (mind you, this is in 2022 and 2023, when travel had largely resumed). Defendants pointed out that Sillam and Saulnier had purposefully availed themselves of the jurisdiction of this court, and noted that it would be difficult to take meaningful and comprehensive depositions in France because of restrictions imposed by that country under the Hague Convention on the Taking of Evidence Abroad. Defendants also advised Judge Wang about the various French lawsuits to which they had been subjected; they argued that they and their American lawyers worried about being arrested if they had to enter France to examine Plaintiffs in their home country.

If this application had been made to me, I would have ordered Plaintiffs to show up in New York for their depositions or risk dismissal of the lawsuit they chose to bring here. When one avails himself of the jurisdiction of an American court, there is absolutely no excuse for not showing up in the United States for discovery governed solely by our rules, which – like it or not – are considerably more liberal than those in European countries, or when taken pursuant to the Hague Convention.

But the learned Magistrate Judge was supervising pretrial discovery, not I; and Judge Wang was far more solicitous of Plaintiffs than I would have been. She ordered that Defendants choose between taking the depositions (1) in Paris, or (2) remotely, with Plaintiffs remaining in France and the lawyers in New York.[5] She did so, however, on one condition: she insisted that Plaintiffs sign Declarations promising, *inter alia*, not to file any criminal or other proceeding against Defendants in France, relating to their depositions or to this lawsuit. Specifically, Defendants represented that they would not:

> file or pursue any type of legal proceeding in France, including but
> not limited to any type of criminal proceeding or criminal complaint,
> against Defendants, Defendants' counsel, or any persons affiliated with
> them, relating directly or indirectly to the conduct of the deposition
> or this action.

---

[4] I am advised that Sillam has yet to pay this sanction. *See* Dkt. # 160, at 8.

[5] This, too, would apparently have been subject to numerous limitations on questioning, because the situs of the deposition would have been deemed to be France, not the United States.

(Dkt. # 134 at 3). Defendants were also required to acknowledge that failing to comply with their representations would subject them to possible money sanctions or even dismissal of their lawsuit. (*Id.* at 12-13). I am advised that these declarations were signed in mid-February 2023.

The terms of those representations were clear and unambiguous. And while counsel for Sillam insists that he advised his client that the word "or" (as in "relating to their depositions *or* to this lawsuit") did not mean what it said,[6] Plaintiffs averred that the declarations were translated into French for their perusal prior to being signed (although Sillam, at least, speaks English), and that they had discussed them with both American and French counsel.

There is no dispute that the Magistrate Judge allowed the depositions of Plaintiffs to be taken abroad only because the Declarations were signed and the promises made.

As it turns out, Sillam promptly violated the condition on which the learned Magistrate Judge granted him that accommodation. In March 2023, and again in April 2023 – immediately after he signed the Declaration and just prior to the dates when his deposition was taken (in May 2023) – Sillam commenced two additional criminal actions against Defendants and their American and French attorneys in France, alleging "violation of privilege, possession of stolen goods and defamation" in relation to the use of a French judicial document (the "TJA") that referenced Sillam, and that was cited by Defendants in both one or more of the prior proceedings in France and in some filing made with this court in connection with this lawsuit. The first filing was promptly dismissed by the French prosecutor, but Sillam refiled it just two days later; the court is not aware of its current status.

Sillam did not apprise Judge Wang or any representative of Defendants that he had filed either these actions or that the first of them had been promptly dismissed.

When Judge Wang learned of Sillam's duplicity, she ordered him to show cause why he should not be sanctioned pursuant to Fed. R. Civ. P. 37. (*See* Dkt. 108. 117). On April 22, 2024 – in an opinion and order that set forth in copious details the occasions on which Sillam and his attorney had misled or failed to apprise the court fully and completely about his actions in France – Judge Wang imposed sanctions in the amount of reimbursement for attorneys' fees and expenses caused by his misconduct (Dkt. # 134). She eventually quantified the sanction at $146,280. (Dkt. # 153). In so doing, she rejected Sillam's (and his American lawyer's) truly frivolous justifications for his behavior.[7] I affirmed the April 22 Opinion and Order on June 24, at Dkt. # 152. In the order

---

[6]   Attorney Reda claims to have misunderstood "or" to mean "in." *See* Dkt. #124, ¶ 15.

[7]   Sillam's excuse was his "belief" that the Declaration only forbade him from filing actions that related directly to the conduct of his deposition, and since his deposition had not yet been taken, and the allegedly criminal behavior that was the subject of his filings occurred prior to any deposition, he was free to file whatever actions he chose to commence. Of course, his Declaration contains no such limitation – it prohibits him from filing any action or lawsuit in France "relating directly or indirectly…to this action." As Sillam's every lawsuit in France is grounded in the same underlying facts as this case, or in litigation relating to this case, every lawsuit he filed after signing the Declaration violated his promise. Sillam's lawyer, as noted above, insisted that he had given his client the impression that the Declaration did not mean what it plainly said. Judge Wang did not find that credible, Dkt. # 134 at 20-21, and neither do I.

