# EXHIBIT A

```
 1   UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF NEW YORK                COPY
 3   ---------------------------------------X
     GERARD SILLAM and ALDRIC
 4   SAULIER,
 5
 6              Plaintiff,             Case No.
                                       21VC6675(CM)
 7        -against-
 8   LABATON SUCHAROW LLP, CHRISTOPHER J.
     KELLER, and LAWRENCE A. SUCHAROW,
 9
                Defendants.
10   ---------------------------------------X
11                           Zoom Video Communications
12                           June 13, 2023
                             2:00 p.m.
13
14        EXAMINATION BEFORE TRIAL of CHRISTOPHER J. KELLER,
15   a Defendant herein, taken by the Plaintiff, pursuant
16   to Article 31 of the Civil Practice Law & Rules of
17   Testimony, and Court Order, held at the above-mentioned
18   time and place, before Joanna Martinez a Notary Public
19   of the State of New York.
20
21
22
23            SANDY SAUNDERS REPORTING
            254 South Main Street, Suite 216
24             New City, New York 10956
                  (845) 634-7561
25
```

```
 1
 2                A P P E A R A N C E S:
 3
 4   RAISER & KENNIFF, P.C.
     Attorney for Plaintiff
 5   300 Old Country Road, Suite 3501
     Mineola, New York 11501
 6   (888) 646-0025
     BY:  DOUGLAS REDA, ESQ.
 7
 8
 9   GANTER SHORE LEEDS &ZAUDERER, LLP
     Attorney for Defendant
10   360 Lexington Avenue
     New York, New York 10017
11   (212) 922-9240
     EMAIL: iramatesky@ganfershore.com
12   BY:  IRA MATESKY, ESQ.
13
14
15   ALSO PRESENT:
16   Mark Zauderer, Michael Canty, James Christie
17
18
19
20
21
22
23
24
25
```

```
 1                  S T I P U L A T I O N S
 2
 3           IT IS HEREBY STIPULATED AND AGREED,
 4   by and among counsel for the respective parties
 5   hereto, that the filing, sealing and certification
 6   of the within deposition shall be and the same are
 7   hereby waived;
 8           IT IS FURTHER STIPULATED AND AGREED
 9   that all objections, except as to form of the
10   question, shall be reserved to the time of the
11   trial;
12           IT IS FURTHER STIPULATED AND AGREED
13   that the within deposition may be signed before any
14   Notary Public with the same force and effect as if
15   signed and sworn to before the Court.
16                   *       *       *
17
18
19
20
21
22
23
24
25
```

```
 1   C H R I S T O P H E R   K E L L E R, after having
 2   first been duly sworn by a Notary Public of the
 3   State of New York, was examined and testified as
 4   follows:
 5   BY THE STENOGRAPHER:
 6       Q    State your name for the record, please.
 7       A    Christopher Keller.
 8       Q    State your address for the record, please.
 9       A    15 William Street, New York, New York
10   10005.
11            THE STENOGRAPHER:  Before I swear in the
12       witness, I will ask counsel to stipulate on the
13       record, that the court reporter may swear in
14       the deponent even though they are not in the
15       physical presence of the deponent, and that
16       there is no objection to that at this time, nor
17       will there be an objection to it at a future
18       date.
19            MR. MATESKY:  Yes.  Yes, that's fine.  I'd
20       also like to state for the record that although
21       we're doing this deposition on Zoom so that we
22       can see each other, no one is recording this
23       Zoom.  The stenographer's written stenographic
24       transcript will be the only record of
25       deposition.
```

```
 1        Q    This paragraph doesn't create the
 2   substantive obligation to pay any money, correct?
 3             MR. REDA:  The document speaks for itself.
 4             MR. MATESKY:  It spoke for itself when you
 5        asked two hours worth of questions about it.
 6        It's going to speak while I ask another three
 7        minutes of questions.
 8             MR. REDA:  Three minutes, that will be the
 9        day.
10        A    Yes.
11        Q    Thank you.
12             Now, let's look at the previous
13   paragraph, which is headed C.  It says, "Potential
14   fees from additional and/or future litigation."  And
15   let me ask you to read that paragraph to yourself
16   and let me know when you're done.
17        A    Okay.
18        Q    By the way, Mr.Reda didn't ask you any
19   questions about this paragraph, that I recall; is
20   that right?
21             MR. REDA:  Is that a question or just a
22        comment.
23             MR. MATESKY:  That's a question.
24        A    I don't recall that he did.
25        Q    Okay.  Is this the paragraph that creates
```

1   Labaton's obligation, if there is one, to pay money
2   based on a percentage of legal fees earned?
3       A   That's what it says.
4       Q   Okay.  I just want to go through this
5   language with you.  It says, "Labaton acknowledges,
6   understands, and agrees that in consideration for
7   the full and final release in waiver given by the
8   Alfonso clients as provided herein, as well as the
9   confidential arbitration agreement between the
10  parties, as set fort herein, that the Alfonso
11  clients shall have and maintain a limited duration
12  interest.  The limited interest in an amount equal
13  to 15 percent of the gross fees paid to Labaton in
14  any matter in which Labaton is engaged to represent
15  any of the, quote, potential clients who are
16  potential clients at the time representation is
17  initiated either in pre-litigation or in litigation
18  as confirmed by the schedule attached to the
19  settlement identified as Exhibit 1."  It's a long
20  sentence.  But do you see that?
21      A   Yes.
22      Q   Do you see the reference "direct
23  representation either in pre-litigation or in
24  litigation"?
25      A   Correct.