of affirmance, I directed that no further discovery be taken in France, and I warned Sillam that his failure to abide by orders of this court, and to cooperate fully in the conduct of the proceedings he had commenced in our district, would be met with dismissal of his claims. The exact language of the warning was as follows:

> If Sillam is not willing to comply with the rules applicable to all litigants in this court, *we will have no choice but to dismiss the lawsuit that he chose to file here.*

(Emphasis added)

Per Judge Wang's order, Sillam was required to pay the sanction by August 30, 2024. As of today, December 9, 2024, Sillam has not paid the sanction, or any portion of it, as far as I know. He has not sought relief from the sanction on the ground that he was lacking in resources to pay it or filed any sworn testimony of his own (as opposed to an unsworn attorney's statement) or submitted any other evidence tending to show that he lacks the resources to pay the sanction. Neither did he file objections to the order in this court within 14 days of the entry Judge Wang's order, as required by Fed. R. Civ. P. 72(a), in order to appeal her ruling to this court. On August 22, 2024, his lawyer purported to file an appeal of Judge Wang's order directly to the Second Circuit (Dkt # 157). But that filing was of no force and effect, since – as Sillam's attorney recognized when responding to Defendants' inevitable motion seeking dismissal of the complaint for failure to abide by yet another order of this court – no direct appeal to the Court of Appeals lies from a non-dispositive order of a Magistrate Judge, Fed. R. Civ. P. 72(a). *See* Dkt. # 162. And in this Circuit, orders imposing sanctions pursuant to Fed. R. Civ. P. 37 are deemed non-dispositive, and so cannot be appealed directly to the Court of Appeals. *Kiobel v. Willson*, 592 F. 3d 78, 97-98 (2d Cir. 2010). Sillam has also not asked the learned Magistrate Judge, or me, to stay the sanction pending the entry of final judgment in his case, so that he could take an appeal from that order. In short, he has done nothing at all to preserve his position that the sanction was wrongly imposed. He has simply ignored the lawful order of the Magistrate Judge. And he has done so despite having been warned that failure to abide by court orders would result ("we will have no choice") in the dismissal of his case.

Sillam opposed Defendants' motion to dismiss the complaint as a sanction for his failure to comply with the court's sanctions order, arguing that he thought his notice of appeal stayed his obligation to comply with Judge Wang's order – a position his counsel now admits is wrong[8] – and pleading poverty, again without offering so much as a scintilla of evidence of it. His opposition, which runs to a scant four pages – entirely in the words of his attorney, Mr. Reda – is entirely lacking in merit.

It is certainly well settled that a district court can dismiss a complaint for failure to comply with a sanctions order, including an order to pay an opposing party's attorneys' fees. *Friedman v. Bloomberg LP*, 2024 WL 1298601, at *3-4 (2d Cir. March 27, 2024) (summary order); *Selletti v.*

---

[8] *See* Dkt. # 162 at 3. If Sillam was under the impression that filing a Notice of Appeal with the Second Circuit long after the time for filing objections with this court would somehow stay his obligation to pay the sanction Judge Wang had imposed upon him, then the lawyer he should be suing – for malpractice, by giving him patently erroneous legal advice – is his own lawyer, Mr. Reda, and not the lawyers from or for Labaton.

*Carey*, 17 F. App'x 18, 20-21 (2d Cir. June 20, 2021); *see also, Vakalis v. Shawmut Corp.*, 925 F. 2d 34, 37 (1st Cir. 1991); *Liberty Holdings (NYC) LLC v. Aposta, Inc.*, 2020 WL2614722 at *3-4 (S.D.N.Y. May 21, 2020). Sillam's failure to comply with the sanctions order comes hard on the heels of his being advised that his lawsuit would be dismissed if he failed to comply with the rules applicable to all litigants in this court – which warning was occasioned by his deliberate and repeated deception of Defendants and Magistrate Judge Wang in connection with his efforts to have his deposition taken in France rather than in the United States.

Sillam's behavior in connection with discovery in this lawsuit – a lawsuit he initiated in the Southern District of New York – has tested the patience of a busy United States Magistrate Judge and (frankly) wasted the time of this court. Dismissal is certainly deserved.

Nonetheless, in the spirit of Judge Wang, I am giving Sillam one more chance – but only to pay the sanction in full, not to protest it or to plead that he is unable to pay it (the time for making those arguments, and supporting them with evidence, is past). Sillam has until the close of business (by which I mean 3 PM Eastern Standard Time) on December 20 to pay the sanction of $146,280 in full. And just to be clear, that means Sillam has to initiate the payment process so that the check (made out to Mr. Zauderer's law firm) is received and has cleared by 3 PM EST on December 20, or the direct deposit is received and receipt confirmed (by Mr. Zauderer's firm's bank) by 3 PM on December 20. If Mr. Zauderer apprises the court as soon as 3:01 PM on December 20 that the money – every penny of it – is not in hand, then I will direct the Clerk of Court to dismiss this case with prejudice as to Plaintiff Sillam immediately. If the money comes in late, it will be too late to salvage the lawsuit.

The ball is in Sillam's court. I would advise him and his attorney not to test the limits of this court's generosity.

Dated: December 9, 2024

*[signature]*
U.S.D.J.

BY ECF TO ALL COUNSEL