1      Q    It doesn't say post-litigation there, does
2  it?
3      A    No.
4      Q    The filing of a proof of claim for an
5  absent class member doesn't happen before the
6  litigation, does it?
7      A    No.
8      Q    It doesn't happen while the case is being
9  actively litigated, either, correct?
10     A    That is correct.
11     Q    Okay.  Now, the next sentence says, "Such
12 limited interest will exist if any of the potential
13 clients retained Labaton within five calendar years
14 from the date on which this settlement agreement is
15 executed, the five-year term."
16          Do you see that?
17     A    Uh-huh, yes.
18     Q    And this agreement is executed, we can
19 agree, December 30th and 31st of 2009.
20          Is it fair to say based on that
21 language, that if a client had asked Labaton to file
22 proofs of claims for it before December 2009, even
23 if proofs of claim hypothetically are included, it
24 wouldn't be covered by that time period?
25     A    Yes, that's how that agreement is written.

1     Q    Last question about this.  It says, "And
2  will be paid subject to the full terms of this
3  agreement in any matter in which Labaton
4  representing any of the potential clients or obtains
5  any judgment or settlement (prior to or after the
6  commencement of litigation by any such potential
7  client anywhere in the world) at any time."
8          Do you see that sentence?
9     A    I do.
10    Q    Now, if an absent class member files a
11 proof of claim, will that absent class member have
12 commenced litigation anywhere in the world in that
13 case?
14    A    Of course not.
15    Q    And the proof of claim filings we were
16 talking about are filings on behalf of absent class
17 members, not the named plaintiff; is that correct?
18    A    That's correct.
19    Q    We also talked -- or Mr. Reda also
20 discussed with you class action procedure.
21         Securities class actions are
22 typically litigated on a contingency basis, correct?
23    A    That's correct.
24    Q    If Labaton or a law firm is designated to
25 be lead counsel but the case is dismissed, the law

```
 1   firm doesn't make any money, correct?
 2        A    That is correct.
 3        Q    If the law firm is -- soon to become
 4   designated as lead counsel, but it's unsuccessful,
 5   the court appoints somebody else, then typically
 6   that law firm isn't going to make any money in that
 7   case, correct?
 8        A    That's correct.
 9        Q    Now, there's a procedure where the court
10   designates from among the applicant who is going to
11   to be the lead plaintiff and who is going to be the
12   lead counsel?
13             MR. REDA:  Objection.
14        A    Correct.
15        Q    As part of that process, does the client
16   or -- the client that wants to be named a lead
17   plaintiff submit certain information to the court?
18        A    Yes.
19        Q    Typically, they could do that in the form
20   of a declaration or affidavit?
21        A    Sure, yes.
22        Q    And would that be filed with the federal
23   court and become a matter of public record on the
24   ECF PACER system?
25        A    Yes.
```

 1    Q    Is that declaration filed by an applicant
 2  to be lead plaintiff where you might look to see who
 3  that would-be plaintiff has designated as their
 4  counsel in the case?
 5    A    That's correct.
 6    Q    Did an entity called KBC ever retain
 7  Labaton to represent it as a lead plaintiff or would
 8  be lead plaintiff in a class action?
 9    A    No.
10    Q    In fact, KBC has its own regular outside
11  counsel that represents any class action, correct?
12         MR. REDA:  Objection.
13    A    That's true.  We do not represent KBC.  I
14  wish I did, but we don't.
15         (Whereupon, 2015 settlement, Plaintiff's
16     Exhibit 7 was deemed marked for
17     Identification.)
18    Q    Okay.  Please turn to Exhibit 7.  That's
19  the 2015 settlement.  And when you have Exhibit 7,
20  please turn to paragraph -- page 2, paragraph B.
21    A    Okay.
22    Q    And you see there, it says, "The
23  consideration for Universal release"?
24    A    Uh-huh, I do.
25    Q    And there are two bullet points there?

```
 1      A     Yes.
 2      Q     The timely single payment of $99,999.99?
 3      A     That's correct.
 4      Q     That's the money you paid?
 5      A     Yes.
 6      Q     And the second paragraph is the assignment
 7   of Labaton's interest in an Italian litigation
 8   called Saipem.
 9            Do you see that?
10      A     That's correct.
11      Q     Is buying back that interest the following
12   year what 5,000 euros was paid for?
13      A     That's correct.
14      Q     And my last question --
15            MR. REDA:  Let's take a 30-second break.
16            (Whereupon, a recess was taken.)
17      Q     Let's just turn back to Exhibit 4.  And
18   just to pin down a point that we made a few moments
19   ago, is it fair to say that the reporting obligation
20   under paragraph 1 is broader than the fee obligation
21   under paragraph C?
22      A     I'm sorry, what exhibit are we on?
23      Q     We're back to 4.
24      A     Okay.
25      Q     And we talked a few moments ago about
```

```
 1   paragraph C, which creates a fee obligation -- a
 2   potential obligation to pay fees, and paragraph 1,
 3   which creates a reporting obligation.
 4       A    Right, right, of course.
 5       Q    Is it fair to say that the reporting
 6   obligation appears to be broader than the fee
 7   payment obligation?
 8       A    Yes, it does.
 9       Q    Turn to paragraph 7 -- I'm sorry, Exhibit
10   7 -- my correction.  We just covered that.  Turn to
11   Exhibit 6, that's the declaration.
12               Mr. Keller, the claim in the
13   complaint in this case is that Labaton Sucharow,
14   LLP, the law firm, and you committed fraud when you
15   sent these declarations.
16               Was it your intention when you sent
17   these declarations to be truthful and accurate?
18       A    Absolutely.
19       Q    Did you intentionally misstate any facts
20   in these declarations?
21       A    Not one.
22       Q    Was it your intention to commit fraud?
23       A    It was not.
24            MR. MATESKY:  I have no further questions.
25            MR. REDA:  A couple of questions,
```